UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN DOUGLAS LARSON,<br>Plaintiff,<br>v.<br>TRANS UNION , LLC,<br>Defendant. | Case No. 12-cv-05726-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 7 |

This is a putative class action under the California Consumer Credit Reporting Agencies Act, California Civil Code section 1785.1 *et seq*. ("CCRAA"). Compl. ¶ 1. Plaintiff Brian Larson ("Larson") asserts that he received a consumer credit disclosure from defendant Trans Union, LLC ("Trans Union") that contained incomplete and inaccurate information. He has alleged two causes of action: (1) Trans Union failed to provide Larson with all of the information in his consumer credit file in violation of CCRAA sections 1785.10 and 1785.15; and (2) Trans Union provided an inaccurate consumer credit report in violation of CCRAA section 1785.14. At the hearing held on September 26, 2013, Larson requested discovery to determine whether there is any additional information in his consumer credit file that Trans Union failed to disclose.

Having considered the parties' briefs and the argument of counsel, and for the reasons set forth below, the Motion to Dismiss is GRANTED with LEAVE TO AMEND. Limited discovery is GRANTED as set forth below.

**BACKGROUND**

On October 26, 2011, Brian Larson obtained a copy of his file from Trans Union, LLC, a consumer credit reporting agency that compiles and sells consumer credit reports. Compl. ¶¶ 3, 27. After disclosing information under the headings "Personal Information," "Adverse Accounts," "Satisfactory Accounts," "Regular Inquiries," and "Account Review Inquiries," the file stated,

1   "End of Credit Report." Compl. ¶ 28. Beneath that heading, the file stated:

-Begin Additional Information-

**Additional Information**

The following disclosure of information is provided as a courtesy to you. This information is not part of your TransUnion [sic] credit report, but may be provided when TransUnion receives an inquiry about you from an authorized party. This additional information can include Special Messages, Possible OFAC Name Matches, Income Verification and Inquiry Analysis information. Any of the previously listed information that pertains to you will be listed below.

Compl. ¶ 29. The file then states:

**Possible OFAC Match**
. . .
    As a courtesy to you, we also want to make sure you are aware that the name that appears on your TransUnion credit file **is considered a *potential* match to information listed on the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") Database.** [1]

    **The OFAC record that is considered a potential match to the name on your credit file is:**

**[Intentionally Left Blank]**[2]

Compl. ¶ 32.

OFAC alerts advise credit grantors whether an applicant's name matches an individual or entity identified by the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") as hostile to the United States. Compl. ¶ 1. Certain institutions are required to consult the OFAC list before transacting with individuals.[3] Failure to comply may carry criminal penalties, civil penalties, and fines ranging from $10,000 to $10,000,000.[4] Credit agencies have adopted measures to allow credit grantors to determine if a credit applicant is on the OFAC list by matching the applicant's name and other information to the individuals and entities on the list.[5]

---

[1] The Complaint does not state whether the emphasis was in the original disclosure or added by counsel.
[2] Plaintiff's Opposition clarifies that he inserted the phrase "Intentionally Left Blank" to indicate that the space was blank. The words "Intentionally Left Blank" do not appear in the October 26 disclosure. Dkt. No. 8 at 4.
[3] 31 U.S.C. § 5318(*l*)(2).
[4] *See Cortez v. Trans Union, LLC*, 617 F. 3d 688, ns. 14-19 (3rd Cir. 2010).
[5] *See* OFAC Frequently Asked Questions and Answers, http://www.treasury.gov/resource-

1 Larson asserts he is not a match to any individual or entity on the OFAC list, but he asserts
2 that he "suffered humiliation and embarrassment" that Trans Union "considers him a match or a
3 possible match to some suspected criminal on the OFAC list." Compl. ¶¶ 37, 41. He is
4 "uncertain" whether Trans Union is reporting him as an actual or potential OFAC match to
5 potential creditors. Compl. ¶ 39.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## DISCUSSION

### I. COUNT I: CCRAA § 1785.10 AND § 1785.15

Larson alleges that Trans Union violated CCRAA sections 1785.10 and 1785.15 by failing

---

center/faqs/Sanctions/Pages/answer.aspx (visited on September 25, 2013).

to provide "all information" contained in his file. Compl. ¶ 56. The CCRAA defines the term "file" as "all of the information on that consumer recorded and retained by a consumer credit reporting agency, regardless of how the information is stored." CAL. CIV. CODE § 1785.3(g). CCRAA section 1785.10 requires that "[e]very consumer credit reporting agency shall, upon request and proper identification of any consumer, allow the consumer to visually inspect all files maintained regarding that consumer at the time of the request." CAL. CIV. CODE § 1785.10(a). Section 1785.10 further states, "[a]ll information on a consumer in the files of a consumer credit reporting agency at the time of a request . . . shall be available for inspection . . . ." CAL. CIV. CODE § 1785.10(c). Section 1785.15 similarly states, "the consumer has the right to request and receive . . . all information in the file at the time of the request . . . ." CAL. CIV. CODE § 1785.15 subds. (a) & (a)(1).

Larson asserts that Trans Union failed to provide all of the information in his file because it omitted the name on the OFAC list that may be a potential match. Compl. ¶¶ 36-40. The disclosure states: "The OFAC record that is considered a potential match to the name on your credit file is: [Intentionally Left Blank]." Compl. ¶ 32. The parties construe the blank in two very different ways. Trans Union argues it means that no match exists and there is no additional information to disclose. Dkt. No. 7 at 8. Larson argues both that it misrepresents that a potential match exists, and that Trans Union has elected to make an incomplete disclosure to the consumer. Dkt. No. 8 at 14-15.

Larson relies almost completely on his interpretation of the OFAC disclosure language to assert that Trans Union failed to disclose his entire file. But the trouble with his pleading is that he also alleges that there is no additional information to be released. Compl.¶ 37. This contradiction makes Count I defective. Both assertions cannot be true. While it is permissible to plead inconsistent theories in a complaint, in order to be intelligible Larson must assert them in separate causes of action so that the defendant has a fair opportunity to respond and so that the Court can ascertain the factual and legal basis of each claim. For example, if one of Larson's theories is that the OFAC disclosure is misleading even though there is no additional information

4

that Trans Union failed to disclose, then the Court can address Trans Union's argument that there is no permissible claim because the reporting agencies' obligations under CCRAA sections 1785.10 and 1785.15 are limited to disclosing all of the information in a consumer's file. If another theory is that the OFAC disclosure is misleading because there is additional information that Trans Union failed to disclose, then the defendant and Court can address that claim. But each needs to be clearly and separately set out in the Complaint. At the moment, they are not.

Other than Larson's assertion that a potential match was withheld based on his interpretation of the OFAC language, for which Trans Union has another plausible interpretation, he does not allege any facts indicating that Trans Union failed to disclose additional data. Where a complaint fails to plead facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At this juncture, Larson does not adequately state a claim that Trans Union violated CCRAA sections 1785.10 and 1785.15.[6]

That said, the OFAC language in the file disclosure is, at best, ambiguous. Criticizing an identical disclosure by the same defendant, a Magistrate Judge in the United States District Court for the Middle District of Pennsylvania concluded that Trans Union utilizes an "awkward, obscure and potentially confusing" manner and "cryptic and enigmatic fashion" to state the OFAC information. *Miller v. Trans Union, LLC*, No. 12-01715, 2013 WL 5442059 at *5 (M.D. Pa. Sept. 27, 2013). It is unclear whether Larson, as opposed to every consumer, is a potential match to a name on the OFAC database, or whether the blank space is meant to indicate that there is no potential match, or whether Trans Union refuses to indicate if there is such a match. Allowing Larson some discovery regarding the contents of his file should clarify whether or how Larson might have suffered an injury related to the OFAC information. Since at least some of Count I's

---

[6] At oral argument Larson's counsel repeatedly referred to the First Cause of Action as a "section g claim." Counsel appeared to confuse the sections of the CCRAA that are at issue in this case with their analogous FCRA provision. Larson's Opposition also cites several cases interpreting the FCRA's accuracy standards. Dkt. No. 8 at 8-9, 18-19. It is important to note that while FCRA section 1681g requires a consumer reporting agency to disclose all information in a file "clearly and accurately," the words "clearly and accurately" are absent from CCRAA sections 1785.10 and 1785.15.

1  deficiency is due to the ambiguity of Trans Union's OFAC language in the disclosure to plaintiff,
2  in section III below the Court defines limited discovery that Larson may take before amending his
3  Complaint.

4  The Court will allow Larson the opportunity to amend his Complaint to, at a minimum,
5  assert a consistent theory in Count I and separate out any inconsistent allegations into another
6  cause of action. Trans Union has raised other defenses to this cause of action, including that
7  Larson may not state a claim that the disclosure is "misleading" as long as Trans Union provided
8  all the information required under the CCRAA statutes. The Court defers ruling on those issues
9  until Larson clarifies his pleading.

**II. COUNT II: CCRAA § 1785.14**

Larson argues that the way Trans Union lists OFAC information is misleading and inaccurate because it implies an unfounded connection to persons and entities on the OFAC list, therefore violating Trans Union's duty under § 1785.14 to "assure maximum possible accuracy" in consumer credit report information. Compl. ¶ 61; CAL. CIV. CODE § 1785.14(b). In order to make a prima facie violation under the FCRA's parallel provision, 15 U.S.C. § 1681e, "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

Larson has not, however, alleged that Trans Union prepared a "report" containing inaccurate information. "Consumer credit report" is defined in section 1785.3(c) as a "written, oral, or other communication by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for [credit]." CAL. CIV. CODE. § 1785.3(c). Larson's current allegations relate solely to the accuracy of Trans Union's disclosure of files prepared for *him*, something separate and distinct from a "consumer credit report" prepared for third parties. Courts expressly caution against conflating these two types of documents when interpreting the FCRA. *See e.g., Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 246 n.7 (3d Cir. 2012) (noting that "consumer report" and "credit

report" are not the same); *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007) ("A 'consumer report' is a report prepared for third parties while a 'consumer disclosure' is the consumer reporting agency's file it reveals to the consumer, not a third party. Reports prepared solely for the consumer do not constitute 'consumer reports' under the FCRA.").

Larson argues that the CCRAA's definition of consumer credit report is identical to the FCRA's definition of consumer report, which Larson argues is "extraordinarily broad" and includes the file disclosure prepared for him. Dkt. No. 8 at 12-13. However, California state courts have explicitly stated that "the definition of 'consumer credit report' in [the] CCRAA is not as broad as the definition under the FCRA." *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548, 559 (1995). Larson further argues that the term "consumer credit report" should be interpreted to mean "any information" bearing on a consumer's credit worthiness. Dkt No. 7 at 10, 12-13. However, the Ninth Circuit and courts in this district have held that not all reports constitute "consumer credit reports." *Mende v. Dun & Bradstreet, Inc.*, 670 F.2d 129, 132 (9th Cir. 1982) (holding that reports used as a basis to extend credit to businesses were not "consumer credit report" within the meaning of FCRA § 1681a, and stating, "[w]e do not believe that the mere fact that a report could be used as a consumer credit report is enough to make it one."); *Hanks v. Talbots Classics Nat. Bank*, 2012 WL 3236323 at *7 (N.D. Cal. Aug. 6, 2012) (holding that credit furnisher obtaining "trade line information" in a consumer's file "does not constitute a consumer credit report.").

Additionally, the plain language of the CCRAA states that not all reports are included in the definition of "consumer credit report." CAL. CIV. CODE. § 1785.3(c) (stating that the term "consumer credit report" does not include "any report containing information solely as to transactions or experiences between the consumer and the person making the report," internal credit agency reports, and "any report by a person conveying a decision whether to make a specific extension of credit directly or indirectly to a consumer in response to a request by a third party," among others.)

At the September 26 hearing, Larson conceded that section 1785.14 applies only to consumer credit reports, but he argued that his consumer disclosure falls in the definition of a

7

consumer credit report. In support, Larson recited the definition of "consumer credit report" in CCRAA 1785.3(c). Larson's reliance on the statutory definition is unpersuasive. "Courts have repeatedly rejected similar allegations that simply recite statutory language . . . and then slavishly repeat the statutory language as to the purported factual allegations." *Oveida v. Sodexo Ops., LLC*, 2012 WL 1627237 at *3 (C.D. Cal. May 7, 2012).

Larson's Opposition argues that he has pled that Trans Union sold inaccurate consumer credit reports about him to third parties. Dkt. No. 8 at 11-12. But the Complaint only states that Larson is "uncertain" as to whether Trans Union identifies him as an OFAC match. Compl. ¶ 39. Without an express allegation in the Complaint that Trans Union prepared an inaccurate "report," Larson has not alleged facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. Consequently, Larson fails to state a claim that Trans Union placed inaccurate information in a consumer credit report in violation of section 1785.14. [7]

### III. LARSON'S REQUEST FOR DISCOVERY

At the September 26 hearing, Larson requested discovery to determine whether additional OFAC data exists that Trans Union failed to disclose in either his consumer credit report or his consumer file. Trans Union opposed the request, but conceded that if there is additional data in a consumer credit report, then Larson may have a claim under the CCRAA. For the reasons stated in section I of this Discussion, the Court will allow limited discovery.

Larson may take a Rule 30(b)(6) deposition of the corporate representative of Trans Union who is most knowledgeable about the following topics:

1. All documents concerning Larson in the possession, custody and control of Trans

---

[7] Trans Union argues that there can be no cause of action unless inaccurate information is communicated to a third party. However, the Ninth Circuit has held that transmission of a credit report to a third party is not a prerequisite to recovery under the FCRA. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("the district court erred in finding that any liability under § 1681e(b) was predicated, as a matter of law, on the occurrence of some event – denial of credit or transmission of the report to third parties – resulting from the compilation and retention of erroneous information.").

Trans Union also argues that the CCRAA is preempted to the extent that it is inconsistent with the FCRA. Dkt. No. 7 at 9-10. This argument fails because the FCRA expressly saves CCRA sections 1785.10 and 1785.15 from preemption. 15 U.S.C. § 1681t(b)(3)(A).

Union other than those generated as a result of this litigation, including any consumer credit reports prepared by Trans Union about Larson;

2. The meaning of the OFAC language quoted in the Complaint;

3. The meaning of a blank space when used in a file disclosure or credit report in connection with an OFAC provision (does it mean that there is no match to the consumer, that there is a match that will not be disclosed, or something else);

4. Whether Trans Union determined that there was a potential match to Larson in the OFAC data base prior to providing the file disclosure or report alleged in the Complaint.

Trans Union shall also provide Larson any documents in its possession in response to topic 1, above, at least 15 days prior to the deposition.

## CONCLUSION

The Motion to Dismiss is GRANTED WITH LEAVE TO AMEND.

The Court GRANTS limited discovery as described in section III of the Discussion. The parties shall have until December 31, 2013 to complete this discovery. Larson shall file any amended complaint no later than January 15, 2014.

**IT IS SO ORDERED**.

Dated: October 15, 2013



WILLIAM H. ORRICK
United States District Judge