* REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED *

# EXHIBIT 4

Exhibit 4 to Declaration of John Soumilas, Esq. in Support of Plaintiff's Motion to Certify Class
Larson v. Trans Union, LLC,  No. 12-cv-05726

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA


RONALD J. MILLER, on behalf : Civil Action
of  himself and all others  :
similarly situated,         :
            Plaintiff,      : No. 12-1715
        -v-                 :
TRANS UNION, LLC,           :
            Defendant.      : CLASS ACTION
-----------------------------------------
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

BRIAN DOUGLAS LARSON, on   :  Case No.
behalf of  himself and all :
others similarly situated, :
            Plaintiff,     :
        -v-                :
                           :
TRANS UNION, LLC,          :
            Defendant.   :  3:12cv-05726
-----------------------------------------

CONFIDENTIAL DEPOSITION

        Videoconference deposition of BRIAN THACKREY,

taken in the above-entitled cause, before Gina M.

Luordo, a notary public of Cook County, Illinois, on

November 11, 2014, at 200 North LaSalle Street,

Suite 2900, Chicago, Illinois, at the time of

9:02 a.m., pursuant to Notice.

SUMMIT COURT REPORTING, INC.
Certified Court Reporters and Videographers
1500 Walnut Street, Suite 1610
Philadelphia, Pennsylvania 19102
424 Fleming Pike, Hammonton, New Jersey 08037
(215) 985-2400 * (800) 447-8648 * (609) 567-3315
www.summitreporting.com

* REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED *

**BRIAN THACKREY-CONFIDENTIAL**

1       Q.    Anybody else?

2       A.    Not that I can recall.

3       Q.    What type of information did you seek to

4    obtain from Scott Doss (sic)?

5       A.    Similar information, test plan.

6       Q.    Did Sanil G. from Saksoft provide you with

7    any information concerning the test plan?

8       A.    He did not.

9       Q.    With respect to Scott Doss, did he provide

10   you with any information concerning the test plan?

11      A.    Not the one I was looking for, no.

12      Q.    When you say not the one you were looking

13   for, what do you mean?

14      A.    He provided some, but they weren't related

15   to this particular project.

16      Q.    So Mr. Doss provided some information

17   about test plans related to other projects?

18      A.    Correct.  And just to -- I was just going

19   to correct you.  It's Voss with a V, Victor.

20      Q.    Thank you.  I did not hear you correctly

21   the first time.  So it's V-o-s-s?

22      A.    That's correct.

23      Q.    I appreciate that.

24             So Mr. Voss gave you some test plan

**BRIAN THACKREY-CONFIDENTIAL**

1    information, but it wasn't related to this project

2    that relates to the Miller and Larson cases,

3    correct?

4        A.   That's correct.

5        Q.   And Sanil G. from Saksoft just didn't get

6    back to you, or why didn't he provide you with any

7    test plan information?

8        A.   From what I recall, he didn't get back to

9    me.  I didn't see a response.

10        Q.   Did you find what you were looking for

11    from other source other than Mr. Voss or Sanil G.?

12        A.   I did not.

13        Q.   Did you look for a test plan?

14        A.   I did, but I was not able to find it.

15        Q.   And when we talk about a test plan, are we

16    talking about a particular type of document?

17        A.   Correct.  It would -- I think I answered

18    your question.  I'll let you ask the next one.

19        Q.   Is it the type of document that would

20    outline quality control testing for a new computer

21    program such as the one used to roll out the online

22    file disclosure for OFAC at Trans Union around

23    September of 2011?

24        A.   That's correct.

* REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED *

**BRIAN THACKREY-CONFIDENTIAL**

1    Q.   And is it correct that you have not been

2    able to identify any such document which would

3    outline such a testing plan for that particular

4    program?

5    MR. NEWMAN:  Objection.  Object to form of the

6    question.  Go ahead.  You can answer.

7    THE WITNESS:  I was not able to find the

8    document.

9    BY MR. SOUMILAS:

10    Q.   Are you sure that such a document ever

11    existed?

12    A.   I'm pretty sure it did exist.

13    Q.   And why do you say that, Mr. Thackrey?

14    A.   That's a part of our process to create a

15    test plan, so my memory serves that there would

16    have been one.  It's just a question of where it's

17    located at this point.

18    Q.   Through today, am I correct that you have

19    not been able to locate this document with a test

20    plan for the OFAC online file disclosure project?

21    A.   That's correct.

22    Q.   Is it the usual practice at Trans Union

23    that when a new computer program is rolled out, a

24    test plan should be created?

**BRIAN THACKREY-CONFIDENTIAL**



Redacted

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**BRIAN THACKREY-CONFIDENTIAL**

1    materials.

2        Q.    And that's a deposition that Mr. Katz had

3    given, I believe, in the Larson case earlier in the

4    year?

5        A.    I believe so.

6        Q.    Anything else other than that transcript

7    that we have not gone over so far today?

8        A.    No, I believe that covers it.

9        Q.    And I think we went through who you

10   communicated with and the records you reviewed.

11   Did you do anything else other than what you've

12   testified about already to prepare to give

13   testimony today?

14       A.    No, that's all.

15       Q.    Just a few follow-ups based on what you

16   said earlier.  You said you have worked with Sanil

17   G. of Saksoft, correct?

18       A.    That's correct.

19       Q.    Where is Saksoft located?

20       A.    Well, the majority of the resourcing is in

21   Chennai, India.  Sanil specifically is in

22   California.

23       Q.    So Sanil G. is located where specifically

24   in California?

**BRIAN THACKREY-CONFIDENTIAL**



**BRIAN THACKREY-CONFIDENTIAL**

1    resources for Saksoft or onshore?

2        A.    It would have been done with a mix mostly

3    offshore with the guidance and oversight with Sanil

4    being in California.

5        Q.    Do you know who specifically wrote the

6    computer code related to the online OFAC disclosure

7    that went online in the September 2011 time frame?

8        A.    I don't know specifically the resource's

9    name, no.

10       Q.    Do you know whether it was Sanil himself

11   or one of his offshore resources, as you put it, in

12   Chennai, India?

13       A.    It would have been an offshore source

14   resource in Chennai.

15       Q.    But you don't know who that person is to

16   this day, correct?

17       A.    I don't recall the named resource, no.

18       Q.    Who is Natalia?

19       A.    Can you provide a last name to make sure I

20   answer appropriately?

21       Q.    I don't know that I know the last name,

22   but Natalia was referenced in one of the e-mails

23   that I reviewed.  The context is that if something

24   will be handled by Saksoft overnight and

**BRIAN THACKREY-CONFIDENTIAL**

1     issue, and this e-mail is the result of this

2     conversation with Sanil and my conversation with

3     Dave wanting to understand it.

4          Q.   So is it accurate to say that a code that

5     was written by someone at Saksoft led to the defect

6     on the online OFAC disclosures in the September and

7     October 2011 time frame?

8          A.   Yes, that's correct.

9          Q.   And Mr. Holm wanted to know what

10    specifically that code was that led to the defect?

11         A.   Yes.  He was wanting an explanation of,

12    you know, the issue and the logic issue there.

13         Q.   So do I understand that you went to

14    Sanil G. and said could you please show us the old

15    logic which led to the defect and the new logic

16    that fixed it?

17         A.   That's correct.

18         Q.   And is that what we see here in the e-mail

19    that we have as Thackrey 1?

20         A.   Yes, that's correct.

21         Q.   Is the old logic that we see in this

22    e-mail the two lines of code that led to the

23    defect?

24         A.   Yes.  Based on the conversation with

**BRIAN THACKREY-CONFIDENTIAL**

1    Sanil, that's my understanding.

2        Q.    So do you know how long this code was

3    related specifically to the online OFAC disclosure

4    project?

5        A.    Can you maybe rephrase that?

6        Q.    I'm trying to figure out whether there

7    was, you know, 6,000 lines of code and the two

8    lines that led to the error are what we see here as

9    old logic or whether there was just five lines of

10   code or two lines of code and that's the error?

11       A.    I'm not sure that I could speak to the

12   quantity of lines of code.  This was a snippet, but

13   I couldn't tell if it's the quantity.

14       Q.    That's what I'm trying to figure out, so

15   how big of a snippet is it?  Is it a very small

16   fraction of a code, or is it the entire code that

17   led to the error?  What can you tell us about that?

18       MR. NEWMAN:  Objection.  The question is vague

19   and ambiguous.  You can answer if you understand

20   it.

21       THE WITNESS:  Can you restate that?  I'm sorry.

22   BY MR. SOUMILAS:

23       Q.    Yes.  You used the word snippet in your

24   previous response.  You said it's a snippet of a

**BRIAN THACKREY-CONFIDENTIAL**



Redacted

**BRIAN THACKREY-CONFIDENTIAL**



* REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED *

**BRIAN THACKREY-CONFIDENTIAL**

```
 1          MR. NEWMAN:  Objection.  You can answer.
 2          THE WITNESS:  That's correct.
 3     BY MR. SOUMILAS:
 4          Q.   Do you know who Eric Keating is?
 5          A.   Yes.
 6          Q.   Who is that?
 7          A.   Eric Keating at this point in time would
 8     have been the CRS production support manager.
 9          Q.   And where would Mr. Keating's office be?
10          A.   His office is also at corporate at 555
11     West Adams.
12          Q.   In the late October 2011 time frame, do
13     you ever recall Mr. Keating advising you that the
14     OFAC header is confusing to the consumer and has
15     resulted in multiple calls from consumers to the
16     call center?
17          MR. NEWMAN:  Objection.  Go ahead.
18          THE WITNESS:  I recall one e-mail exchange
19     where he said there were some phone calls.
20     BY MR. SOUMILAS:
21          Q.   Do you recall Mr. Keating telling you and
22     others that this display of the OFAC header was
23     confusing to consumers?
24          MR. NEWMAN:  Objection.  You can answer.
```

**BRIAN THACKREY-CONFIDENTIAL**

1    of feedback.  I guess I'm torn to answer that one.

2    BY MR. SOUMILAS:

3         Q.   Do you believe that at any point in the

4    phase of trying to correct this defect it came to

5    your attention by anyone that this was a severe

6    problem that needed to be attended to immediately?

7         MR. NEWMAN:  Objection.  Argumentative.  You

8    can answer.

9         THE WITNESS:  As I stated in the previous

10   question, there was some communication a month

11   after that would lead us to believe it needed

12   remedy.

13   BY MR. SOUMILAS:

14        Q.   Was that communication from the office of

15   Denise Norgle?

16        A.   By the time Denise had reached out, that

17   was actually after we had identified and were

18   fixing the issues, so I wouldn't say Denise was the

19   trigger for us to react quickly.

20        Q.   With respect to those defects that have

21   not actually gone out into production, but which

22   were caught in the quality control part of the

23   operation, how many such defects per year on the

24   average have you seen during your years at Trans

**BRIAN THACKREY-CONFIDENTIAL**

1    Union?

2        A.    Those that did not reach production?

3        Q.    Yes, sir.

4        A.    So it sounds like you're asking about

5    defect rate maybe.  I don't know that I could

6    quantify that.

7        Q.    Well, you said approximately five or less

8    than five per year, in your judgment, had reached

9    production, correct?

10       A.    That's correct.

11       Q.    Could you put a number on similar defects,

12   whether severe or nonsevere, that were addressed

13   before they ever reached production?

14       A.    I don't know that I could quantify that.

15       Q.    Mr. Newman also asked you about test

16   subjects during his examination.  Do you recall

17   that?

18       A.    Yes.

19       Q.    And were these test subjects that you

20   think were run before September 22, 2011?

21       A.    Yes, that's correct.

22       Q.    How many total were there?

23       A.    I would say probably -- and this is a

24   guess.  Like I say, I didn't review the test plan

**BRIAN THACKREY-CONFIDENTIAL**

1    once again in preparation.  Probably a handful,

2    five maybe.

3        Q.    And based on your best guess of five, how

4    many of those had an actual OFAC hit, and how many

5    were tested knowing that there was no OFAC hit?

6        A.    I would say it would probably be about

7    50/50, so a couple that had hits and a couple that

8    did not have hits.

9        Q.    Who specifically tested those subjects?

10   Was it Trans Union, or was it Sanil G. at Saksoft?

11       A.    I believe it would have been Saksoft.

12       Q.    Do you know whether Saksoft would have

13   also actually -- strike that question.

14       MR. SOUMILAS:  I don't have anything further.

15   Thank you very much.

16       MR. NEWMAN:  I have no further questions

17   either.

18       MR. SOUMILAS:  I would ask the court reporter

19   to please attach to the transcript all of the

20   exhibits that we referenced, including Garst 1

21   through 6 and Thackrey 1.

22                            - - -

23                       (Whereupon, the deposition

24                       concluded at 11:04 a.m.)

**BRIAN THACKREY-CONFIDENTIAL**

```
 1    STATE OF ILLINOIS   )

 2                        )   SS:

 3    COUNTY OF C O O K   )

 4            I, GINA M. LUORDO, a notary public within

 5    and for the County of Cook County and State of

 6    Illinois, do hereby certify that heretofore,

 7    to-wit, on November 11, 2014, personally appeared

 8    before me, at 200 North LaSalle Street, Suite 2900,

 9    Chicago, Illinois, BRIAN THACKREY, in a cause now

10    pending and undetermined in the United States

11    District Court, Northern District of California,

12    San Francisco Division, wherein RONALD J. MILLER,

13    et al. are the Plaintiffs, and TRANS UNION, LLC is

14    the Defendant.

15            I further certify that the said BRIAN

16    THACKREY was first duly sworn to testify the truth,

17    the whole truth and nothing but the truth in the

18    cause aforesaid; that the testimony then given by

19    said witness was reported stenographically by me in

20    the presence of the said witness, and afterwards

21    reduced to typewriting by Computer-Aided

22    Transcription, and the foregoing is a true and

23    correct transcript of the testimony so given by

24    said witness as aforesaid.
```

**BRIAN THACKREY-CONFIDENTIAL**

1          I further certify that the signature to

2     the foregoing deposition was not waived by counsel

3     for the respective parties.

4          I further certify that the taking of this

5     deposition was pursuant to notice and that there

6     were present at the deposition the attorneys

7     hereinbefore mentioned.

8          I further certify that I am not counsel

9     for nor in any way related to the parties to this

10    suit, nor am I in any way interested in the outcome

11    thereof.

12          IN TESTIMONY WHEREOF:   I have hereunto set

13    my hand and affixed my notarial seal this 12th day

14    of November, 2014.

15

16

17

18

19          _____

20          NOTARY PUBLIC, COOK COUNTY, ILLINOIS

21          LIC. NO. 084-004143

22

23

24

BRIAN THACKREY-CONFIDENTIAL

1                       SIGNATURE PAGE

2

3                          - - -

4           I hereby acknowledge that I

5     have read the aforegoing transcript, dated

6     November 11, 2014, and the same is a true and

7     correct transcription of the answers given by

8     me to the questions propounded, except for

9     the changes, if any, noted on the errata

10    sheet.

11                          - - -

12

13    SIGNATURE:

14                    Brian Thackrey

15    DATE:          12 - 1 - 2014

16

17    WITNESSED BY:

18

19

20

21

22

23

24

**\* REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED \***

ERRATA SHEET

Attach to Deposition of:  Brian Thackrey
Taken on:  November 11, 2014
Case:  Miller/Larson v. Trans Union, LLC

| Page:Line | Change |
|-----------|--------|
| 35:13 | Delete "if it's" |
| | **Redacted** |
| 72:18 | Change "issues" to "issue" |

Brian Thackrey