# EXHIBIT 14

Exhibit 14 to Declaration of John Soumilas, Esq. in Support of Plaintiff's Motion to Certify Class
Larson v. Trans Union, LLC,  No. 12-cv-05726

```
 1                UNITED STATES DISTRICT COURT
 2              NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN FRANCISCO DIVISION
 4
 5   BRIAN DOUGLAS LARSON, on        )
 6   behalf of himself and all       )
 7   others similarly situated,      )
 8              Plaintiff,           )
 9       vs.                         ) No. 3:12-cv-05726-
10   TRANS UNION, LLC,               )     WHO
11              Defendant.           )
     _____)
12
13
14      VIDEOTAPED DEPOSITION OF BRIAN DOUGLAS LARSON
15                   Irvine, California
16               Friday, December 12, 2014
17                       Volume I
18
19
20   Reported by:
21   STACEY E. STOWELL
22   CSR No. 12926
23   JOB No. 1963181
24
25   PAGES 1 - 92
```

Page 1

|    |     |                                                                    |       |
|----|-----|--------------------------------------------------------------------|-------|
| 1  | Q   | -- language, correct?                                              | 10:51 |
| 2  | A   | Yes.  I asked, "What does it mean?"                                | 10:51 |
| 3  | Q   | And this was on October 26th, 2011?                                | 10:51 |
| 4  | A   | Yeah.                                                              | 10:51 |
| 5  | Q   | The same day you received and reviewed the report?                 | 10:51 |
| 7  | A   | No, I don't -- no, it was -- it might have been the day -- a day after. | 10:51 |
| 9  | Q   | Okay.                                                              | 10:51 |
| 10 | A   | It might have been.                                                | 10:51 |
| 11 |     | I'm not -- I know -- I remember talking, but I don't remember exactly what hour, what's -- you know, it was within the context of a week.  I could -- that's the best of my knowledge. | 10:51 |
| 15 | Q   | What exactly did you --                                            | 10:51 |
| 16 |     | So you spoke to a Trans Union representative --                    | 10:51 |
| 18 | A   | Yes.                                                               | 10:51 |
| 19 | Q   | -- correct?                                                        | 10:51 |
| 20 | A   | Yes --                                                             | 10:51 |
| 21 | Q   | And what --                                                        | 10:51 |
| 22 | A   | -- and took notes.                                                 | 10:51 |
| 23 | Q   | And what exactly did you tell the representative or ask the representative about this OFAC -- I'm going to call it the OFAC Header.  Okay? | 10:51 |

Page 41

| | | |
|---|---|---|
| 1 | This language on LARSON, page 0 -- LARSON 0016. | 10:52 |
| 2 | What exactly did you tell the Trans Union | 10:52 |
| 3 | representative about this OFAC Header? | 10:52 |
| 4 | A    I asked him, "What does this mean -- possible | 10:52 |
| 5 | OFAC match?"  And vaguely -- I don't have a real | 10:52 |
| 6 | recollection of what she said -- or the person said. | 10:52 |
| 7 | It was more or less a service that was | 10:52 |
| 8 | required by law, that they were bound to -- or something | 10:52 |
| 9 | like that.  In other words, there was some kind of law | 10:52 |
| 10 | that states because of the 2011 -- or 2001, | 10:52 |
| 11 | September 11th, that it's -- it's -- for that reason. | 10:52 |
| 12 | Q    Do you remember who you spoke to at Trans | 10:53 |
| 13 | Union? | 10:53 |
| 14 | A    Not -- not too well.  I don't remember. | 10:53 |
| 15 | Q    But you said you kept notes of that | 10:53 |
| 16 | conversation -- | 10:53 |
| 17 | A    Yeah. | 10:53 |
| 18 | Q    -- correct? | 10:53 |
| 19 | A    I turned it over to the attorney.  I forgot | 10:53 |
| 20 | the name of the person.  But I wrote down all the | 10:53 |
| 21 | information I could. | 10:53 |
| 22 | MR. YOO:  David, could you search your files | 10:53 |
| 23 | for those notes, please -- | 10:53 |
| 24 | MR. SEARLES:  Yeah. | 10:53 |
| 25 | MR. YOO:  -- because I don't think we've | 10:53 |

| | | |
|---|---|---|
| 1 | A    Uh-huh. | 10:55 |
| 2 | Q    -- represents a printout of the OFAC search | 10:55 |
| 3 | that you conducted on October 26th, 2011; is that | 10:55 |
| 4 | correct? | 10:56 |
| 5 | A    That's correct. | 10:56 |
| 6 | Q    And you typed in your name Brian Douglas | 10:56 |
| 7 | Larson, and that resulted in 22 hits, correct? | 10:56 |
| 8 | I'm just reading from the first page. | 10:56 |
| 9 | A    More or less.  I think it was 1 -- 31, or it | 10:56 |
| 10 | could have been 22. | 10:56 |
| 11 | Q    Based on the results of this search, did you | 10:56 |
| 12 | have any reason to believe that you were actually a | 10:56 |
| 13 | possible match to somebody on the OFAC list? | 10:56 |
| 14 | A    Yes. | 10:56 |
| 15 | Q    Can you point to which of the results caused | 10:56 |
| 16 | you that concern? | 10:56 |
| 17 | A    The only thing that I saw was the name -- the | 10:56 |
| 18 | word -- the middle name Douglas.  That was the only | 10:56 |
| 19 | adjoining factor that was relevant to these -- to this | 10:56 |
| 20 | printout. | 10:57 |
| 21 | Q    But do you see the name Brian Douglas Larson | 10:57 |
| 22 | in any of these 22 results -- or even the name | 10:57 |
| 23 | Brian Larson? | 10:57 |
| 24 | A    All I see is Douglas. | 10:57 |
| 25 | Q    And is the word Douglas connected in any way | 10:57 |

| | | | |
|---|---|---|---|
| 1 | to Brian or Larson in any of these entries? | | 10:57 |
| 2 | Or is it mentioned -- | | 10:57 |
| 3 | A | No. | 10:57 |
| 4 | Q | -- in the same entry? | 10:57 |
| 5 | A | No. | 10:57 |
| 6 | Q | Okay. And despite the fact that the words | 10:57 |
| 7 | "Brian" and "Larson" do not show up in any of these | | 10:57 |
| 8 | 22 hits, this still causes you concern that you were a | | 10:57 |
| 9 | potential match to somebody on the OFAC list; is that | | 10:57 |
| 10 | correct? | | 10:57 |
| 11 | A | Yes. | 10:57 |
| 12 | Q | Okay. | 10:57 |
| 13 | A | That others might see this documentation, and | 10:57 |
| 14 | it may cause missed opportunities for me. | | 10:58 |
| 15 | Q | What do you mean by "missed opportunities"? | 10:58 |
| 16 | A | If this being a potential employment | 10:58 |
| 17 | opportunity or a credit opportunity or a banking | | 10:58 |
| 18 | opportunity, I was concerned that even having to -- to | | 10:58 |
| 19 | be associated with OFAC, Office of Foreign Asset | | 10:58 |
| 20 | Control, would cause undue or misstated or mis- -- | | 10:58 |
| 21 | miscommunication and -- upon my name. | | 10:58 |
| 22 | Q | As we sit here today, Mr. Larson, do you still | 10:58 |
| 23 | believe that you are a potential match to somebody on | | 10:58 |
| 24 | the OFAC list? | | 10:58 |
| 25 | A | Yes. | 10:59 |

Veritext National Deposition & Litigation Services
866 299-5127

| | | |
|---|---|---|
| 1 | Q    And you said that when you initially read this | 10:59 |
| 2 | OFAC Header, you didn't really understand what it meant, | 10:59 |
| 3 | correct? | 10:59 |
| 4 | A    Correct. | 10:59 |
| 5 | MR. YOO:  Can we take another quick | 10:59 |
| 6 | five-minute break, please? | 10:59 |
| 7 | THE VIDEOGRAPHER:  Going off the record. | 10:59 |
| 8 | The time is 10:59 a.m. | 10:59 |
| 9 | (Recess.) | 10:59 |
| 10 | THE VIDEOGRAPHER:  Back on the record. | 11:10 |
| 11 | The time is 11:10 a.m. | 11:10 |
| 12 | BY MR. YOO: | 11:10 |
| 13 | Q    Thank you, Mr. Larson. | 11:10 |
| 14 | Can I have you look, again, at Exhibit C, | 11:10 |
| 15 | please. | 11:11 |
| 16 | A    (Witness complies.) | 11:11 |
| 17 | Q    Now, you previously testified that in or about | 11:11 |
| 18 | August of 2011, you had a line of credit closed by Wells | 11:11 |
| 19 | Fargo, correct? | 11:11 |
| 20 | A    Uh-huh, yes. | 11:11 |
| 21 | Q    Can you point that out on your October 26th, | 11:11 |
| 22 | 2011, report?  And take your time. | 11:11 |
| 23 | MR. SEARLES:  Objection to the form.  Point | 11:11 |
| 24 | out what? | 11:11 |
| 25 | You can answer. | 11:11 |

Page 47

| | | |
|---|---|---|
| 1 | A   On the Internet, after I clicked on | 11:22 |
| 2 | Trans Union's link here at the bottom of this header, it | 11:22 |
| 3 | took me to this page here, which then I put my name in, | 11:22 |
| 4 | which put out this information.  I became very | 11:22 |
| 5 | concerned. | 11:22 |
| 6 | So immediately, I did several searches about | 11:22 |
| 7 | OFAC, and people like Francis & Mailman and other | 11:22 |
| 8 | attorneys came up on the Internet, and I chose to call | 11:22 |
| 9 | their toll-free number -- Francis & Mailman -- | 11:22 |
| 10 | Q   Okay. | 11:23 |
| 11 | A   -- at that time to discuss what OFAC is -- or | 11:23 |
| 12 | what OFAC search is or how it's reported. | 11:23 |
| 13 | Q   Mr. Larson, did you ultimately submit this | 11:23 |
| 14 | complaint marked as Exhibit F to the FTC? | 11:23 |
| 15 | A   Yes. | 11:23 |
| 16 | Q   Did you ever receive a response? | 11:23 |
| 17 | A   No. | 11:23 |
| 18 | Q   To this day, you have not received a response? | 11:23 |
| 19 | A   No. | 11:23 |
| 20 | Q   Have you followed up with them? | 11:23 |
| 21 | A   Yeah.  I called them one time, and they didn't | 11:23 |
| 22 | have any information on the claim -- on the claim I | 11:23 |
| 23 | made, the claim number. | 11:23 |
| 24 | Q   You mean they couldn't even find the claim | 11:23 |
| 25 | number? | 11:23 |

|   |   |   |   |
|---|---|---|---|
| 1 | A | No. | 11:23 |
| 2 | Q | So it's as if they never received this? | 11:23 |
| 3 | A | Exactly. | 11:23 |
| 4 | Q | That's what they claimed? | 11:23 |
| 5 | A | That's what they claimed. | 11:23 |
| 6 | Q | Did you ever contact any other government agency? | 11:23 |
| 8 | A | Yes.  I called OFAC and left a message. | 11:23 |
| 9 | Q | So you contacted them by telephone? | 11:24 |
| 10 | A | That's correct. | 11:24 |
| 11 | Q | Did you ever hear back from OFAC? | 11:24 |
| 12 | A | Yes, I did. | 11:24 |
| 13 | Q | Oh, you did? | 11:24 |
| 14 | A | Yes.  They left a message on my machine.  I don't have that electronic information.  But it states to the effect that I should contact the credit reporting agency that had reported this. | 11:24 |
| 18 | Q | And is that why you contacted Trans Union, or did you get that message -- | 11:24 |
| 20 | A | This message -- | 11:24 |
| 21 | Q | Okay. | 11:24 |
| 22 | A | Yeah, later on.  This is -- I'm not sure exactly, but it was definitely after the printout -- | 11:24 |
| 24 | Q | Okay. | 11:24 |
| 25 | A | -- of this information. | 11:24 |

Page 57

```
 1   annualcreditreport.transunion.com, correct?                 11:31
 2       A    Yes.  It's partial.  It's missing pages.           11:31
 3       Q    What was your reason for requesting this           11:32
 4   credit report?                                              11:32
 5       A    Usually, I do -- once a year or twice a year,      11:32
 6   I'll get a report --                                        11:32
 7       Q    Okay.                                              11:32
 8       A    -- just so I can either dispute or maintain my     11:32
 9   credit and FICO score.                                      11:32
10       Q    Just to make sure things are in order --           11:32
11       A    Yeah.                                              11:32
12       Q    -- more or less?                                   11:32
13       A    Yeah.                                              11:32
14       Q    Okay.  And do you see the OFAC Header on this      11:32
15   credit report?                                              11:32
16       A    No.                                                11:32
17       Q    Mr. Larson, were you harmed in any way by the      11:32
18   inclusion of the OFAC Header in your October 26, 2011,      11:32
19   credit report?                                              11:32
20       A    In what way?                                       11:32
21       Q    How did it affect you?  How did it make you        11:32
22   feel?                                                       11:32
23       A    Distressed; that I could have been                 11:32
24   misrepresentative [sic] of my integrity or character        11:33
25   along with the potential for employment opportunities or    11:33
```

Veritext National Deposition & Litigation Services
866 299-5127

| | | |
|---|---|---|
| 1 | other background check information.  That was a fear | 11:33 |
| 2 | that I -- that was running through my mind. | 11:33 |
| 3 | Q    Do you have any reason to believe that you | 11:33 |
| 4 | were actually denied credit or an employment | 11:33 |
| 5 | opportunity -- | 11:33 |
| 6 | A    I don't have a -- | 11:33 |
| 7 | Q    Sorry.  Let me finish my question. | 11:33 |
| 8 | A    Okay. | 11:33 |
| 9 | Q    Do you have any reason to believe that you | 11:33 |
| 10 | were denied credit or an employment opportunity or | 11:33 |
| 11 | suffered any other adverse consequences based on the | 11:33 |
| 12 | OFAC Header? | 11:33 |
| 13 | A    I don't have any proof that I was -- I was | 11:33 |
| 14 | denied employment because of it or denied credit because | 11:34 |
| 15 | of it. | 11:34 |
| 16 | Q    Do you have any reason to believe that any | 11:34 |
| 17 | third party even saw the OFAC Header on your credit | 11:34 |
| 18 | report? | 11:34 |
| 19 | A    Yes.  Because if I saw it on there, obviously | 11:34 |
| 20 | it was available to other people or other businesses or | 11:34 |
| 21 | other entities. | 11:34 |
| 22 | Q    So that is your understanding; that it -- | 11:34 |
| 23 | A    That's my -- | 11:34 |
| 24 | Q    -- was available -- | 11:34 |
| 25 | A    -- understanding. | 11:34 |

Veritext National Deposition & Litigation Services
866 299-5127

| | | |
|---|---|---|
| 1 | record the portion of the letter under "Re: Need | 11:49 |
| 2 | Additional Information"? | 11:49 |
| 3 | A   "Our records show that Trans Union has | 11:49 |
| 4 | provided you with a consumer disclosure free of charge | 11:49 |
| 5 | pursuant to the FACT Act within the past 12-month | 11:49 |
| 6 | period.  If you would like to receive additional | 11:49 |
| 7 | consumer disclosure, please complete the attached form | 11:49 |
| 8 | and provide payment in the amount of $8." | 11:49 |
| 9 | Q   Okay.  That's fine.  Thank you. | 11:49 |
| 10 | So is it fair to say that in the 12 months | 11:49 |
| 11 | prior to the date of this letter, you had made another | 11:49 |
| 12 | request to Trans Union for a free credit report? | 11:49 |
| 13 | A   I don't remember. | 11:50 |
| 14 | Q   Mr. Larson, can you explain why you believe | 11:50 |
| 15 | you are a suitable class representative in this case? | 11:50 |
| 16 | A   In my belief system, you're (unintelligible.) | 11:50 |
| 17 | THE REPORTER:  I'm sorry? | 11:50 |
| 18 | THE WITNESS:  -- you're to love one another, | 11:50 |
| 19 | because I believe in Jesus Christ.  And I think that | 11:50 |
| 20 | everyone -- every person deserves to have treatment -- | 11:50 |
| 21 | right treatment.  And when one is hurt, they all hurt. | 11:50 |
| 22 | And so I don't think of myself as the only | 11:51 |
| 23 | person here.  I think of others.  And if this hurt me, | 11:51 |
| 24 | it might hurt them.  And if somehow practices could | 11:51 |
| 25 | change that would help other people, if one is hurt and | 11:51 |

Page 75

| | | |
|---|---|---|
| 1 | learn from that hurt, then society would be a better | 11:51 |
| 2 | place. | 11:51 |
| 3 | BY MR. YOO: | 11:51 |
| 4 | Q    Mr. Larson, do you know of any other | 11:51 |
| 5 | individual besides yourself, who claims that they were | 11:51 |
| 6 | harmed by the inclusion of an OFAC Header on their | 11:51 |
| 7 | credit report? | 11:52 |
| 8 | A    Yes. | 11:52 |
| 9 | Q    And who is that? | 11:52 |
| 10 | A    Sandra Cortez. | 11:52 |
| 11 | Q    Just to clarify, Mr. Larson, I'm referring to | 11:52 |
| 12 | Exhibit C, the OFAC Header. | 11:52 |
| 13 | Would you mind turning to that, please? | 11:52 |
| 14 | A    (Witness complies.) | 11:52 |
| 15 | Q    Page 15 of 17, in Exhibit C.  I'm referring | 11:52 |
| 16 | specifically to the language that says, "The OFAC | 11:52 |
| 17 | Header -- The OFAC record that is considered a potential | 11:52 |
| 18 | match to the name on your credit file is:" and with a | 11:52 |
| 19 | blank space underneath it. | 11:52 |
| 20 | Do you have any reason to believe that that's | 11:52 |
| 21 | what Sandra Cortez saw in her Trans Union credit report? | 11:53 |
| 22 | A    I don't know.  All I can show you is that | 11:53 |
| 23 | there's a link that provides a place to go to, to | 11:53 |
| 24 | research a person's name from a list. | 11:53 |
| 25 | Q    And other than Sandra Cortez and yourself, are | 11:53 |

Veritext National Deposition & Litigation Services
866 299-5127

| | | |
|---|---|---|
| 1 | you aware of any other individuals who were harmed by | 11:53 |
| 2 | the inclusion of the OFAC Header in their credit report? | 11:53 |
| 3 |     A    Personally, no. | 11:53 |
| 4 |     Q    Okay.  Okay.  Mr. Larson, are you prepared to | 11:53 |
| 5 | be present at a multi-day trial in this action? | 11:53 |
| 6 |     A    Yes. | 11:53 |
| 7 |     Q    And do you keep yourself informed of what's | 11:53 |
| 8 | going on in this case? | 11:53 |
| 9 |     A    With legal counsel, yes. | 11:53 |
| 10 |     Q    Okay.  How often do you -- | 11:53 |
| 11 |     Do you receive updates from legal counsel? | 11:53 |
| 12 |     MR. SEARLES:  And for the record, I have to | 11:54 |
| 13 | instruct you, you're not allowed to testify concerning | 11:54 |
| 14 | any communications between you and your attorney. | 11:54 |
| 15 |     But you can answer the question. | 11:54 |
| 16 |     THE WITNESS:  As often as possible. | 11:54 |
| 17 | BY MR. YOO: | 11:54 |
| 18 |     Q    And if you can just give me an estimate, about | 11:54 |
| 19 | how often? | 11:54 |
| 20 |     A    I can't give you a regular Hail Mary.  It | 11:54 |
| 21 | could -- it could be a week.  It could be a month.  It | 11:54 |
| 22 | could be -- | 11:54 |
| 23 |     Q    Maybe once a week; maybe once a month? | 11:54 |
| 24 |     A    Could be.  Could be, depending on what they | 11:54 |
| 25 | keep me abreast of, what the issues are of the case. | 11:54 |

Page 77

```
 1              I, the undersigned, a Certified Shorthand
 2    Reporter of the State of California, do hereby certify:
 3              That the foregoing proceedings were taken
 4    before me at the time and place herein set forth; that
 5    any witnesses in the foregoing proceedings, prior to
 6    testifying, were placed under oath; that a verbatim
 7    record of the proceedings was made by me using machine
 8    shorthand which was thereafter transcribed under my
 9    direction; further, that the foregoing is an accurate
10    transcription thereof.
11              I further certify that I am neither
12    financially interested in the action nor a relative or
13    employee of any attorney of any of the parties.
14              IN WITNESS WHEREOF, I have this date
15    subscribed my name.
16    Dated:  December 15, 2014
17
18
19
20                   _____
21                   Stacey E. Stowell, CSR
22                   Certificate Number 12926
23
24
25
```

Page 92