# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

- - -

SERGIO L. RAMIREZ, on behalf :
of himself and all others :
similarly situated, :
 :
       Plaintiff, :
 : Case No.
  vs. : 3:12cv00632-JSC
 :
TRANS UNION, LLC, :
 :
       Defendant. : ORIGINAL

- - -

Videotaped deposition of SEAN L. WALKER, taken at the law offices of Francis & Mailman, P.C., Land Title Building, 19th Floor, 100 South Broad Street, Philadelphia, Pennsylvania, on Wednesday, September 12, 2012, commencing at 10:02 a.m., before Andrea M. Brinton, Certified Court Reporter and Notary Public.

- - -

SUMMIT COURT REPORTING, INC.
Certified Court Reporters and Videographers
1500 Walnut Street, Suite 1610
Philadelphia, Pennsylvania 19102
424 Fleming Pike, Hammonton, New Jersey 08037
(215) 985-2400 * (609) 567-3315 * (800) 477-8648
www.summitreporting.com

```
 1   APPEARANCES:

 2   FRANCIS & MAILMAN, P.C.
     BY:  JAMES A. FRANCIS, ESQUIRE
 3   Land Title Building
     19th Floor
 4   100 South Broad Street
     Philadelphia, Pennsylvania 19110
 5   (215) 735-8600
     Counsel for Plaintiff
 6
     STROOCK & STROOCK & LAVAN, LLP
 7   BY:  STEPHEN J. NEWMAN, ESQUIRE
     2029 Century Park East
 8   Los Angeles, California 90067-3086
     (310) 556-5800
 9                and
     SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A. &
10   BY:  BRUCE S. LUCKMAN, ESQUIRE
     308 Harper Drive
11   Moorestown, New Jersey 08057
     (856) 663-1503
12   Counsel for Defendant

13   ALSO PRESENT:
     Phillip Roller - Video Technician
14

15

16

17

18

19

20

21

22

23

24
```

1    A.    No --

2    Q.    Okay.

3    A.    -- not --

4    Q.    You just heard your answer read back, okay, about what changed in January of 2011. Is it your testimony that starting in January of 2011 TransUnion began disclosing OFAC information on the consumer file disclosure that it would send to consumers?

         MR. NEWMAN:  Objection.

         You can answer the question.

         THE WITNESS:  TransUnion began disclosing to consumers the OFAC information.

BY MR. FRANCIS:

    Q.    I understand. On the disclosure that it would send to consumers?

         MR. NEWMAN:  Objection, calls for a legal conclusion.

         Go ahead.

         THE WITNESS:  Not on the disclosure -- not in the same envelope as the typical disclosure that we had sent previous to January 2011.

BY MR. FRANCIS:

SUMMIT COURT REPORTING, INC.
215.985.2400 * 609.567.3315 * 800.447.8648 * www.summitreporting.com

1  Q.  So if a consumer asked for a copy of -- of
2  their credit report or consumer file disclosure, as
3  we talked about before, starting in January of 2011,
4  when TransUnion would send them a copy of the file
5  disclosure, that report would not have the OFAC
6  information on it; correct?
7  A.  Correct.
8  Q.  Okay.  Did there ever come a time when
9  TransUnion began disclosing the OFAC information on
10 the report it sent to consumers?
11 A.  Yes.
12 Q.  When did that go into effect?
13 A.  January -- or sorry.  Excuse me.
14 July 26th, 2011.
15 Q.  Now, looking at the time frame from January
16 of '11 up through and prior to July of 2000 -- July
17 of 2011, I want to ask you questions about that time
18 frame; okay?
19 A.  Okay.
20 Q.  How did TransUnion begin disclosing OFAC
21 information to consumers who requested a copy of
22 their file disclosure?
23 A.  When a consumer would request a copy of
24 their disclosure, TransUnion would send the -- what

```
 1   would have been the disclosure previous to
 2   January 2011, along with a letter to the consumer
 3   notifying them if there was a potential match to OFAC
 4   information.
 5        Q.   Okay.  So it would disclose the OFAC
 6   information by way of a letter; correct?
 7        A.   Correct.
 8        Q.   All right.  And that letter was sent
 9   separately from the credit report or file disclosure
10   that TransUnion would send to a consumer; correct?
11        A.   Correct.
12        Q.   All right.  How soon in time would the
13   letter go out compared to when the report would go
14   out?
15        A.   Typically, the same day it would be
16   printed.
17        Q.   Okay.  What would cause the letter to go
18   out in a particular case?
19        A.   What would cause the OFAC to be returned?
20        Q.   Well, let me back up, let's -- so we're on
21   the same page here.  What do you call the letter that
22   TransUnion began sending in January of '11?  Let's
23   come up with a term for that.  What was that letter
24   called?
```

```
 1        Q.   Yes, start sending the OFAC letters to
 2   consumers.
 3        A.   Again, I don't know why the decision was
 4   made or what -- what caused that decision to have
 5   that outcome.  From what I understand, there was --
 6   there was a case where there was a ruling that we
 7   should disclose that information, and so that's what
 8   we did.
 9        Q.   Okay.  And what do you base that on?
10   Somebody told you who said that or at meetings or
11   how -- what do you base that -- that testimony on?
12        A.   Again, I'm not sure I remember a specific
13   conversation.  I'm sure it was involved in the
14   meetings and the discussions surrounding the
15   implementation approach for OFAC.
16        Q.   Okay.  Why did you send a separate letter?
17   Why didn't you just include it on the consumer file
18   disclosure?
19        A.   To implement it as soon as we could.
20        Q.   And that's something that couldn't happen
21   quickly?  Is that your testimony?
22        A.   It's -- it was -- the quickest approach was
23   to be able to disclose the information, and the
24   quickest way to disclose the information was in a
```

1  letter.

2  Q. Okay. Was there a -- was there discussion
3  about how long it would take to have the OFAC
4  information disclosed on the file disclosure?

5  A. Yes.

6  Q. And how long was that going to take?

7  A. The -- the initial estimates were that it
8  would take upwards of a year to get the information
9  contained in the disclosure, so the most
10 consumer-friendly approach that we could take was to
11 be able to disclose the information as -- as part of
12 a letter to the consumer.

13 Q. Now, would I be correct in stating, based
14 upon what you testified today, that from January of
15 '11 through July 26th of 2011, if TransUnion
16 disclosed any OFAC information to a consumer, it was
17 through the letter?

18 A. Correct. It was -- yeah.

19 Q. Okay. During that time there were no
20 reports -- no consumer file disclosures which
21 contained the OFAC information; correct?

22 A. Correct.

23 Q. Now, what happened on -- on July 26th,
24 2011? What new change in the system went into

SEAN L. WALKER

1    A.    They couldn't have included that
2  information in the disclosure, correct.
3    Q.    Right.  Is there any technical reason that
4  you know of, from an infrastructure or a technology
5  standpoint, that would have prevented them from doing
6  so had they been given the information in 2010 or
7  2009?
8         MR. NEWMAN:  Objection, incomplete
9    hypothetical.
10        But go ahead and answer.
11 BY MR. FRANCIS:
12   Q.    You can answer.
13   A.    So there's a lot of reasons that would have
14 prevented that, but the easiest answer to the
15 question is, no, previous to January 2011 they would
16 not have technically been able to do that.
17   Q.    Because they weren't given the information
18 from TransUnion; correct?
19   A.    Because of the way that the information was
20 being sent from TransUnion, as well as the
21 infrastructure that had been established at the print
22 vendor.
23   Q.    Right.  Is there any reason that that
24 infrastructure, the changes that went into effect in

1   July of 2011, couldn't have been made earlier?

2       A.   Yes.  The infrastructure at the print

3   vendor was not complete to be able to perform that

4   process until July of 2011.

5       Q.   Right.  And the change that the print

6   vendor made in 2011 was at TransUnion's request;

7   correct?

8       A.   Yes.

9       Q.   Is there any reason that you know of that

10  TransUnion could not have made that request to them

11  earlier than 2011?

12          MR. NEWMAN:  Objection, incomplete

13      hypothetical, misstates testimony.

14          Go ahead.

15          THE WITNESS:  There were technical

16      limitations outside of the request from

17      TransUnion to make a change to allow for the

18      setup and processing of merging the

19      information together.

20  BY MR. FRANCIS:

21      Q.   Right.

22      A.   So in addition to the process of merging

23  that information, there was also changes to the

24  composition of the disclosure, which occurred after

```
 1                    CERTIFICATION
 2                        - - -
 3           I hereby certify that the testimony and the
 4   proceedings in the aforegoing matter are contained
 5   fully and accurately in the stenographic notes taken
 6   by me, and that the copy is a true and correct
 7   transcript of the same.
 8            - -
 9
10
11
12           _Andrea M. Brinton_____
13
14           Andrea M. Brinton, Certified
             Court Reporter and Notary Public
15
16
17
18
19           The foregoing certification does not apply
20   to any reproduction of the same by any means, unless
21   under the direct control and/or supervision of the
22   certifying reporter.
23
24
```

SIGNATURE PAGE

- - -

I hereby acknowledge that I have read the aforegoing transcript, dated September 12, 2012, and the same is a true and correct transcription of the answers given by me to the questions propounded, except for the changes, if any, noted on the errata sheet.

- - -

SIGNATURE: _Sean L. Walk_____
SEAN L. WALKER

DATE: 10/18/2012

WITNESSED BY: _Lisa A Dickens_