UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN DOUGLAS LARSON,<br><br>                 Plaintiff,<br><br>        v.<br><br>TRANS UNION, LLC,<br><br>                 Defendant. | Case No. 12-cv-05726-WHO<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; STAYING CASE; AND TENTATIVELY GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. Nos. 62, 63, 64, 66, 70, 72, 79 |

**INTRODUCTION**

Plaintiff Brian Larson brings this putative class action against defendant Trans Union, LLC ("Trans Union"), alleging that Trans Union violated the Fair Credit Reporting Act ("FCRA") by providing him and approximately 18,000 putative class members with file disclosures that were not "clear and accurate" within the meaning of 15 U.S.C. § 1681g. He now moves for class certification. Trans Union opposes and moves for summary judgment on the ground that Larson was not entitled to the free file disclosure on which his claims are based.

Trans Union's motion is based on a misreading of the interaction between section 1681g and another FCRA provision, 15 U.S.C. § 1681j. Its motion is DENIED. I am tentatively inclined, based on current law, to grant Larson's motion for class certification. However, in light of the Supreme Court's recent grant of the petition for writ of certiorari in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), I will STAY proceedings in this case pending resolution of that appeal. I provide my tentative ruling on class certification under the law as it exists today in section III-B of this Order.

**BACKGROUND**

**I.     FACTUAL BACKGROUND**

Trans Union is one of the "big three" consumer credit reporting agencies in the United

States.  First Amended Complaint ¶ 6 (Dkt. No. 39) ("FAC").  Larson alleges that he obtained a copy of his "personal credit report" from Trans Union on October 26, 2011.  FAC ¶ 22.  After disclosing information under the headings, "Personal Information," "Adverse Accounts," "Satisfactory Accounts," "Regular Inquiries," and "Account Review Inquiries," the report stated, "End of Credit Report."  FAC ¶ 24.  Beneath the heading, "End of Credit Report," the report stated the following:

> **Begin Additional Information**
>
> **Additional Information**
>
> The following disclosure of information is provided as a courtesy to you.  This information is not part of your TransUnion [sic] credit report, but may be provided when TransUnion receives an inquiry about you from an authorized party.  This additional information can include Special Messages, Possible OFAC[1] Name Matches, Income Verification and Inquiry Analysis Information.   Any of the previously listed information that pertains to you will be listed below.
>
> [ . . . ]
>
> **Possible OFAC Match**
>
> As a courtesy to you, we also want to make sure you are aware that the name that appears on your TransUnion credit file is considered a potential match to information listed on the United States Department of Treasury's Office of Foreign Asset Control ("OFAC") database.
>
> The OFAC record that is considered a potential match to the name on your credit file is:
>
> For more details regarding the OFAC Database, please visit:

---

[1] "OFAC" refers to the United States Treasury Department's Office of Foreign Assets Control. FAC ¶ 1.  "OFAC administers and enforces economic and trade sanctions based on . . . foreign policy and national security goals against threats to the national security, foreign policy, or economy of the United States."  *Cortez v. Trans Union, LLC*, 617 F.3d 688, 696 (3d Cir. 2010). OFAC maintains a database of purported terrorists, narcotics traffickers, money launderers, and other enemies of the state on its "Specially Designated National and Blocked Persons List" (the "OFAC list").  *Id.*  Certain financial institutions are required to consult the OFAC list before transacting with individuals.  *See* 31 U.S.C. § 5318(l)(2).  In *Cortez v. Trans Union, LLC*, the Third Circuit held that information regarding a consumer's appearance on the OFAC list is part of the consumer's "file" for the purposes of the FCRA and is thus subject to the Act's reporting requirements under 15 U.S.C. § 1681g.  *See* 617 F.3d at 712.  This case is one of several that have been filed against Trans Union since *Cortez* alleging claims based on Trans Union's reporting of OFAC information.

United States District Court
Northern District of California

http://www.ustreas.gov/offices/enforcement/ofac/faq/index.shtml

FAC ¶¶ 25-28.

Following the words, "the name on your credit file is," the disclosure contained "no data at all, intentionally leaving the space blank, and leaving consumers such as [Larson] to wonder what information from the OFAC list [Trans Union] thinks is attributable to them." FAC ¶ 29. The parties do not dispute that Larson is not on the OFAC list, and that his name is not a "potential match" to any OFAC record. *See, e.g.*, FAC ¶ 34; Answer ¶ 34 (Dkt. No. 53).

According to materials submitted by the parties in conjunction with these motions, Trans Union first enabled consumers with potentially matching OFAC data to obtain that information online on September 22, 2011. *See, e.g.*, Trans Union's Rog. Resp. Set 1 at 8-9 (Soumilas Decl. Ex. 2, Dkt. No. 62-9); Garst Depo. at 51 (Soumilas Decl. Ex. 3, Dkt. No. 62-11). Before implementing the OFAC disclosure functionality, Trans Union provided sample files to its software vendor, Saksoft, for coding and testing. Class Cert. Opp. at 5; Garst Depo. at 58-60 (Newman Decl. Ex. B, Dkt. No. 72-8); Thackrey Depo. at 63-64 (Newman Decl. Ex. C, Dkt. No. 72-10). The OFAC software performed as intended during the testing process: sample files containing potentially matching OFAC data displayed the desired OFAC header and information, while sample files without potentially matching OFAC data displayed nothing at all regarding OFAC. Thackrey Depo. 64-65 (Newman Decl. Ex. C, Dkt. No. 72-10).

Trans Union first learned about a potential problem with its OFAC software on October 19, 2011, when its consumer relations operators reported "that they were getting phone calls from consumers about seeing the 'Possible OFAC Match' section on their online [file disclosures] and wanting to dispute it." Garst Depo. at 62 (Newman Decl. Ex. B, Dkt. No. 72-8). On or around October 20, 2011, Trans Union realized that the OFAC header that consumers were concerned about was not visible on its own consumer relations database. *Id.* at 63-64 ("Q: So the operators who would be handling the consumer calls couldn't even really see what the consumers were talking about? A: That's correct."). On Friday, October 21, 2011, Trans Union determined that the OFAC header was being misdisplayed as a result of a coding error in its software. Thackrey Depo. at 49 (Newman Decl. Ex. C, Dkt. No. 72-10). Trans Union immediately instructed Saksoft

1   to develop a fix.  Garst Depo. at 77 (Newman Decl. Ex. B, Dkt. No. 72-8).  Trans Union and

2   Saksoft attempted to implement the fix on Tuesday, October 25, 2011, but the attempt failed.  *Id.*

3   at 77-78.  Finally, by Friday, October 28, 2011, Trans Union was able to confirm that the defect

4   had been corrected.  *Id.*

5   **II.     PROCEDURAL BACKGROUND**

6            Larson filed this action on September 12, 2012 in the Superior Court of California for the

7   County of San Francisco, alleging claims against Trans Union under the California Consumer

8   Credit Reporting Agencies Act ("CCRAA").  Dkt. No. 1 at 11.  Trans Union removed the case to

9   federal court on November 7, 2012.  *Id.* at 1.  On October 15, 2013, I granted Trans Union's

10  motion to dismiss Larson's original complaint.  Dkt. No. 33.  Larson's first amended complaint

11  alleges claims under the CCRAA and the FCRA.  FAC ¶¶ 1, 49-59.  On April 14, 2014, I issued

12  an order dismissing the CCRAA claims but allowing the FCRA claims to proceed.  Dkt. No. 52.

13           Larson's FCRA claims are based on alleged violations of the Act's requirement that

14  a credit reporting agency "clearly and accurately" disclose to a consumer "[a]ll information in the

15  consumer's file" upon request.  15 U.S.C. § 1681g(a).  Larson asserts that Trans Union violated

16  this requirement in two ways.  His first claim "arises out of the juxtaposition of the statement,

17  'The OFAC record that is considered a potential match to the name on your credit file is,' and the

18  blank space that follows."  Class Cert. Mot. at 5; *see also* FAC ¶ 57.  Larson contends that a

19  person faced with this information cannot determine whether (a) he potentially matches a name on

20  the OFAC list but Trans Union is not disclosing the identity of the potential OFAC match; or

21  (b) he does not potentially match any name on the OFAC list.  Class Cert. Mot. at 5.

22           Larson also asserts that by describing the OFAC information as "additional information"

23  that is "provided as a courtesy" and that is not part of the file disclosure, Trans Union "le[ft]

24  [Larson] and the class confused as to whether they had the right to dispute such information."

25  FAC ¶ 50; *see also* Class Cert. Mot. at 6 ("Trans Union represented to consumers that the OFAC

26  information is not part of their credit report and that Trans Union was providing it as a 'courtesy'

27  and not as required by law.  Both statements are false.").

28

United States District Court
Northern District of California

4

1    Larson claims that both violations were willful and seeks statutory damages under 15

2    U.S.C. § 1681n(a).  FAC ¶¶ 50, 57.

3    Trans Union filed its motion for summary judgment on March 13, 2015.  Dkt. No. 66.

4    Larson moved for class certification the same day.  Dkt. Nos. 63, 64.  Larson seeks to certify a

5    Rule 23(b)(3) class defined as

6        [a]ll persons residing at an address within the State of California to
         whom Trans Union LLC provided a Personal Credit Report, from
7        September 22, 2011 until October 27, 2011, substantially similar in
         form to the one Trans Union provided to [Larson] dated October 26,
8        2011.

9    Class Cert. Mot. 7, 15.  I heard argument from the parties on May 6, 2015.  Dkt. No. 77.

10                                   **LEGAL STANDARD**

11   **I.      FEDERAL RULE OF CIVIL PROCEDURE RULE 23**

12   Federal Rule of Civil Procedure 23 governs class actions.  "Before certifying a class, the

13   trial court must conduct a rigorous analysis to determine whether the party seeking certification

14   has met the prerequisites of Rule 23."  *Mazza v. Am. Honda Motor Co., Inc.,* 666 F.3d 581, 588

15   (9th Cir. 2012) (internal quotation marks omitted).  The burden is on the party seeking

16   certification to show, by a preponderance of the evidence, that the prerequisites have been met.

17   *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

18   Certification under Rule 23 is a two-step process.  The party seeking certification must first

19   satisfy the four threshold requirements of Rule 23(a) – numerosity, commonality, typicality, and

20   adequacy.  Specifically, Rule 23(a) requires a showing that

21       (1) the class is so numerous that joinder of all members is
22       impracticable;

23       (2) there are questions of law or fact common to the class;

24       (3) the claims or defenses of the representative parties are typical of
         the claims or defenses of the class; and

25       (4) the representative parties will fairly and adequately protect the
26       interests of the class.

27       Fed. R. Civ. P. 23(a).

28

United States District Court
Northern District of California

5

United States District Court
Northern District of California

The party seeking certification must then establish that one of the three grounds for certification applies.  *See* Fed. R. Civ. P. 23(b).  Larson invokes Rule 23(b)(3), which provides that a class action may be maintained where

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotation marks omitted).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Id.* (internal quotation marks omitted).

In considering a motion for class certification, the substantive allegations of the complaint are accepted as true, but "the court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through a class action."  *Hanni v. Am. Airlines, Inc.*, No. 08-cv-00732-CW, 2010 WL 289297, at *8 (N.D. Cal. Jan. 15, 2010); *see also Jordan v. Paul Fin., LLC,* 285 F.R.D. 435, 447 (N.D. Cal. 2012) ("[Courts] need not blindly rely on conclusory allegations which parrot Rule 23 requirements.").  Accordingly, "the court may consider supplemental evidentiary submissions of the parties."  *Hanni*, 2010 WL 289297, at *8; *see also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

"A court's class-certification analysis . . . may entail some overlap with the merits of the plaintiff's underlying claim."  *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct.

1    1184, 1194 (2013) (internal quotation marks omitted).  However, "Rule 23 grants courts no license

2    to engage in free-ranging merits inquiries at the certification stage."  *Id.* at 1194-95.  "Merits

3    questions may be considered to the extent – but only to the extent – that they are relevant to

4    determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.* at 1195.

5    **II.       THE FAIR CREDIT REPORTING ACT**

6           The FCRA "was crafted to protect consumers from the transmission of inaccurate

7    information about them, and to establish credit reporting practices that utilize accurate, relevant,

8    and current information in a confidential and responsible manner."  *Guimond v. Trans Union*

9    *Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (internal citations omitted).  "[T]hese

10   consumer oriented objectives support a liberal construction of the FCRA."  *Id.*

11          15 U.S.C. § 1681g, the FCRA provision on which Larson's claims are based, states in

12   relevant part that "[e]very consumer reporting agency shall, upon request, and subject to section

13   1681h(a)(1)[2] of this title, clearly and accurately disclose to the consumer . . . [a]ll information in

14   the consumer's file at the time of the request."  15 U.S.C. § 1681g(a).  A file disclosure is

15   inaccurate for the purposes of the FCRA if it is "materially misleading."  *Carvalho v. Equifax Info.*

16   *Servs., LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010).  Information is "materially misleading" in this

17   context if it is "misleading in such a way and to such an extent that it can be expected to adversely

18   affect credit decisions."  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir.

19   2009) (internal quotation marks omitted).

20          A defendant who "willfully fails to comply with any requirement imposed under [the

21   FCRA] with respect to any consumer is liable to that consumer" for "any actual damages sustained

22   by the consumer as a result of the failure," or for statutory damages "of not less than $100 and not

23   more than $1,000."  15 U.S.C. § 1681n(a)(1)(A).  Willful violations of the FCRA also trigger

24   liability for "such amount of punitive damages as the court may allow," and for "reasonable

25   attorney's fees as determined by the court."  15 U.S.C. § 1681n(a)(1)(B)-(C).

26

27   _____

28   [2] Under section 1681h(a)(1), a credit reporting agency must require a consumer to "furnish proper identification" before issuing a file disclosure under section 1681g.  15 U.S.C. § 1681h(a)(1).

United States District Court
Northern District of California

An FCRA violation is willful where it is made either knowingly or with reckless disregard for the requirements imposed under the Act. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 56-60 (2007); *Robins*, 742 F.3d at 411 n.1 ("Willful violations within the meaning of 15 U.S.C. § 1681n include violations in reckless disregard of statutory duty.") (internal quotation marks and alterations omitted). A defendant acts with reckless disregard for the purposes of the FCRA where its actions involve "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 68 (internal quotation marks omitted).[3]

## DISCUSSION

## I.    TRANS UNION'S MOTION FOR SUMMARY JUDGMENT

Trans Union moves for summary judgment on the basis of its third affirmative defense, which states that Larson's FCRA claims are barred because he was not entitled under 15 U.S.C. § 1681j to the free file disclosure he received on October 26, 2011. S.J. Mot. at 7; Answer ¶ 62. Trans Union contends that because Larson was not entitled to the free disclosure, he cannot establish that Trans Union was "required" to disclose it to him and thus cannot establish that Trans Union "willfully fail[ed] to comply with any requirement" of the FCRA, as required to impose statutory damages under 15 U.S.C. § 1681n(a). S.J. Mot. at 8. Trans Union states: "Because [Larson] had no right to receive the [free disclosure], Trans Union was not subject to any legal requirement to provide it. In the absence of any legal requirement, plaintiff is not entitled to any statutory damages under 15 U.S.C. § 1681n(a)." S.J. Reply at 1 (emphasis omitted).

Trans Union's argument turns largely on the interaction between 15 U.S.C. § 1681g and 15 U.S.C. § 1681j. Section 1681j authorizes credit reporting agencies to charge a reasonable fee, not to exceed $8.00, for file disclosures under section 1681g. 15 U.S.C. § 1681j(f)(1)(A). The statute enumerates several exceptions to this general rule, including that consumers are entitled to one free file disclosure per twelve-month period. 15 U.S.C. § 1681j(a)(1)(A). In addition, under 15 U.S.C. § 1681j(b),

---

[3] In contrast with willful violations, mere negligent violations do not provide a basis for statutory damages under the FCRA. Recovery for negligent violations is limited to actual damages under 15 U.S.C. § 1681o. Larson does not seek actual damages. *See* FAC ¶¶ 50, 57.

> [e]ach consumer reporting agency that maintains a file on a consumer shall make all disclosures pursuant to section 1681g of this title without charge to the consumer if, not later than 60 days after receipt by such consumer of a notification pursuant to section 1681m of this title, . . . the consumer makes a request under section 1681g of this title.

15 U.S.C. § 1681j(b).  Section 1681m requires "users of consumer reports" to notify the consumer if they take "any adverse action with respect to [the] consumer that is based in whole or in part on any information contained in a consumer report."  15 U.S.C. § 1681m(a).

The parties do not dispute the basic facts regarding Larson's receipt of the October 26, 2011 file disclosure.  As mandated by section 1681j(a)(1)(A), Trans Union provides consumers with one free disclosure per twelve-month period upon request.  Briddell Decl. ¶ 4 (Dkt. No. 66-1). Larson requested a free disclosure from Trans Union on July 15, 2010.  *Id.* ¶ 5.  Because Larson had already obtained a free disclosure from Trans Union within the preceding twelve months, Trans Union sent him a letter explaining that he was not entitled to a free disclosure but that he could purchase one for $8.00.  *Id.*

On August 11, 2011, Larson again requested a free disclosure from Trans Union.  *Id.* ¶ 6. This time, Trans Union provided it to Larson without charge, as more than twelve months had passed since his last free disclosure.[4]  *Id.*  On or around October 26, 2011, Larson submitted an online request for another free disclosure from Trans Union.  *Id.* ¶ 7.  Although less than three months had passed since his last free disclosure, Larson indicated that he was entitled to another by checking the box stating, "Within the last 60 days, you have received an adverse action notice based on information from your Trans Union credit report."  *Id.* at Ex. B at 7; *see also* Soumilas Decl. Ex. 4 at 885 (Dkt. No. 70-13).

Trans Union subsequently provided Larson with the disclosure that is the subject of this litigation.  Briddell Decl. ¶ 9.  Larson states that he requested the disclosure on October 26, 2011 "in part because he was concerned about the circumstances surrounding the closure of a Wells Fargo line of credit" in the summer of 2011.  S.J. Opp. at 2; *see also* Larson Depo. at 35-36 (Soumilas Decl. Ex. 3, Dkt. No. 70-12).  He states that when he made the request, he believed in

---

[4] Larson does not bring any claims based on this August 11, 2011 disclosure.

good faith that he was excepted from Trans Union's $8.00 fee because of an adverse action taken by Wells Fargo.  S.J. Opp. at 8.  However, he does not dispute that the closure of his Wells Fargo credit line occurred more than sixty days before October 26, 2011, that the closure does not actually qualify as an "adverse action" within the meaning of section 1681m, or that under section 1681j, he was not actually entitled to a free disclosure.

Trans Union contends that these undisputed facts entitle it to summary judgment.  Trans Union's argument is simple: because Larson's claims are based on section 1681n(a), the FCRA's statutory damages provision, Larson must show that Trans Union "willfully fail[ed] to comply with any requirement imposed under [the FCRA]" to prevail; Larson does not dispute that he was not entitled to receive the October 26, 2011 disclosure free of charge; thus, Trans Union was not required to provide it, and could not have "fail[ed] to comply with any requirement imposed under [the FCRA]" in doing so.  *See* S.J. Mot. at 8; S.J. Reply at 1.

I am not convinced.  Larson does not accuse Trans Union of willfully violating section 1681j – e.g., by charging him an $8.00 fee when he was entitled to a free disclosure.  If that were the case, evidence that he was not actually entitled to a free disclosure, and that Trans Union was in fact authorized under section 1681j to charge him a reasonable fee for one, would likely be of great significance.  *Cf. Edeh v. Equifax Info. Servs., LLC*, 919 F. Supp. 2d 1006, 1015 (D. Minn. 2013) (granting summary judgment for Equifax on plaintiff's section 1681j claim where "[t]here is no evidence currently before the Court that [plaintiff] was entitled to a free . . . disclosure from Equifax at the time of his requests").

Instead, Larson accuses Trans Union of willfully violating section 1681g.  As stated above, section 1681g requires credit reporting agencies to "clearly and accurately" disclose to a consumer "[a]ll information in the consumer's file" upon request.  15 U.S.C. § 1681g(a).  Trans Union assumes that this requirement applies only when the consumer has either paid a fee to the credit reporting agency, as authorized by section 1681j, or is entitled to a free disclosure under one of section 1681j's exceptions.  But that is not what section 1681g says.  Section 1681g's plain language provides that the statute's clear and accurate disclosure requirement is "subject to section 1681h(a)(1)," not section 1681j.  Section 1681h(a)(1) mandates only that the credit reporting

1  agency require proper identification as a condition of disclosing a consumer's file pursuant to

2  section 1681g; it does not mandate that the consumer pay a fee or qualify for a free disclosure

3  under section 1681j. *See* 15 U.S.C. § 1681h(a)(1) ("A consumer reporting agency shall require, as

4  a condition of making the disclosures required under section 1681g of this title, that the consumer

5  furnish proper identification."). There is no dispute here that Trans Union complied with section

6  1681h(a)(1) by requiring Larson to furnish proper identification, and that Larson furnished it.

7        Moreover, even if section 1681g's clear and accurate disclosure requirement were subject

8  to section 1681j, section 1681j does not *require* a consumer either to pay a fee or to qualify for an

9  exception to obtain his file from a credit reporting agency. The statute merely provides that absent

10  qualification for an exception, a credit reporting agency "*may* impose a reasonable charge on a

11  consumer" requesting a section 1681g disclosure. 15 U.S.C. § 1681j(f)(1)(A) (emphasis added).

12  Trans Union fails to identify any language in section 1681j, or in any other part of the FCRA,

13  indicating that section 1681g's clear and accurate disclosure requirement activates only upon

14  payment of a fee or qualification for an exception.

15        Trans Union contends that this reading of the FCRA renders section 1681j "meaningless,"

16  in that every time a consumer requests a file disclosure under section 1681g and produces adequate

17  identifying information, the credit reporting agency will be required to disclose the file, regardless

18  of whether the consumer pays a fee or qualifies for an exception. *See* S.J. Reply at 4. I disagree.

19  If Trans Union wishes to impose a requirement that it be paid prior to disclosing a consumer's file,

20  section 1681j gives it the authority to do so under certain conditions. But if Trans Union discloses

21  a consumer's file, it must do so in accordance with section 1681g, providing the consumer with a

22  clear and accurate disclosure. This reading neither renders section 1681j meaningless nor requires

23  a credit reporting agency to provide a file disclosure even where no fee has been paid and no

24  section 1681j exception applies. However, it does require that where, upon request, a credit

25  reporting agency provides a section 1681g disclosure to a consumer, that disclosure must be clear

26  and accurate.

27        Trans Union's motion for summary judgment on its third affirmative defense is DENIED.

28

**III.     LARSON'S MOTION FOR CLASS CERTIFICATION**

**A.     Stay Pending Resolution of the Appeal in *Spokeo, Inc. v. Robins***

On April 27, 2015, after the motion for class certification was fully briefed but before oral argument, the Supreme Court granted the petition for writ of certiorari in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014).  *See Spokeo, Inc. v. Robins*, No. 13-1339, 2015 WL 1879778, at *1 (U.S. Apr. 27, 2015).  In *Robins*, the Ninth Circuit held that the plaintiff had sufficiently alleged Article III standing, regardless of whether he had sufficiently alleged actual harm, by merit of his claims for willful violations of the FCRA under 15 U.S.C. § 1681n(a).  *See* 742 F.3d at 412-13.  The court observed that a willful violation claim under section 1681n(a) does not require a showing of actual harm, and where a "statutory cause of action does not require proof of actual damages, a plaintiff can suffer a violation of the statutory right without suffering actual damages." *Id.* at 413.  The court concluded that in the case before it, the "alleged violations of [the plaintiff's] statutory rights are sufficient to satisfy the injury-in-fact requirement of Article III."  *Id.* at 413-14. The question presented at the Supreme Court is "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."  *Spokeo, Inc. v. Robins*, 13-1339, "Question Presented," available at http://www.supremecourt.gov/search.aspx?filename=/docketfiles/13-1339.htm (last visited June 25, 2015).

At oral argument, I informed the parties that I was tentatively inclined to stay proceedings in this case pending resolution of the appeal in *Spokeo*.  I granted leave to submit supplemental briefing on the issue.  Larson filed a memorandum opposing a stay on May 27, 2015.  Dkt. No. 81. Trans Union filed a memorandum in support of a stay on June 3, 2015.  Dkt. No. 82.  Trans Union subsequently filed two notices of supplemental authority showing that Judge Corley had decided to stay proceedings in *Ramirez v. Trans Union, LLC*, No. 12-cv-00632, another case pending in this district arising from Trans Union's reporting of OFAC information, pending resolution of the *Spokeo* appeal.  *See* Dkt. No. 84 (minute entry); Dkt. No. 85 (stay order).

"[T]he power to stay proceedings is incidental to the power inherent in every court to

12

United States District Court
Northern District of California

1    control the disposition of the causes on its docket with economy of time and effort for itself, for

2    counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  In deciding whether

3    to stay proceedings pending resolution of an appeal in another action, a district court must weigh

4    various competing interests, including (1) the possible damage which may result from the granting

5    of a stay; (2) the hardship a party may suffer if the case is allowed to go forward; and (3) "the

6    orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and

7    questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398

8    F.3d 1098, 1110 (9th Cir. 2005); *see also CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

9    Whether to stay proceedings is entrusted to the discretion of the district court.  *See Landis*, 299

10   U.S. at 254-55 ("How this can best be done calls for the exercise of judgment, which must weigh

11   competing interests and maintain an even balance.").

12        The competing interests in this case favor a stay.  Larson and the class will not be

13   materially harmed by a stay pending resolution of the *Spokeo* appeal.  The Supreme Court is likely

14   to issue a decision in the case within one year.  Larson contends that he and the class will be

15   harmed by a stay for this period because witnesses will become difficult to locate, or will forget

16   their testimony as their "memories fade." Dkt. No. 81 at 7-8.  I agree with Trans Union that it is

17   implausible that a one-year delay will cause either of these things to occur, and Larson provides no

18   specific facts or reasoning that indicate otherwise.  As Trans Union points out and Larson does not

19   dispute, many key witnesses have already been deposed; their memories can be refreshed at trial

20   by their deposition transcripts, or, if they are unavailable, their deposition testimony can be read

21   into the record.  Larson identifies no other way in which he or the class will be prejudiced by a

22   stay.  Meanwhile, if the case is not stayed, the Court, the parties, and the absent class members

23   (who would soon receive class notice if the case were to go forward) would all face the risk of

24   dedicating substantial resources to proceedings that may ultimately prove unnecessary.

25        The question presented in the *Spokeo* appeal is squarely implicated in this case.  Larson's

26   arguments to the contrary are not convincing.  Larson's ability to establish injury-in-fact without

27   reliance on the FCRA's statutory damages provision has not been tested in this case and is far from

28   certain.  Even if Larson himself could make a sufficient showing of actual harm to satisfy Article

III, the record indicates that a significant portion of the putative class would not be able to do the same. A decision in *Spokeo* reversing the Ninth Circuit would thus raise serious questions regarding Larson's ability to establish his own individual standing, as well as the predominance and superiority requirements necessary to certify and maintain a class action under Rule 23(b)(3).

Shortly after granting the petition for writ of certiorari in *Spokeo*, the Supreme Court granted the petition for writ of certiorari in *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791 (8th Cir. 2014). *See Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146, 2015 WL 1278593, at *1 (U.S. June 8, 2015). One of the questions presented in that appeal is "[w]hether a class action may be certified or maintained under Rule 23(b)(3), or a collective action certified or maintained under the Fair Labor Standards Act, when the class contains hundreds of members who were not injured and have no legal right to any damages." *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146, "Question Presented," available at http://www.supreme court.gov/search.aspx?filename=/docketfiles/14-1146.htm (last visited June 25, 2015); *see also* Dkt. No. 83 (notice of supplemental authority). A decision in *Spokeo* reversing the Ninth Circuit would bring this issue from the *Tyson* appeal to the forefront of the class certification determination here, further counseling for issuance of a stay.

Accordingly, proceedings in this case are STAYED pending resolution of the appeal in *Spokeo*.

### B.     Tentative Ruling on Larson's Motion for Class Certification

Because the motion for class certification was fully briefed and argued under existing law, in this section of the Order I tentatively rule on class certification so that the case may proceed expeditiously once the stay is lifted. Within fourteen days of the date the Supreme Court issues its decision in *Spokeo*, the parties shall file a joint status report discussing (1) what impact, if any, the decision has on the following tentative ruling; (2) whether proceedings in this case should remain stayed pending resolution of the appeal in *Tyson*, if that appeal has not already been resolved; and (3) any other relevant matter. I will issue a final order on the motion for class certification or other appropriate order after the parties have filed the joint status report.

As stated earlier, Larson seeks to certify a Rule 23(b)(3) class defined as "[a]ll persons residing at an address within the State of California to whom Trans Union LLC provided a

personal credit report, from September 22, 2011 until October 27, 2011, substantially similar in form to the one Trans Union provided to [Larson] dated October 26, 2011." Class Cert. Mot. at 7.

Trans Union raises four reasons this class should not be certified: (1) the question of whether class members were actually confused by the OFAC header will require an individualized inquiry into the particular circumstances of each class member; (2) the evidence regarding Trans Union's state of mind varies considerably over the course of the class period, meaning that another individualized inquiry will be required to determine willfulness with respect to each allegedly unclear and inaccurate disclosure to each class member; (3) actual harm will also need to be proven on an individualized basis; and (4) because of the manner in which he obtained his October 26, 2011 file disclosure, his personal history, and his personal characteristics, Larson cannot establish either typicality or adequacy. *See, e.g.*, Class Cert. Opp. at 2-3. I address each of the requirements for class certification in turn, focusing on the issues raised by Trans Union.

### 1.     Rule 23(a)

#### a.     Numerosity

Rule 23(a)(1) requires that the "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The party seeking certification "do[es] not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity." *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005). However, courts generally find that numerosity is satisfied if the class includes forty or more members. *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014); *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012).

Trans Union does not dispute that numerosity is satisfied here. It concedes that during the class period approximately 18,000 consumers residing in California received file disclosures that contained an OFAC header substantially similar to the one in Larson's October 26, 2011 disclosure. *See, e.g.*, Class Cert. Opp. at 3, 15-16, 21, 24; Trans Union's Rog. Resp. Set 1 at 3. Larson asserts, and Trans Union does not dispute, that none of these putative class members were actually on the OFAC list, and that none should have received the OFAC notification. Class Cert. Mot. at 6-7. Larson has established numerosity.

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

United States District Court
Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.        Commonality

Class certification is appropriate only where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Even a single common question may be sufficient to establish commonality under Rule 23(a)(2). *Dukes*, 131 S. Ct. at 2556; *see also Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact."). However, that single common question must be capable of a single common resolution for the class as a whole, meaning that its resolution "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. In other words, common questions support a finding of commonality only where they "will generate common answers apt to drive the resolution of the litigation." *Id.* (emphasis omitted).

Larson identifies two common questions in this case: first, whether Trans Union violated section 1681g's clear and accurate disclosure requirement (either by the format and content of the OFAC header, or by describing the header as "additional information" that was "provided as a courtesy" and that was not part of the file disclosure); and second, whether Trans Union's alleged violations were willful. Class Cert. Mot. at 18. Larson contends that because each putative class member "was victimized by the same or similar . . . conduct," these questions will likely generate common answers for the class as a whole. *Id.*

Trans Union responds that answering the first question will require individualized inquiries into whether each class member actually read the relevant portion of his or her file disclosure, and whether he or she was actually confused by it. Class Cert. Opp. at 15-16. Trans Union offers a declaration by Professor Victor Stango, an expert on consumer behavior in financial service markets. Stango Decl. ¶ 2 (Dkt. No. 72-15). Stango opines that putative class members "would display diversity in whether they did or did not see and read the OFAC header," and that

1   "interpretations of the header would have been diverse." *Id.* ¶ 5.[5]

2          Trans Union argues that the willfulness issue is also incapable of class resolution because

3   the evidence regarding its state of mind varies considerably over the course of the class period.

4   Class Cert. Opp. at 17-18.  It points out that from the start of the class period on September 22,

5   2011 through October 18, 2011, it had "no inkling" of any problem with its OFAC disclosure

6   software.  *Id.* at 17.  It only began to learn of a potential defect on October 19, 2011 and did not

7   isolate the defect as a coding error until October 21, 2011.  *Id.*  It then worked "urgently" to

8   address the error until finally confirming on October 28, 2011 that the error had been resolved.  *Id.*

9   Trans Union contends that its "constantly evolving" state of mind during the class period, and its

10  "constant work to address the error after learning about it," preclude Larson from establishing

11  commonality on the basis of willfulness.  *Id.*

12         The question of whether Trans Union violated section 1681g's clear and accurate

13  disclosure requirement is sufficient to establish commonality.  Trans Union's argument that

14  answering this question will require individual inquiries into whether each class member was

15  actually confused by the OFAC header is unconvincing.  The plain language of section 1681g does

16  not require, either explicitly or implicitly, a showing of actual confusion.  *See* 15 U.S.C. §

17  1681g(a) ("Every consumer reporting agency shall, upon request, and subject to section

18  1681h(a)(1) of this title, clearly and accurately disclose to the consumer . . . [a]ll information in the

19  consumer's file at the time of the request.").  Trans Union offers no explanation of how this

20  language could be reasonably construed to require proof in this case that each particular consumer

21  who received the allegedly unclear and inaccurate OFAC header was actually confused by it.

22         Nor does it identify a single case, from this circuit or any other, holding that section 1681g

23  includes an actual confusion element.  It cites *Mazza v. American Honda Motor Co.* as an example

24

25  _____

[5] Larson objects to Stango's declaration on two grounds: (1) Trans Union did not disclose
    Stango's identity before the close of class certification discovery; and (2) the declaration does not
26  contain any opinion based on scientific, technical, or other specialized knowledge, but "merely
    states the obvious: that different individuals have different experiences that cause them to interpret
27  situations and language differently."  Class Cert. Reply at 4 n.1.  Larson also argues that Stango's
    opinion is irrelevant given that actual consumer confusion is not an element of a section 1681g
28  claim.  *Id.*  I agree with Larson that Stango's declaration is not relevant to the class certification
    determination in this case and do not consider it here.

of a case in which a class was found uncertifiable in part because of the need to determine on an individualized basis whether each class member reviewed and relied on the allegedly misleading material. *See* Class Cert. Opp. at 18-19. The court in *Mazza* vacated the trial court's class certification order, partly on the ground that "common questions of fact do not predominate where an individualized case must be made for each member showing reliance." 666 F.3d at 596. Trans Union contends that here also, "an individualized analysis would be required to determine whether consumers saw or read the OFAC header, and interpreted it to mean that they were on the OFAC list." *Id.* But *Mazza* did not involve claims under the FCRA. It involved claims under California's Consumer Legal Remedies Act, False Advertising Law, and Unfair Competition Law, each of which required the plaintiffs in that case to establish reliance to pursue their claims for damages. *See Mazza*, 666 F.3d at 591, 595-96. Trans Union cites no authority indicating that Larson or absent class members will need to make a similar showing here.

Trans Union also relies on a passage from the August 14, 2013 report and recommendation of Magistrate Judge Carlson in *Miller v. Trans Union LLC*, No. 12-cv-01715 (M.D. Pa. filed August 28, 2012), an FCRA case based on the same allegedly unclear and inaccurate OFAC header at issue here. In determining that Miller had stated a claim under section 1681g, Magistrate Judge Carlson quoted the OFAC header and observed that its language

> is ambiguous and is capable of being construed in at least two very different fashions: first, as an assertion that no match exists or, alternatively, as a representation that a potential match exists but that Trans Union has elected to make an incomplete disclosure and leave the potential match intentionally blank . . . The former interpretation would not be actionable. In contrast, the latter interpretation could give rise to liability under the FCRA. Since the disclosure may be susceptible of these two meanings, the file disclosure "may be deemed 'inaccurate' since the statement is presented in such a way that it may create a misleading impression." *Schweitzer v. Equifax Info. Solutions LLC*, 441 F. Appx. 896, 902 (3d Cir. 2011).

*Miller*, No. 12-cv-01715, Dkt. No. 50 at 20 (alterations omitted). Trans Union argues that this passage shows that "to the extent that a consumer actually interpreted the blank space [in the OFAC header] to mean that there was no OFAC data associated with his file, the [section 1681g] claim fails." Class Cert. Opp. at 13-14. I do not read the passage in the same way. While it does

state that liability will turn on how the OFAC header is interpreted, it does not state that this

determination must be made on an individualized basis, according to the subjective interpretation

of each individual class member.  Indeed, in *Schweitzer v. Equifax Info. Solutions LLC*, 441 F.

Appx. 896 (3d Cir. 2011), cited at the end of the passage, the Third Circuit assessed the accuracy

of the disclosures at issue by examining the disclosures themselves, not the plaintiff's subjective

interpretation of them.  *See id.* at 902-03.

The question whether Trans Union violated section 1681g willfully is also sufficient to

establish commonality.  Trans Union's contention that the willfulness determination will depend

on an examination of its "constantly evolving" state of mind during the class period is based on a

mischaracterization of Larson's theory of willfulness.  According to Larson, Trans Union willfully

violated the FCRA when it implemented its OFAC disclosure software without sufficient testing,

before any disclosures containing the OFAC header had been provided to class members.  Class

Cert. Reply at 1.  Contrary to Trans Union's assertions, *see* Class Cert. Opp. at 19, evaluating this

theory is not likely to require a series of distinct "day-by-day" or "minute-by-minute"

determinations.  Rather, it is likely to require a single inquiry: whether Trans Union "willfully

violated the FCRA when it implemented its [OFAC disclosure] software without sufficient

testing."  Class Cert. Reply at 1.  This inquiry is likely to focus on common evidence regarding

Trans Union's conduct before implementing its OFAC disclosure software, and it is likely to

generate a single, common answer for each class member, irrespective of when he or she received

an allegedly defective file disclosure.

In sum, whether Trans Union failed to provide putative class members with clear and

accurate file disclosures, and whether it did so willfully, are common questions that are likely to

generate common answers for the class as a whole.  Commonality is satisfied.

### c. Typicality and Adequacy

Typicality under Rule 23(a)(3) requires that "the claims or defenses of the representative

parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The purpose

of this requirement is to ensure that the interests of the named representatives align with those of

the rest of the class.  *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1174-75 (9th Cir.

United States District Court
Northern District of California

2010).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).

Similarly, to establish adequacy under Rule 23(a)(4), named plaintiffs must show that they "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011).

Trans Union raises several arguments with respect to Larson's ability to represent the putative class.  None have merit.

Trans Union first contends that Larson's claims are atypical because he was not entitled, under section 1681j, to the free file disclosure he received on October 26, 2011.  Class Cert. Opp. at 22.  This argument overlaps completely with Trans Union's motion for summary judgment on its third affirmative defense and fails for the same reasons as the motion.

Trans Union next argues that Larson's claims are atypical because Larson: (1) requested his file disclosure as a result of an alleged adverse action; (2) has a "long history" of ordering credit reports, carefully assessing them, and disputing their contents; and (3) has previously filed for bankruptcy.  Class Cert. Opp. at 23.  It is not clear how these circumstances could possibly render Larson unfit to represent the putative class.  Trans Union appears to argue that they make Larson unusually inclined to be confused or misled by the OFAC header.  *See id.* ("Other factors that may have led [Larson] to a more fraught reading of the blank space was his history of frequently disputing credit items [and] his previous bankruptcy . . . Consumers who do not frequently dispute items on their credit reports or who had not previously filed for bankruptcy would be less likely to be concerned by the blank space.").  However, as discussed above, Trans Union has failed to

United States District Court
Northern District of California

demonstrate that a plaintiff must show that he was actually confused or misled by the allegedly defective file disclosure to prevail on a section 1681g claim.

Third, Trans Union argues that Larson's claims are atypical because he received his file disclosure on October 26, 2011, by which point Trans Union had learned of the OFAC defect and was actively attempting to fix it.  Class Cert. Opp. at 23.  Trans Union contends that this timing makes Larson's claims atypical because many putative class members received their file disclosures before Trans Union had any knowledge of the defect.  *Id.*  This argument is another iteration of Trans Union's contention that the willfulness inquiry will require a series of distinct "day-by-day" or "minute-by-minute" determinations, and it fails for the reasons discussed above with respect to that contention.

Finally, Trans Union contends that Larson is an inadequate class representative because in 1986 he sustained a misdemeanor conviction for filing a false police report.  *See* Class Cert. Opp. at 24; Larson Depo. at 14-15 (Newman Decl. Ex. D, Dkt. No. 72-11).  Courts have held that "[p]rior criminal convictions can show dishonesty and can be a basis to bar an individual from acting as a class representative."  *Marquita Sanders v. W & W Wholesale Inc.*, No. 11-cv-03557, 2012 WL 3987629, at *5 (N.D. Ill. Sept. 11, 2012) (in action asserting claims against department store under the Fair and Accurate Credit Transaction Act, putative class representative was inadequate where she had "multiple convictions for felony retail theft, and she stated at her deposition that she had been arrested for retail theft 'probably a million' times").  However, a single misdemeanor conviction occurring nearly thirty years before class certification is hardly a per se bar to representing a class.  *See id.* (in same action, rejecting argument that other putative class representative's misdemeanor conviction from approximately ten years previous rendered her inadequate; stating, "[a] misdemeanor conviction that occurred approximately a decade ago is not alone a sufficient basis to conclude that [she] should be barred from acting as a representative of the class"); *see also Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (affirming adequacy of class representative despite prior convictions for "offenses involving dishonesty" where convictions were more than ten years old and class representative "had since taken positive steps in his life, including [graduating] from the University of

California").

"For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility," thereby adversely impacting the claims of absent class members. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) (internal quotation marks omitted); *accord Mendez v. R+L Carriers, Inc.*, No. 11-cv-02478-CW, 2012 WL 5868973, at *14 (N.D. Cal. Nov. 19, 2012); *Tierno v. Rite Aid Corp.*, No. 05-cv-02520-TEH, 2006 WL 2535056, at *4 (N.D. Cal. Aug. 31, 2006). Neither Larson's misdemeanor conviction, nor any other admissible evidence on record regarding his credibility, comes close to reaching that level.

I am satisfied that Larson's claims are reasonably coextensive with those of absent class members, and that he and his attorneys will fairly and adequately represent the interests of the class. Typicality and adequacy are met.

### 2.      Rule 23(b)(3)

#### a.      Predominance

The test for predominance under Rule 23(b)(3) asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. In contrast with commonality under Rule 23(a)(2), predominance focuses on the relationship between common and individual issues. *Hanlon*, 150 F.3d at 1022. The test for predominance is "far more demanding" than the one for commonality. *Amchem*, 521 U.S. at 623-24.

Trans Union argues that predominance is lacking here because individualized inquiries will be required with respect to three issues: actual confusion, willfulness, and actual harm. Class Cert. Opp. at 18-20, 24-25. I am not persuaded. Section 1681g does not require a showing of actual confusion. Variation among class members with respect to that issue is thus irrelevant to predominance. The willfulness issue also fails to defeat predominance. Because the evidence regarding willfulness will likely focus on Trans Union's alleged failure to sufficiently test its OFAC disclosure software before implementing it, the evidence regarding the issue will likely be common to the class. Assessing willfulness is not likely to require individualized inquiries.

United States District Court
Northern District of California

The issue of actual harm does not defeat predominance either, at least not under the law as it exists today. Judge Corley addressed a nearly identical argument in *Ramirez*. She concluded that the potential need to assess actual harm on an individualized basis is irrelevant to predominance because actual harm is not an element of a claim for statutory damages under 15 U.S.C. § 1681n(a). *See* 301 F.R.D. at 42-22. She relied on *Robins*, in which the Ninth Circuit held that the FCRA "does not require a showing of actual harm when a plaintiff sues for willful violations." 742 F.3d at 412. Several other circuit courts have reached the same conclusion. *See Hammer v. Sam's E., Inc.*, 754 F.3d 492, 498-99 (8th Cir. 2014); *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705-07 (6th Cir. 2009); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006); *see also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) ("The [Fair Debt Collection Practices Act] permits the recovery of statutory damages up to $1,000 in the absence of actual damages."); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006) (quoting same). I agree with Judge Corley that, under *Robins*, whether class members suffered actual harm is irrelevant to their claims for statutory damages under section 1681n(a) – the only claims they bring – and is thus irrelevant to the predominance analysis.

### b.    Superiority

Certification under Rule 23(b)(3) requires a showing that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Factors relevant to this determination include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal quotation marks omitted).

1    Trans Union does not contest superiority, and I find that it is satisfied.  There is no

2    indication that putative class members have any significant interest in individually prosecuting

3    their claims against Trans Union, there is no litigation underway elsewhere that weighs against

4    proceeding as a class here, it is desirable to concentrate the claims of this class of California

5    residents in a single California forum, and except for the arguments addressed elsewhere in this

6    Order, Trans Union has not identified any unusual difficulties that are likely to arise in managing

7    the case as a class action.  Larson has established superiority.

### 3.    Ascertainability

9    Trans Union argues that the proposed class is not ascertainable.  Class Cert. Opp. at 20-21.

10   Trans Union is wrong.

11   "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party

12   seeking class certification must demonstrate that an identifiable and ascertainable class exists."

13   *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  "A class is ascertainable if it identifies

14   a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a

15   member of that group to identify himself or herself as having a right to recover based on the

16   description."  *Hanni*, 2010 WL 289297, at *9; *see also Marsh v. First Bank of Delaware*, No. 11-

17   cv-05226-WHO, 2014 WL 554553, at *5 (N.D. Cal. Feb. 7, 2014).

18   In addition, "[t]he class definition must be sufficiently definite so that it is administratively

19   feasible to determine whether a particular person is a class member."  *Wolph v. Acer Am. Corp.*,

20   272 F.R.D. 477, 482 (N.D. Cal. 2011).  "Administrative feasibility means that identifying class

21   members is a manageable process that does not require much, if any, individual factual inquiry."

22   *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2014 WL 4652283, at *3 (N.D. Cal. Sept. 18,

23   2014) (internal quotation marks omitted).  The determination of administrative feasibility presents

24   "a question of degree" as to whether the identification of class members is "sufficiently facile" to

25   allow the class to proceed, or "excessively complex" so that denial of the class is warranted.  *Joyce*

26   *v. City & County of San Francisco*, No. 93-cv-04149, 1994 WL 443464, at *6 (N.D. Cal. Aug. 4,

27   1994).  The burden is on the party seeking certification to demonstrate ascertainability by a

28   preponderance of the evidence.  *See Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089

United States District Court
Northern District of California

24

1    (N.D. Cal. 2011).

2            Trans Union argues that Larson has failed to show the proposed class is ascertainable

3    because he has not offered any plan for determining which putative class members were confused

4    by the OFAC header.  Class Cert. Opp. at 20.  Trans Union states: "[I]t cannot be objectively

5    proven which specific consumers saw or read the OFAC header, and if so, whether they were

6    confused by it.  As such, [Larson] has failed to meet his burden of proving by a preponderance of

7    the evidence . . . that the class is ascertainable by reference to objective criteria and without having

8    to answer numerous fact-intensive questions." *Id.* at 21 (internal citations and quotation marks

9    omitted).

10           This argument fails.  Trans Union appears to confuse Larson's proposed class definition

11   with one that requires evidence that the consumer saw, read, and was confused by the OFAC

12   header.  That is not what Larson's proposed class definition says.  Rather, it limits the class to

13   persons (1) residing at a California address (2) to whom Trans Union provided a file disclosure

14   (3) from September 22, 2011 until October 27, 2011 (4) which was "substantially similar in form"

15   to the one received by Larson.  Class Cert. Mot. at 7.  These are objective criteria describing a

16   class of consumers who can likely be identified based exclusively on Trans Union's own records,

17   without the need for any fact-intensive inquiries.  Indeed, it appears that Trans Union has already

18   identified the putative class in the process of responding to Larson's discovery requests.  *See* Trans

19   Union's Rog. Resp. Set 1 at 3 (Dkt. No. 62-9).  The class is ascertainable.

20           For the reasons set forth above, I am tentatively inclined, based on current law, to grant

21   Larson's motion for class certification.

22   **IV.    ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL**

23           The parties filed a number of administrative motions to file under seal in conjunction with

24   their motions for summary judgment and class certification.[6]

25           On March 13, 2015, in conjunction with his motion for class certification, Larson moved to

26   file under seal (1) portions of the transcript of the deposition of James Garst; (2) portions of the

27

28   ────────────────
     [6] The stay of proceedings in this case does not apply to the sealing issues discussed in this Order.

United States District Court
Northern District of California

transcript of the deposition of John Thackrey; (3) several emails produced by Trans Union, submitted as Exhibits 5 to 7, 9 to 11, and 13 to the Soumilas Declaration; and (4) portions of the motion.  Dkt. No. 62.  The only stated ground for sealing is that Trans Union designated the documents as "confidential" or "highly confidential."  Trans Union submitted a declaration as required under Civil Local Rule 79-5(e).  Dkt. No. 67.  The motion is GRANTED with respect to the emails produced by Trans Union.  The motion is DENIED WITHOUT PREJUDICE with respect to the Garst and Thackrey deposition transcripts and the portions of the motion for class certification.[7]  Trans Union seeks to redact significantly more of these documents than appears necessary given its stated justifications for sealing.  If Trans Union wants the redacted portions of the deposition transcripts and the motion for class certification to remain under seal, it shall file an amended declaration within 7 days of the date of this Order narrowing its sealing requests and/or articulating specific reasons justifying those requests.

On April 3, 2015, in conjunction with his opposition to Trans Union's motion for summary judgment, Larson moved to file under seal: (1) portions of the transcript of the deposition of Brian Thackrey; (2) a number of documents produced by Trans Union; and (3) portions of the opposition brief.  Dkt. No. 70.  The only stated ground for sealing is that Trans Union designated the documents as "confidential" or "highly confidential."  Trans Union submitted a declaration as required under Civil Local Rule 79-5(e).  Dkt. No. 73.  The motion is DENIED WITHOUT PREJUDICE.  Trans Union again seeks to redact significantly more of these documents than appears necessary given its stated justifications for sealing.  It may file an amended declaration within 7 days from the date of this Order.

Also on April 3, 2015, in conjunction with its opposition to Larson's motion for class certification, Trans Union moved to file under seal: (1) portions of the deposition transcript of James Garst; (2) portions of the deposition transcript of Brian Thackrey; (3) portions of the declaration of Victor Stango; and (4) portions of the opposition brief.  Dkt. No. 72.  The motion is

---

[7] To the extent that this administrative motion to file under seal or any of the parties' other three sealing motions seek to seal information that is quoted or specifically discussed in this Order, they are DENIED WITH PREJUDICE.  This information is plainly not sealable under either the good cause standard or the compelling reasons standard.

United States District Court
Northern District of California

GRANTED with respect to the Thackrey deposition transcript, the Stango declaration, and the opposition brief. It is DENIED WITHOUT PREJUDICE with respect to the Garst deposition transcript, again because the sealing request appears overbroad in light of the stated justifications for sealing. Trans Union may file an amended declaration within 7 days from the date of this Order.

Finally, on May 14, 2015, Trans Union moved to have sealed a portion of the oral argument transcript. Dkt. No. 79. The motion is DENIED WITHOUT PREJUDICE for the reasons stated above. Trans Union may file an amended declaration within 7 days from the date of this Order.

## CONCLUSION

For the foregoing reasons:

(1) Trans Union's motion for summary judgment, Dkt. No. 66, is DENIED.

(2) Proceedings in this case are STAYED pending resolution of the appeal in *Spokeo*. Within fourteen days of the date the Supreme Court issues its decision in *Spokeo*, the parties shall file a joint status report discussing (a) what impact, if any, the decision has on the tentative ruling on Larson's motion for class certification; (b) whether proceedings in this case should remain stayed pending resolution of the appeal in *Tyson*, if that appeal has not already been resolved; and (c) any other relevant matter. I will issue a final order on the motion for class certification or other appropriate order after the parties file the joint status report.

(3) Larson's motion for class certification, Dkt. Nos. 63, 64, is taken under submission pending resolution of the matters described in paragraph (2) above.

(4) The parties' administrative motions to file under seal, Dkt. Nos. 62, 70, 72, and 79, are decided as stated above. The stay of proceedings in this case does not apply to the sealing issues discussed in this Order.

**IT IS SO ORDERED**.

Dated: June 26, 2015



WILLIAM H. ORRICK
United States District Judge