ANDERSON, OGILVIE & BREWER, LLP
ANDREW J. OGILVIE
235 Mongomery St. Suite 914
San Francisco, CA 94104
Telephone: 415-651-1952
Facsimile:  415-956-3233
andy@aoblawyers.com
carol@aoblawyers.com

FRANCIS & MAILMAN, P.C.
JOHN SOUMILAS (*Pro Hac Vice*)
DAVID A. SEARLES (*Pro Hac Vice*)
100 South Broad Street, 19th Floor
Philadelphia, PA 19110
Telephone:  215-735-8600
Facsimile:   215-940-8000
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com

Attorneys for Plaintiff
BRIAN DOUGLAS LARSON

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIAN DOUGLAS LARSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION, LLC,<br><br>Defendant. | Case No. 3:12-cv-05726-WHO<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION**<br><br>Date: July 20, 2016<br>Place: Courtroom 2, 17th Floor |

**TABLE OF CONTENTS**

I. BACKGROUND ...........................................................................................................1

II. ARGUMENT ................................................................................................................2

    A. Plaintiff And All Class Members Have Article III Standing .................................2

        1. The U.S. Supreme Court's Decision In *Spokeo* Did Not Change The Law On Article III Standing ..............................................................................2

        2. Plaintiff Suffered Concrete And Particularized Informational Injury .........4

            i. Historical Framework: The FCRA ........................................................4

            ii. Plaintiff And All Class Members Suffered Concrete Informational Injury ..............................................................................5

    B. Class Treatment Of Plaintiff's Claims Remains Warranted ...................................6

        1. Plaintiff's Clear Article III Standing Is Sufficient For Class Action Purposes ....................................................................................................7

        2. Binding Ninth Circuit FCRA Jurisprudence Confirms That Class Treatment Is Appropriate Here ..................................................................8

            i. The Class Claims Present Common And Predominating Questions ..8

            ii. The Class Is Ascertainable ..............................................................10

            iii. Class Treatment Is A Superior Method Of Resolving This Dispute 12

III. CONCLUSION ..........................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Acosta v. Trans Union, LLC*,
   240 F.R.D. 564 (C.D. Cal. 2007) .................................................................................. 9

*Ashby v. Farmers Ins. Co. of Oregon*,
   592 F. Supp. 2d 1307 (D. Or. 2008) ............................................................................ 10

*Bateman v. Am. Multi–Cinema, Inc.*,
   623 F.3d 708 (9th Cir. 2010) ......................................................................................... 9

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ..................................................................................... 7, 11

*Campbell v. Facebook*
   ___ F.R.D. ___, 2016 WL 2897936 (N.D. Cal. May 18, 2016) ................................ 10

*Church v. Accretive Health, Inc.*,
   ___ Fed. App'x ___, 2016 WL3611543 (11th Cir. July 6, 2016) ................................ 6

*Cortez v. Trans Union, LLC*,
   617 F.3d 688 (3d Cir. 2010) .......................................................................................... 5

*Fed. Election Comm'n v. Akins*,
   524 U.S. 11 (1998) ..................................................................................................... 5, 9

*Friends of Yosemite Valley v. Kempthome*,
   520 F.3d 1024 (9th Cir. 2008) ....................................................................................... 9

*Guimond v. Trans Union Credit Info. Co.*,
   45 F. 3d 1329 (9th Cir. 1995) ..................................................................................... 4, 9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................... 2, 3

*Manuel v. Wells Fargo Bank Nat. Ass'n*,
   123 F. Supp. 3d 810 (E.D. Va. 2015) ........................................................................ 6, 9

*Murray v. GMAC Mortg. Corp.*,
   434 F.3d 948 (7th Cir. 2006) ......................................................................................... 9

*Ollier v. Sweetwater Union High School Dist.*,
   768 F.3d 843 (9th Cir. 2014) ..................................................................................... 7, 11

*Public Citizen v. Dep't of Justice*,
   491 U.S. 440 (1989) ................................................................................................... 6, 9

*Ryals v. Strategic Screening Solutions, Inc.*,
   117 F. Supp. 3d 746 (E.D. Va. 2015) ........................................................................ 6, 9

*Spokeo, Inc. v. Robins*,
   742 F.3d 409 (9th Cir. 2014) ................................................................................. passim

*Stearns v. Ticketmaster Corp.*,

  655 F.3d 1013 (9th Cir. 2011) ................................................................................................ 7, 11

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83, 102 (1998) ............................................................................................................. 3

*Stillmock v. Weis Mkts., Inc.*,
  385 Fed. Appx. 267 (4th Cir. 2010) .......................................................................................... 9

*Summers v. Earth Island Institute*,
  555 U.S. 488 (2009) ................................................................................................................... 4

*Thomas v. FTS USA, LLC*,
  No. 3:13-cv-00825 (E.D. Va. June 30, 2016) ........................................................................ 3, 5

*Tyson Foods, Inc. v. Bouaphakeo*,
  765 F. 3d 791 (8th Cir. 2014) ............................................................................................... 1, 11

*Waller v. Hewlett-Packard Co.*,
  295 F.R.D. 472 (S.D. Cal. 2013) ............................................................................................... 7

**STATUTES**

15 U.S.C. § 1681g ............................................................................................................... *passim*

15 U.S.C. § 1681g(a) ................................................................................................................ 4, 5

15 U.S.C. § 1681n .................................................................................................................. 9, 10

**OTHER AUTHORITIES**

S. Rep. No. 517, 91st Cong., 1st Sess. 2 ........................................................................................ 5

**RULES**

Fed. R. Civ. P. 23 ..................................................................................................................*passim*

**OTHER**

1 *Newberg on Class Actions* § 2.05 at 2–29 (3d Ed.1992) ............................................................ 7

116 Cong. Rec. 36579 (1970) ........................................................................................................ 5

Amy Howe, *Opinion analysis: Case on standing and concrete harm returns to the Ninth
  Circuit, at least for now*, SCOTUSblog (May 16, 2016) ......................................................... 3

Daniel J. Solove, Spokeo, Inc. v. Robins*: When Is a Person Harmed by a Privacy Violation?*,
  Geo. Wash. L. Rev. On the Docket (May 19, 2016) ................................................................ 3

# I.  BACKGROUND

More than one year ago, on June 26, 2015, this Court denied Defendant Trans Union LLC's motion for summary judgment and tentatively granted Plaintiff Brian Douglas Larson's motion for class certification.  Dkt. No. 86.  This case was also stayed at that time because the U.S. Supreme Court had granted certiorari in *Spokeo, Inc. v. Robins*, 742 F.3d 409 (9th Cir. 2014) ("*Spokeo*") and *Tyson Foods, Inc. v. Bouaphakeo*, 765 F. 3d 791 (8th Cir. 2014) ("*Tyson Foods*").  This Court ordered supplemental briefing on "what impact, if any" these decision have on this case, Dkt. No. 86 at p. 27; and more recently (after *Spokeo* and *Tyson Foods* were decided by the U.S. Supreme Court) lifted the stay in this matter and approved the parties' proposed briefing schedule on this question.  Dkt. No. 93.

The short answer is that *Spokeo* and *Tyson Foods* have no impact on this case.  These decisions did not at all alter the standards of Fed. R. Civ. P. 23 on which this Court relied to tentatively grant Plaintiff's motion for class certification.  These decisions also did not alter the jurisprudence under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), the substantive claim in this case.   And these decision did not alter the jurisprudence on Article III standing.  Federal courts have always been courts of limited jurisdiction, and *Spokeo* merely reaffirmed existing precedent.  Indeed, *Spokeo* explicitly held, consistent with prior case law, that "informational injury" confers standing.  This has been an informational injury case from the beginning, and Defendant has not – to this day – challenged the Article III standing of either Plaintiff or the class.  Nor could it.  Defendant removed this case from California state court, presumably because it understood that this Court also has jurisdiction over this matter.  Dkt. No. 1. Defendant cannot now manufacture a defense that did not exist a year ago – because the controlling

law is still the same, on Article III standing, Rule 23 and the FCRA.  This Court should therefore order that notice be sent to the class, and set this case for trial.

## II.     ARGUMENT

### A.     Plaintiff And All Class Members Have Article III Standing

#### 1.     The U.S. Supreme Court's Decision In *Spokeo* Did Not Change The Law On Article III Standing

The U.S. Supreme Court issued its opinion in the *Spokeo* on May 16, 2016, vacating and remanding the case to the U.S. Court of Appeals for the Ninth Circuit for further proceedings. ___ U.S. ___, 136 S. Ct. 1540 (2016).  This decision did nothing to change existing law on Article III standing, but merely reaffirmed existing law.  The Supreme Court's ruling in *Spokeo* confirmed that a litigant must demonstrate that it has suffered "'an invasion of a legally protected interest that is concrete and particularized. . . ." *Spokeo*, 136 S. Ct. at 1548 (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  *Spokeo* confirmed that the violation of statutory procedures designed to protect a statutorily granted right "can be sufficient in some circumstances to constitute injury in fact" without demonstrating more.  *Id.* at 1549-50.

Elaborating on the meaning of concreteness, the Court in *Spokeo* distilled several "general principles" from its prior cases, without going beyond those cases. *Id.* at 1550. First, it acknowledged that, although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete injuries, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Id.* at 1549-50. Second, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* at 1549. So if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—or, put in fewer words, if "the common law permitted suit" in analogous circumstances—the plaintiff will have

suffered a concrete injury that can be redressed by a federal court. *Id.* at 1549-50; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (explaining that Article III encompasses "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process").

In fact, a plaintiff need not dig up a common-law analogue to establish a concrete injury, because Congress has the power (and is in fact "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* emphasized that Congress can elevate even procedural rights to a concrete injury if they protect against an identified harm. Of course, "a bare procedural violation, divorced from any concrete harm" identified by Congress, will not give rise to an Article III injury. *Id.* at 1549. But a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right, and may do so "without meeting all the normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992).

Both commentators and courts have recognized that none of the principles set forth in *Spokeo* are new. *Thomas v. FTS USA, LLC*, No. 3:13-cv-00825 (E.D. Va. June 30, 2016) Dkt. No. 228 at p. 11 ("*Spokeo* did not change the basic requirements of standing.") (Payne, J.). *See also*, Amy Howe, *Opinion analysis: Case on standing and concrete harm returns to the Ninth Circuit, at least for now*, SCOTUSblog (May 16, 2016), available at http://bit.ly/1TB3vd1 (describing *Spokeo* as a "narrow" decision); Daniel J. Solove, Spokeo, Inc. v. Robins*: When Is a Person Harmed by a Privacy Violation?*, Geo. Wash. L. Rev. On the Docket (May 19, 2016), available at http://bit.ly/20fyAmS. *Spokeo* did not even apply these principles to the facts before it, choosing instead to remand the case to the Ninth Circuit, whose previous analysis was "incomplete" because

it had "overlooked" concreteness. 136 S. Ct. at 1545. The Court, in other words, offered no assessment of the Ninth Circuit's analysis below, aside from its determination that the Ninth Circuit had failed to analyze concreteness as a separate step in the injury-in-fact inquiry.

Defendant nonetheless claims that *Spokeo* broke new ground. As explained above, however, the High Court did nothing of the sort. That a "bare procedural violation, divorced from any concrete harm" is not enough to confer standing is a well-established principle of Article III standing. *Spokeo*, 136 S. Ct. at 1549 (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.")). Thus, despite Defendant's efforts to exaggerate the decision's importance, *Spokeo* has done nothing to change (or even clarify) the law; it simply summarizes the doctrine and provides examples of injuries that might (or might not) constitute sufficiently concrete harm. *Spokeo* therefore should not alter this Court's analysis of this case.

**2. Plaintiff Suffered Concrete And Particularized Informational Injury**

i. <u>Historical Framework: The FCRA</u>

The statutory text and legislative history of the FCRA each underscore the substance and importance of the rights Congress created and which Plaintiff seeks to enforce through this action.

Section 1681g(a) of the FCRA, at issue in this case, governs when a consumer is entitled to a disclosure of the information in his or her consumer file, and states that "[e]very consumer reporting agency shall upon request . . . clearly and accurately disclose to the consumer (1) All information in the consumer's file at the time of the request . . . ." 15 U.S.C. § 1681g(a).

Congress enacted the FCRA out of concerns about abuses in the consumer reporting industry. *Guimond v. Trans Union Credit Info. Co.*, 45 F. 3d 1329, 1333 (9th Cir. 1995). Specifically, Congress sought to address developments in "computer technology [that] facilitated

the storage and interchange of information," and "open[ed] the possibility of a nationwide data bank covering every citizen." S. Rep. No. 517, 91st Cong., 1st Sess. 2 ("Senate Report"). As one legislator stated, "with the trend toward . . . the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause . . . ." 116 Cong. Rec. 36579 (1970) (Rep. Sullivan).

Among the chief concerns that Congress specifically recognized was consumers' lack of access to the information that consumer reporting agencies were automatically associating with consumers. *See* Senate Report at 3 (noting the "inability at times of the consumer to know he is being damaged"). Congress thus enacted section 1681g(a) to allow consumers to obtain complete and accurate information about what exact information was placed in their files by the "unthinking machine" of a CRA. It is clear from the FCRA's legislative history that Congress intended that the FCRA be construed "to promote the credit industry's responsible dissemination of accurate and relevant information" and affords consumers the right to receive certain specified information. *Thomas v. FTS USA, LLC*, No. 3:13-cv-00825 (E.D. Va. June 30, 2016) Dkt. No. 228 at pp. 21-22. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 712 (3d Cir. 2010) (FCRA disclosure requirements are intended to apply to a broad range of information, specifically including information about OFAC records).

      ii. <u>Plaintiff And All Class Members Suffered Concrete Informational Injury</u>

As recognized by numerous courts, including the Supreme Court in *Spokeo*, denial of access to information is a concrete harm giving rise to Article III standing. *Spokeo*, 136 S. Ct. at 1549 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998) for the proposition that "'inability to obtain information'" that Congress mandated to be disclosed is a concrete injury);

*Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) (finding that failure to disclose information under Federal Advisory Committee Act is an injury conferring standing); *Church v. Accretive Health, Inc.*, ___ Fed. App'x ___, 2016 WL3611543, at *2-3 & n.2 (11th Cir. July 6, 2016) (citing *Spokeo* and finding that receiving mandated disclosures is a substantive right, the denial of which gives rise to standing).  The existence of cognizable informational injury has also been recognized in the FCRA context.  *See Ryals v. Strategic Screening Solutions, Inc.*, 117 F. Supp. 3d 746, 751-54 (E.D. Va. 2015) (failure to provide complete disclosure pursuant to FCRA section 1681g is a concrete injury giving rise to standing); *Manuel v. Wells Fargo Bank Nat. Ass'n*, 123 F. Supp. 3d 810, 818 (E.D. Va. 2015) (informational injury exists under the FCRA when a consumer does not receive the type of information he was entitled to receive under the FCRA).

Plaintiff has consistently plead that he and all other class members suffered an informational injury, because they were deprived of a clear and complete disclosure of all information in their files.  Compl., Dkt. No. 1 at ¶ 30-31, 39; Am. Compl., Dkt. No. 39 at ¶¶ 36-38; Plaintiff's Motion to Certify Class, Dkt. No. 64 at pp. 13-14.  As set forth above, these informational injuries are well-recognized as concrete and particularized harms giving rise to Article III standing.

**B.**     **Class Treatment Of Plaintiff's Claims Remains Warranted**

*Spokeo* has no impact whatsoever on class certification analysis in this or any other case. The opinion makes no reference to Rule 23 or any of its subparts, and Ninth Circuit precedent makes clear that only the named plaintiff in a class action must have standing.  Furthermore, the Supreme Court's decision in *Spokeo* does not speak to the substantive requirements of the FCRA or how to prove a willful violation of section 1681g thereof.  Trans Union merely repeats its prior arguments regarding predominance and ascertainability, attempting to recast them as *Spokeo*

issues. But there is ample and binding Ninth Circuit jurisprudence on these issues which allows this Court to find class action treatment is appropriate in this case, without any reference to *Spokeo*.

### 1. Plaintiff's Clear Article III Standing Is Sufficient For Class Action Purposes

Under Ninth Circuit precedent the fact that a class representative has Article III standing is sufficient to invoke federal court jurisdiction, even if other class members do not have standing. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements. . . . Thus, we consider only whether at least one named plaintiff satisfies the standing requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *see also Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 865 (9th Cir. 2014). More recently, "the Ninth Circuit insisted that only the standing of the representative party matters anyway: '[O]ur law keys on the representative party, not all of the class members, and has done so for many years.'" *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 476 (S.D. Cal. 2013) (citing and quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011)).[1] *Spokeo* does not, as Trans Union asserts, disturb these precedents, or in fact speak in any way about standing requirements in class actions.

Thus, once the class representative demonstrates Article III standing, the existence of concrete injury to absent class members is simply a Rule 23 issue, resolved depending upon the substantive law on which the class claims are based. *See Stearns v. Ticketmaster Corp.*, 655 F.3d at 1021; *Waller v Hewlett-Packard Co.*, 295 F.R.D. at 476-79.

Plaintiff Larson plainly has Article III standing in the form of informational injury, as set forth above. Indeed, although he need not do so, Plaintiff has demonstrated that *all* class members

---

[1] The leading class action treatise agrees: "Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense." 1 *Newberg on Class Actions* § 2.05 at 2–29 (3d Ed.1992).

suffered the same informational injury when Trans Union failed to provide them with complete and accurate file disclosures. Any further consideration of the injuries of class members is an issue of Rule 23 and the substantive law of the FCRA.

### 2. Binding Ninth Circuit FCRA Jurisprudence Confirms That Class Treatment Is Appropriate Here

As it did in its original opposition to Plaintiff's Motion to Certify Class, Trans Union continues to oppose class certification by misstating Plaintiff's claims and the requirements of FCRA section 1681g. Plaintiff's straightforward claim is that Trans Union willfully violated the FCRA by failing to "clearly and accurately" disclose the information in its files to each member of the proposed class upon request. 15 U.S.C. § 1681g. As before, Trans Union's arguments fail.

#### i. The Class Claims Present Common And Predominating Questions

The heart of Trans Union's argument in its supplemental brief is the same flawed premise found in its earlier briefing – that a FCRA section 1681g claim requires proof that the consumer read and was confused or misled by disclosure. This Court has already rejected this argument, and there has been no change in the law or the facts to support a different conclusion. As this Court found, "[s]ection 1681g does not require a showing of actual confusion." Dkt. No. 86 at p. 17-18, 22. Rather, the common and predominating question here is whether Trans Union's disclosure format, which was identical for all class members, was sufficiently clear and accurate to satisfy the FCRA. *Id.* at 19, 22.

Trans Union's arguments regarding actual harm rely upon the same faulty interpretation of section 1681g, by asserting that "numerous mini-trials" regarding which class members read its disclosures "or who (even among the readers) was concretely injured by them." Dkt. No. 96 at p. 17. But this assumes that the relevant injury that a consumer must show is actual confusion,

which is clearly not the case. Rather, as recognized by numerous courts including the Supreme Court in *Spokeo*, informational injury resulting from inadequate statutorily-mandated disclosures is a concrete actual harm. *Fed. Election Comm'n v. Akins*, 524 U.S. at 20-25 *Public Citizen v. Dep't of Justice*, 491 U.S. at 449; *Ryals*, 117 F. Supp. 3d at 751-54; *Manuel*, 123 F. Supp. 3d at 818. Although such harm is small and difficult to calculate, it is the same for all class members, and this is precisely the situation where FCRA statutory damages are appropriate. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952-53 (7th Cir. 2006).

Furthermore, the Supreme Court's *Spokeo* decision addressed only Article III standing concerns, and did nothing to affect the burden of proof for a claim of willful non-compliance with the FCRA, which allows for recovery of statutory damages without proof of any actual damage. *Bateman v. Am. Multi–Cinema, Inc.*, 623 F.3d 708, 719 (9th Cir. 2010) (holding that "irrespective of whether Bateman and all the potential class members can demonstrate actual harm resulting from a willful violation, they are entitled to statutory damages."); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("it is not necessary that a plaintiff allege actual damages in order to state a claim for relief under the FCRA," statutory damages under 15 U.S.C. § 1681n "are available regardless of whether a plaintiff can show actual damages.").[2]

---

[2] Trans Union now argues for the first time that individualized statutory damages calculations defeat class treatment. Dkt. No. 96 at pp. 18-19. This issue is not properly raised at this juncture and should be disregarded. *Friends of Yosemite Valley v. Kempthome*, 520 F.3d 1024, 1033 (9th Cir. 2008) ("Arguments not raised by a party in its opening brief are waived."). In any event, numerous federal courts have found that statutory damages claims are appropriate for class treatment and do not require individualized calculations. *Bateman*, 623 F.3d at 718-19 (certifying statutory damages FCRA action); *Acosta v. Trans Union, LLC*, 240 F.R.D. 564, 571 (C.D. Cal. 2007) (noting that any distinction among claims of class members relating to the damages they suffered "is immaterial here where the FCRA awards statutory damages"); *Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267, 273 (4th Cir. 2010) ("Where, as here, the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to

Plaintiff and all class members have demonstrated sufficient actual harm to satisfy the standing requirements of Article III and maintain this case in federal court. Having satisfied this jurisdictional requirement, the only remaining questions are resolved under FCRA jurisprudence, which remains unchanged following *Spokeo*. This Court's prior analysis is thus still valid, and Plaintiff has satisfied the predominance requirement of Rule 23(b).

      ii.      <u>The Class Is Ascertainable</u>

Nothing in *Spokeo* affects this Court's conclusion that the class is ascertainable. Dkt. No. 86 at pp. 24-25. Trans Union's statement that recovery under 15 U.S.C. § 1681n is limited to persons suffering a concrete injury is simply incorrect – *Spokeo* and the discussion of concreteness relates to jurisdictional requirements of Article III standing and the ability to proceed in federal court, not the substantive requirements of recovery under the FCRA. All plaintiffs must have concrete harm under Article III in order to invoke the jurisdiction of a federal court, regardless of whether these plaintiffs seek an injunction, a declaratory ruling or some type of damages permitted by substantive law. But constitutional concrete harm is simply not the same as actual damages under the FCRA, and no court has ever ruled that FCRA actual damages are necessary for Article III standing or for a case to be maintained as a class action.

---

defeat class certification under Rule 23(b)(3)."). Indeed, in the only FCRA class action to proceed to a jury verdict, the U.S. District Court for the District of Oregon found that the most important factor in determining the amount of a statutory damages award is the importance and value of rights and protections conferred on the public by the FCRA's notice requirements, and not individualized experiences of class members. *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008). The *Campbell v. Facebook* case Trans Union cites is not to the contrary, because it involves statutory damages under the Electronic Communications Privacy Act, which are awarded on a limited discretionary basis after weighing six factors, including the presence of actual damages. ___ F.R.D. ___, 2016 WL 2897936, at *14 (N.D. Cal. May 18, 2016). By contrast, the FCRA provides no such discretion -- any person found to willfully fail to comply with the FCRA "*is liable*" for statutory damages. 15 U.S.C. § 1681n(a) (emphasis added).

Trans Union continues to "confuse Larson's proposed class with one that requires evidence that the consumer saw, read, and was confused by the OFAC header," none of which exists in the class definition or is required for recovery under the FCRA. Dkt. No. 86 at p. 25. *Spokeo* does nothing to change the fact that actual confusion is not an element of a claim under FCRA section 1681g for either statutory or actual damages.

Trans Union also mistakenly asserts that all class members must demonstrate Article III standing, which is plainly not the case under settled Ninth Circuit law. *Bates*, 511 F.3d at 985; *Ollier*, 768 F.3d at 865; *Stearns*, 655 F.3d at 1021.[3] But even assuming Trans Union is correct (which it is not), Plaintiff has demonstrated that all class members have Article III standing. As set forth above, each member of the class experienced the same concrete and particularized informational injury giving rise to standing, when Trans Union failed to provide to each such person a complete and accurate disclosure of the information in its files about him or her after they requested it.

As this Court found, the class of approximately 18,000 consumers is ascertainable and has been ascertained. Dkt. No. 86 at p. 25.

---

[3] Trans Union's citation to *Tyson Foods, Inc. v. Bouaphakeo* is even more futile than its mischaracterizations of *Spokeo*. *Tyson Foods* was a state law wage-and-hour class action and Fair Labor Standards Act collective active which used statistical analysis presented by an expert witness to demonstrate an average amount of uncompensated overtime work based upon a sample of employee records. *Tyson Foods, Inc. v. Bouaphakeo*, 765 F. 3d 791, 794-95, 798-99 (8th Cir. 2014). The plaintiffs' own expert concluded that several hundred class members did not work any overtime at all and had no claim for unpaid wages. *Id.* at 804. The Supreme Court found that the statistical techniques used were permissible in Rule 23 decisions, but explicitly declined to reach any decision regarding the appropriateness of certification of a class containing members who have admitted they have no right to recovery. ___ U.S. ___, 136 S. Ct. 1036, 1048-50 (2016). There can be no serious argument that *Tyson Foods* has any binding or persuasive effect on this case, where all members of the proposed class suffered identical and cognizable FCRA harm.

  iii. <u>Class Treatment Is A Superior Method Of Resolving This Dispute</u>

As this Court noted, Trans Union did not contest superiority in its original opposition to Plaintiff's Motion to Certify Class. Dkt. No. 86 at p. 24. Because *Spokeo*, and indeed none of the authorities Trans Union cites in its supplemental briefing, requires each class member to "tender proof" that they read and were confused or misled by Defendant's disclosure form, none of its arguments at this juncture affect the Rule 23(b) superiority analysis. Adjudication of this case on a representative basis will promote the most efficient resolution of this matter in light of the substantial common questions of law and fact.

### III. CONCLUSION

For all the above reasons and those set forth in his opening brief and reply in further support thereof, Plaintiff Brian Douglas Larson requests that this Court enter an order finally granting his Motion for Class Certification and directing notice to the class.

Date: July 8, 2016          Respectfully submitted,

                 **FRANCIS & MAILMAN, P.C.**

By:  */s/ John Soumilas*
    JOHN SOUMILAS (*pro hac vice*)
    DAVID A. SEARLES (*pro hac vice*)
    100 South Broad Street, 19th Floor
    Philadelphia, PA  19110
    T: (215) 735-8600

    ANDERSON, OGILVIE & BREWER, LLP
    ANDREW J. OGILVIE
    235 Montgomery St. Suite 914
    San Francisco, CA 94104
    T: (415) 651-1952
    F: (415) 956-3233

    *Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of July, 2016, I filed a true and correct copy of the foregoing via the Court's Electronic Case Filing System, which will send a notice of electronic filing to all counsel of record.

                                         */s/ John Soumilas*
                                         JOHN SOUMILAS