UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN DOUGLAS LARSON,<br><br>    Plaintiff,<br><br>    v.<br><br>TRANS UNION , LLC,<br><br>    Defendant. | Case No. 12-cv-05726-WHO<br><br>**ORDER REGARDING SUPPLEMENTAL BRIEFING ON MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. Nos. 64, 96, 97 |

On June 26, 2015, I issued an order tentatively granting Larson's motion for class certification but staying the case pending the outcome in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Dkt. No. 86 ("Prior Order"). Following the Supreme Court's decision in *Spokeo*, the parties submitted supplemental briefs on how the decision impacts the tentative class certification ruling. Defendant Trans Union, LLC ("Trans Union") contends that Larson cannot establish standing under *Spokeo*, and that even if he could, class certification would still be inappropriate because *Spokeo* precludes him from establishing ascertainability, predominance, and superiority. Dkt. No. 96 at 3-20 ("Trans Union Suppl. Br."). According to Larson, *Spokeo* has "no impact on this case." Dkt. No. 97 at 1 ("Larson Suppl. Br."). I heard argument from the parties on July 20, 2016, Dkt. No. 99, and now confirm my tentative order and GRANT class certification.

*Spokeo* involved an appeal from a Ninth Circuit decision holding that the plaintiff had adequately alleged Article III standing, regardless of whether he had adequately alleged "actual harm," by merit of his claims under 15 U.S.C. § 1681n(a) for willful violations of the Fair Credit Reporting Act ("FCRA"). *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412-14 (9th Cir. 2014). The Ninth Circuit reasoned that a willful violation claim under section 1681n(a) "does not require a showing of actual harm," and where a "statutory cause of action does not require proof of actual damages, a plaintiff can suffer a violation of the statutory right without suffering actual damages."

*Id.* at 413. The Ninth Circuit recognized that Article III "limits the power of Congress to confer standing." *Id.* It held, however, that the plaintiff's claimed violations of his statutory rights were sufficient to satisfy Article III's injury-in-fact requirement, first, because he had alleged that the defendant "violated *his* statutory rights, not just the statutory rights of other people, and second, because his "personal interests in the handling of his credit information are individualized rather than collective." *Id.* (emphasis in original).

The Supreme Court held that this analysis was "incomplete." *Spokeo*, 136 S. Ct. at 1545. It reasoned that "the injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete *and* particularized," and that while "the Ninth Circuit's analysis focused on the second characteristic (particularity) . . . it overlooked the first (concreteness)." *Id.* (emphasis in original).

With respect to concreteness, the Court explained that a concrete injury is one that "actually exist[s]," meaning that it is "real, and not abstract," but "not . . . necessarily . . . tangible." *Id.* at 1548-49 (internal quotation marks omitted). The Court identified two things that are "instructive" in determining whether an intangible injury rises to the level of concrete injury: first, "whether [the] alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit," and second, "the judgment of Congress," in that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* at 1549 (internal quotation marks omitted). The Court also emphasized that concreteness may be established by "the risk of real harm." *Id.* For example, the common law

> has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure. *See, e.g.,* Restatement (First) of Torts §§ 569 (libel), 570 (slander per se ) (1938). Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified. *See Federal Election Comm'n v. Akins*, 524 U.S. 11, 20-25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a

sufficiently distinct injury to provide standing to sue").

*Id.* at 1549-50 (emphasis in original).

The Court also recognized, however, that Congress's ability to "identif[y] and elevat[e] intangible harms" to the level of concrete injuries "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* Thus, even in a case involving a statutory right to sue – such as an action brought under section 1681n(a) – a plaintiff who alleges "a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement." *Id.* Rather, there must be "some concrete interest that is affected" by the "[d]eprivation of [the] procedural right." *Id.* (internal quotation marks omitted).

Turning to the plaintiff's claims under the FCRA, the Court acknowledged that Congress "plainly sought to curb the dissemination of false information" in passing the FCRA. *Id.* at 1550. But the Court observed that "a violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. That is,

> not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id*. The Court "expressed no view about any other types of false information," and "t[oo]k no position as to whether the Ninth Circuit's ultimate conclusion – that [the plaintiff] adequately alleged an injury in fact – was correct." *Id.* at 1550, 1550 n.8. Instead, it vacated the Ninth Circuit's judgment and remanded the case for consideration of "whether the particular procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

*Spokeo* does not deprive Larson of Article III standing. There is no dispute that Larson meets the particularity requirement. He also meets the concreteness requirement. Larson accuses

3

Trans Union of willfully violating 15 U.S.C. § 1681g(a)[1] by providing him with a credit report with allegedly misleading information regarding a "Possible OFAC[2] Match." First Amended Complaint ¶¶ 22-29 (Dkt. No. 39) ("FAC"). He claims that the OFAC disclosure violated section 1681g(a)'s clear and accurate disclosure requirement in two ways. First, because the OFAC disclosure displayed only a blank space for the "Possible OFAC Match," it left him "uncertain as to whether [Trans Union] [was] reporting [him] as a match to an individual on the OFAC database," thereby causing him to suffer emotional distress. FAC ¶¶ 36, 38; *see also* Prior Order at 4 ("Larson contends that a person faced with [the OFAC] information cannot determine whether (a) he potentially matches a name on the OFAC list but Trans Union is not disclosing the identity of the potential OFAC match; or (b) he does not potentially match any name on the OFAC list."). Second, because the OFAC disclosure was described as "Additional Information" that was "provided as a courtesy" and that was not part of the credit report, the OFAC disclosure "le[ft] [Larson] and the class confused as to whether they had the right to dispute [the OFAC] information." FAC ¶ 50; *see also* Class Cert. Mot. at 5 (Dkt. No. 64) ("Trans Union represented to consumers that the OFAC information is not part of their credit report and that Trans Union was providing it as a 'courtesy' and not as required by law. Both statements are false.").

I agree with Larson that his section 1681g(a) claim is based on something more than a

---

[1] 15 U.S.C. § 1681g(a) provides, in relevant part, that "[e]very consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a). One of the "primary purposes" of the statute is to "allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under [15 U.S.C. §] 1681i." *Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007).

[2] "OFAC" refers to the United States Treasury Department's Office of Foreign Assets Control. FAC ¶ 1. "OFAC administers and enforces economic and trade sanctions based on . . . foreign policy and national security goals against threats to the national security, foreign policy, or economy of the United States." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 696 (3d Cir. 2010). OFAC maintains a database of purported terrorists, narcotics traffickers, money launderers, and other enemies of the state on its "Specially Designated National and Blocked Persons List" (the "OFAC list"). *Id.* Certain financial institutions are required to consult the OFAC list before transacting with individuals. *See* 31 U.S.C. § 5318(l)(2). In *Cortez v. Trans Union, LLC*, the Third Circuit held that information regarding a consumer's appearance on the OFAC list is part of the consumer's "file" for the purposes of the FCRA and is thus subject to the FCRA's reporting requirements under 15 U.S.C. § 1681g. *See* 617 F.3d at 711-12. This case is one of several that have been filed against Trans Union since *Cortez* alleging claims based on Trans Union's reporting of OFAC information.

"bare procedural violation" – such as the "dissemination of an incorrect zip code" – that cannot "cause harm or present any material risk of harm." *Spokeo*, 136 S. Ct. at 1549-50. To the contrary, his claim is based on the sort of "informational" injury that the *Spokeo* Court implicitly recognized in citing *Public Citizen* and *Akins*, and that a number of other cases, from both before *Spokeo* and after, have found sufficient to support Article III standing. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-75 (1982) (housing-discrimination tester had standing to bring claims under the Fair Housing Act based on the "alleged injury to her statutorily created right to truthful housing information," even though the tester "may have approached the real estate agent fully expecting that [s]he would receive false information, and without any intention of buying or renting a home"); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *2-3 (11th Cir. July 6, 2016) (rejecting argument that, under *Spokeo*, plaintiff lacked standing to sue for defendant's failure to include certain disclosures required by the Fair Debt Collections Practices Act ("FDCPA"); stating that "[t]he invasion of [plaintiff's] right to receive the disclosures is not hypothetical or uncertain; [she] did not receive information to which she alleges she was entitled"); *Dickens v. GC Servs. Ltd. P'ship*, No. 16-cv-00803, 2016 WL 3917530, at *1-2 (M.D. Fla. July 20, 2016) (plaintiff had Article III standing to pursue FDCPA claims based on defendant's alleged failure to specify that certain rights under the FDCPA must be exercised "in writing"); *Lane v. Bayview Loan Servicing, LLC*, No. 15-cv-10446, 2016 WL 3671467, at *3-5 (N.D. Ill. July 11, 2016) (plaintiff adequately established a concrete injury resulting from defendant's provision of an allegedly misleading debt collection notice in violation of the FDCPA, because plaintiff alleged that defendant "denied him the right to information due to him under the FDCPA," thereby creating a "risk of depriving [him] of his right to verif[y] the debt"); *Thomas v. FTS USA, LLC*, No. 13-cv-00825, 2016 WL 3653878, at *8-10, *8 n.3 (E.D. Va. June 30, 2016) (plaintiff adequately established a concrete injury resulting from defendant's failure to provide the "clear and conspicuous" disclosure required by the FCRA; stating that "[i]t is well within Congress's power to specify the form in which [legally-mandated] information must be presented"); *see also Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1114-16 (9th Cir. 2014) (plaintiff had Article III standing to bring an FDCPA claim based on defendant's mailing of

an allegedly misleading debt collection letter that plaintiff did not receive; stating that "[a]lthough [plaintiff] could not have suffered any pecuniary [or] mental [harm] as the result of a letter that he did not encounter until months after it was sent[,] the injury he claims to have suffered was the violation of his right not to be the target of misleading debt collection communications"); *but see Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-01392, 2016 WL 3919633, at *1-2 (S.D. Cal. June 16, 2016) (holding that, in light of *Spokeo*, the Ninth Circuit was wrong to find that the plaintiff could establish Article III standing based on a debt collection letter he did not receive).[3]

Further, it is not "difficult to imagine how the dissemination of [the OFAC disclosure] could work [some] concrete harm" to consumers. *Spokeo*, 136 S. Ct. at 1550. Such harm could take the form of emotional distress, as Larson alleges that he suffered, triggered by the "uncertain[ty] as to whether [Trans Union] [was] reporting [the consumer] as a match to an individual on the OFAC database" and the perceived inability to dispute the OFAC disclosure. FAC ¶¶ 36-38; *see also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1332-33 (9th Cir. 1995) (reversing grant of summary judgment against FCRA plaintiff asserting that defendant failed to correct certain inaccuracies in her credit report, thereby deterring her from applying for

---

[3] The conclusion that Larson has adequately alleged an informational injury aligns with the position taken by the Consumer Financial Protection Bureau in a Truth in Lending Act case currently before the Ninth Circuit, *Keen v. JPMorgan Chase Bank*, NA, No. 15-17188 (9th Cir. docketed Nov. 3, 2015). In an amicus brief filed in that case, the Bureau argues that the plaintiffs-appellants (or "Borrowers") have Article III standing in light of *Spokeo* because they

> have alleged that the Bank failed to disclose accurately the finance charge of their mortgage loan . . . [This] alleged invasion of the Borrowers' legally protected interest in receiving information that accurately describes the finance charge that they were legally obligated to pay is a sufficiently concrete injury-in-fact . . . The deprivation of a right to receive information to which one is entitled by law has long been recognized as a constitutionally sufficient injury-in-fact (and thus necessarily sufficiently concrete) . . . The Supreme Court has also made clear that the deprivation of a right not to be "the object of a misrepresentation made unlawful under" a statute − that is, a right not to be given false information − satisfies Article III's injury-in-fact requirement. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) . . . The Borrowers' alleged injury here is no different from the injuries at issue in *Public Citizen*, *Akins*, and *Havens Realty*.

*Id.* at Dkt. No. 28 at 7-10.

credit and causing her emotional distress; holding that the term "actual damages," as used in the FCRA, "include[s] recovery for emotional distress and humiliation"); *accord Drew v. Equifax Info. Servs. LLC*, 690 F.3d 1100, 1109 (9th Cir. 2012) ("The FCRA permits recovery for emotional distress and humiliation.") (internal quotation marks omitted); *Davis v. Astrue*, 874 F. Supp. 2d 856, 863 (N.D. Cal. 2012) ("[M]any courts have found that emotional distress may constitute an injury-in-fact for purposes of standing."). Such harm could also take the form of harm to employment and credit prospects, based on employers' and creditors' uncertainty and confusion over the same issue if the OFAC disclosure were disseminated to them.[4] In short, the OFAC disclosure "is not as benign as an incorrect zip code." *Hawkins v. S2Verify*, No. 15-cv-03502-WHA, 2016 WL 3999458, at *5-6 (N.D. Cal. July 26, 2016) (defendant's alleged dissemination of records of plaintiff's arrests, in violation of the FCRA, caused plaintiff injury-in-fact, as "the harm alleged here is in no way akin to the examples given in *Spokeo* where a procedural violation would not result in concrete harm") (emphasis omitted).

Given that Larson continues to have Article III standing to bring this case despite *Spokeo*, Trans Union's challenges to my tentative rulings on ascertainability, predominance, and superiority also fail. Each of those challenges is based on Trans Union's contentions that the class should not be certified because absent class members lack Article III standing for the same reasons as Larson, and, similarly, because individualized determinations will have to be made with respect to the concreteness of each absent class member's injury. *See* Trans Union Suppl. Br. at 12-16 (ascertainability); *id.* at 17-19 (predominance); *id.* at 19-20 (superiority). In a class action, however, "standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007); *accord Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978-79 (9th Cir. 2011). Under this principle, Larson's showing of standing for himself is sufficient to establish standing for the class as a whole. *See McLaughlin v. Wells Fargo Bank, NA*, No. 15-cv-02904-WHA, 2016 WL 3418337, at *6 n.5 (N.D. Cal. June 22, 2016)

---

[4] Trans Union asserts that the record here affirmatively establishes that it never sold credit reports containing the OFAC disclosure to any third party. Trans Union Suppl. Br. at 7. Even assuming that this is true, Trans Union identifies nothing in the record indicating that it was apparent to consumers that the OFAC disclosure was not being reported to third parties.

("[P]laintiff borrower has standing to assert her TILA claim; so too does the class.") (on appeal).

Even if this principle did not apply, I am not convinced that individualized determinations on the concreteness of each absent class member's injury would be necessary. Article III standing in this case, just like Trans Union's alleged liability under section 1681g(a), is predicated on the character of the allegedly misleading information in the credit reports disseminated to Larson and absent class members, not on Larson's or absent class members' subjective interpretation of that information. *See* Prior Order at 16-19 (rejecting Trans Union's argument that class certification is inappropriate because the case will "require individualized inquiries into whether each class member actually read the relevant portion of his or her file disclosure, and whether he or she was actually confused by it"). Accordingly, even if Larson's showing of standing for himself did not establish standing for the class as a whole, the concreteness of each absent class member's injury, just like the question of liability, could still be resolved without individualized inquiries into how each class member responded to his or her credit report.

Trans Union also argues that individualized inquiries will be required to assess statutory damages under section 1681n(a). Trans Union Suppl. Br. at 18-19. The problem with this argument (besides the fact that it has nothing to do with *Spokeo* and Trans Union did not raise it in the original round of briefing on class certification) is that Trans Union cites no authority indicating that statutory damages under section 1681n(a) cannot be determined based on classwide proof. *See Hawkins*, 2016 WL 3999458, at *6 ("[P]laintiff and the class seek only statutory damages [under section 1681n(a)]. Damages can therefore be proven through classwide proof."). In any event, the Ninth Circuit has made clear that "[t]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages."); *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013) ("[N]o matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action.") (internal quotation marks omitted).

8

For these reasons, and for those stated in the tentative class certification ruling in the Prior Order, Larson's motion for class certification is GRANTED.[5]  A case management conference is set for **September 13, 2016** at 2:00 p.m.  By September 6, 2016, the parties shall file a joint case management statement that includes a proposed schedule for remaining pretrial and trial deadlines.  If the parties cannot agree on a proposed schedule, they shall provide competing proposed schedules.

**IT IS SO ORDERED**

Dated: August 11, 2016



WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

---

[5] Following the hearing on July 20, 2016, Trans Union filed several Notices of Supplemental Authority drawing the Court's attention to recent decisions addressing standing under *Spokeo*. Dkt. Nos. 101 (regarding *Hancock v. Urban Outfitters, Inc.*, No. 14-7047, 2016 WL 3996710 (D.C. Cir. July 26, 2016)), 102 (regarding *Bock v. Pressler & Pressler, LLP*, No. 15-1056, 2016 WL 4011150, at *1 (3d Cir. July 27, 2016)), 105 (regarding *Dolan v. Select Portfolio Servicing*, No. 03-cv-03285, 2016 WL 4099109, at *1 (E.D.N.Y. Aug. 2, 2016)), 106 (regarding *Groshek v. Time Warner Cable*, No. 15-cv-00157, 2016 U.S. Dist. LEXIS 104952 (E.D. Wis. Aug. 9, 2016)), 107 (regarding *Romero v. Dep't Stores Nat'l Bank*, No. 15-cv-00193, 2016 WL 4184099, at *1 (S.D. Cal. Aug. 5, 2016)).  I have considered each of the decisions; they do not change the outcome here.