James A. Francis (*pro hac vice*)
jfrancis@consumerlawfirm.com
John Soumilas (*pro hac vice*)
jsoumilas@consumerlawfirm.com
David A. Searles (*pro hac vice*)
dsearles@consumerlawfirm.com
Lauren KW Brennan (*pro hac vice*)
lbrennan@consumerlawfirm.com
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA  19110
T: (215) 735-8600
F: (215) 940-8000

Andrew J. Ogilvie
Carol M. Brewer
Ogilvie & Brewer LLP
4200 California Street, Suite 100
San Francisco, California 94118
Telephone:  (415) 651-1950
andy@aoblawyers.com
carol@aoblawyers.com

*Attorneys for Plaintiffs Brian Douglas Larson*
*and Ronald L. Miller*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIAN DOUGLAS LARSON, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> TRANS UNION, LLC, <br><br> Defendant. | Case No. 3:12-cv-05726-WHO <br><br> Honorable William H. Orrick <br><br> **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF** <br><br> Date: June 13, 2018 <br> Time: 2:30 p.m. <br> Place: Courtroom 2 |

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

**PLEASE TAKE NOTICE** that on June 13, 2018, at 2:30 p.m., or as soon thereafter as the

3

Court may order, in Courtroom 2, United States District Court for the Northern District of

4

California, 450 Golden Gate Avenue, San Francisco, California, the Hon. William H. Orrick

5

presiding, plaintiffs Brian Douglas Larson and Ronald Miller will and hereby do move for an

6

Order Granting Preliminary Approval of Class Action Settlement, pursuant to the Settlement

7

Agreement filed concurrently herewith.

8

This Motion is made pursuant to Fed. R. Civ. P. 23 and is based upon this Notice of Motion

9

and Motion, the accompanying Memorandum of Law, the Settlement Agreement and such

10

evidence and argument as the Court may consider at the hearing on this Motion.

11

Defendant does not contest this Motion.

12

13

14
Dated:   May 31, 2018                    **FRANCIS & MAILMAN, P.C.**

15
                                By:      _/s/ John Soumilas_
                                         James A. Francis (*pro hac vice*)
16
                                         John Soumilas (*pro hac vice*)
                                         David A. Searles (*pro hac vice*)
17
                                         Land Title Bldg., Suite 1902
                                         100 South Broad Street
18
                                         Philadelphia, PA  19110
                                         Telephone:  (215) 735-8600
19
                                         Facsimile:  (215) 940-8000
                                         jfrancis@consumerlawfirm.com
20
                                         jsoumilas@consumerlawfirm.com
                                         dsearles@consumerlawfirm.com
21

22
                                         Andrew J. Ogilvie (SBN 57932)
                                         Carol M. Brewer (SBN 214035)
23
                                         **OGILVIE & BREWER LLP**
                                         4200 California Street, Suite 100
24
                                         San Francisco, CA 94118
                                         T: 415-651-1952
25
                                         F: 415-956-3233
                                         andy@aoblawyers.com
26
                                         carol@aoblawyers.com

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.     INTRODUCTION ................................................................................................ 1

II.    PROCEDURAL HISTORY ................................................................................ 3

     A.    The Larson Action ................................................................................. 3

          1.    Pleadings and Early Motion Practice ........................................... 3

          2.    Class Discovery and Briefing ...................................................... 4

          3.    Merits Discovery and Dispositive Motions ................................ 5

     B.    The Miller Action ................................................................................. 5

          1.    Pleadings and Early Motion Practice ........................................... 5

          2.    Class Discovery and Briefing ...................................................... 6

     C.    Settlement Discussions Involving Both Actions ................................... 6

III.   THE PROPOSED SETTLEMENT ..................................................................... 7

     A.    The Settlement Class ............................................................................ 8

     B.    The Consideration Provided To The Class Under The Agreement ....... 8

     C.    Release ................................................................................................. 9

     D.    The Required Class Action Fairness Act Notice .................................. 9

     E.    Exclusions And Objections ................................................................... 9

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................. 10

     A.    The Settlement Approval Process ....................................................... 10

     B.    Preliminary Approval .......................................................................... 12

          1.    The Settlement Negotiations Were at Arm's Length ................. 12

          2.    Plaintiffs' Counsel Had Ample Discovery to Make an Informed Judgment on the Merits of the Claims ....................................... 13

3.     Plaintiffs' Counsel, Who Are Highly Experienced in Class Action Procedure and the Claims at Issue in the Case, Believe the Settlement Is Fair, Reasonable and Adequate..............................................................14

4.     The Risks of Litigation Support Approval..................................................14

C.    Class Counsel's Anticipated Application for Attorneys' Fees ............................ 16

V.    ELEMENTS FOR CERTIFICATION OF A CLASS SETTLEMENT ........................... 16

VI.   THE PROPOSED CLASS NOTICE IS CONSTITUTIONALLY SOUND.................... 17

VII.  CONCLUSION.......................................................................................................... 17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Inter-Con Sec. Sys. Inc.*,
 2007 WL 3225466 (N.D. Cal. Oct. 30, 2007).........................................................................13

*Alberto v. GMRI, Inc.*,
 252 F.R.D. 652 (E.D. Cal. 2008) .........................................................................................11

*Beck-Ellman v. Kaz USA, Inc.*,
 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013)..........................................................................11

*Bonett v. Education Debt Services, Inc.*,
 2003 WL 21658267 (E.D. Pa. 2003) ....................................................................................14

*Chakejian v. Equifax Info. Services, LLC*,
 256 F.R.D. 492 (E.D. Pa. 2009)............................................................................................14

*Churchill Village, LLC v. General Electric*,
 361 F.3d 566 (9th Cir. 2004) ..........................................................................................14-15

*Cortez v. Trans Union, LLC*,
 617 F.3d 688 (3d Cir. 2010)....................................................................................................1

*In re Employee Benefit Plans Secs. Litig.*,
 1993 WL 330595 (D. Minn. June 2, 1993)...........................................................................12

*Giddiens v. First Advantage LNS Screening Solutions, Inc.*,
 No. 2:12-cv-2624, Dkt. No. 55 (E.D. Pa. Jan. 20, 2015).....................................................14

*Jones v. Midland Funding, LLC*,
 C.A. No. 3:08cv802 (RNC), Dkt. No. 82 (D. Conn. Oct. 13, 2009) ....................................14

*Jordan v. Commonwealth Financial Systems, Inc.*,
 237 F.R.D. 132 (E.D. Pa. 2006)............................................................................................14

*LaRocque v. TRS Recovery Services, Inc.*,
 285 F.R.D. 139 (D. Me. 2012)..............................................................................................14

*Larson v. Trans Union, LLC*,
 201 F. Supp. 3d 1103 (N.D. Cal. 2016) ...........................................................................2, 3, 4

*Larson v. Trans Union, LLC*,
   2015 WL 3945052 (N.D. Cal. 2015) ............................................................................4

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ....................................................................................10

*Miller v. Trans Union, LLC*,
   2017 WL 41261 (M.D. Pa. Jan. 18, 2017).....................................................2, 6, 16

*Mullane v. Central Hanover Trust*,
   339 U.S. 306 (1950).....................................................................................................17

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).................................................................................12

*In re Netflix Privacy Litig.*,
   2012 WL 2598819 (N.D. Cal. July 5, 2012)...............................................................13

*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .....................................................................16

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .............................................................................10, 12

*Safeco Insurance Co. of America v. Burr*,
   551 U.S. 47 (2007)........................................................................................................16

*Sapp v. Experian Info. Solutions*,
   2013 WL 2130956 (E.D. Pa. May 15, 2013) ..............................................................14

*Serrano v. Sterling Testing Systems, Inc.*,
   711 F. Supp. 2d 402 (E.D. Pa. 2010) .........................................................................14

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)....................................................................................4, 6, 7, 13

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) .................................................................................12

*Summerfield v. Equifax Info. Services, LCC*,
   264 F.R.D. 133 (D. N.J. 2009).....................................................................................14

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................3, 11

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ......................................................................................10

*In re Wash. Pub, Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ................................................16

*White v. Experian Info. Solutions*,
  993 F.Supp.2d 1154 (C.D. Cal. 2014) ................................14

*Young v. Polo Retail*,
  2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) .........................12

### STATUTES

California Consumer Credit Reporting Agencies Act .................................3, 4

  Cal Civ. Code §§ 1785.10, 1785.14, 1785.15 ..............................3

Class Action Fairness Act ................................................3, 9

  28 U.S.C. § 1715 ....................................................9

  28 U.S.C. § 1453 ....................................................3

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq.* .........................1, 2, 4, 5, 14, 15, 16

  15 U.S.C. § 1681g ...............................................1, 4, 5

  15 U.S.C. § 1681n .................................................16

### FEDERAL RULES

Fed. R. Civ. P. 23(c)(2)(B) .............................................17

Fed. R. Civ. P. 23(e)(1)(A) .............................................11

Fed. R. Civ. P. 23(f) ....................................................5

### OTHER AUTHORITIES

Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) ........10, 11, 12

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004) ...........................2, 11

### CONSTITUTIONAL PROVISIONS

Article III ............................................................5

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiff Brian Douglas Larson brought this consumer protection class action against Defendant TransUnion LLC ("Defendant" or "Trans Union") under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq.* ("FCRA"), on behalf of a class of California consumers.

This case deals with Trans Union's disclosures to consumers of information from the United States Department of Treasury's Office of Foreign Assets Control ("OFAC").   Trans Union has sold OFAC information about consumers since the early 2000s, and began disclosing it to consumers in 2011 as a result of an FCRA lawsuit regarding Trans Union's disclosure practices.   *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010).   In early 2011, Trans Union disclosed OFAC information through hard-copy letters to consumers, which were the subject of the *Ramirez v. Trans Union, LLC* case, No. 3:12-cv-632-JSC (N.D. Cal.).

When Trans Union began disclosing OFAC information to consumers who requested their files online in 2011, it encountered a computer programming error which resulted in an unclear and misleading form of disclosure which affected thousands of consumers.[1]   Specifically, the programming error led to the appearance of the "OFAC header" on the personal credit reports of consumers who did <u>not</u> have any OFAC information in their file.   Furthermore, the disclosure stated that the OFAC information "is not part of your TransUnion credit report," but was rather "additional information" provided as a "courtesy."   Plaintiff Larson asserted that this disclosure was unclear and misleading in violation of FCRA section 1681g.   Another plaintiff, Ronald L. Miller, brought the same claim on behalf of consumers residing in Pennsylvania, New Jersey,

---

[1]      The error affected only the disclosures sent to consumers, and not the credit reports sent to third parties.

1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF

Delaware, and the U.S. Virgin Islands.  *Miller v. Trans Union, LLC*, No. 3:12-cv-1715 (M.D. Pa.) (the "Miller Action").

This Court certified the FCRA claims of California consumers affected by Trans Union's OFAC disclosure practices.  *Larson v. Trans Union, LLC*, 201 F. Supp. 3d 1103, 1109 (N.D. Cal. 2016).  The proposed class in the Miller Action was likewise recommended for certification. *Miller v. Trans Union, LLC*, No. 3:12-cv-1715, 2017 WL 41261, at *11 (M.D. Pa. Jan. 18, 2017). In light of the substantial overlap between issues between this case and the Miller Action, the parties negotiated a single settlement resolving the claims in both cases, and have contemporaneously requested that these cases be consolidated for settlement purposes.  *See Miller* Dkt. No. 163 (order granting motion to transfer Miller Action to this Court).

By this motion, Plaintiffs Larson and Miller hereby commence the court approval process outlined in the MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.63 (2004) (hereinafter "MANUAL") for the settlement of class actions.  Plaintiffs and their counsel respectfully request that the Court enter an order: (1) granting preliminary approval of the Stipulation and Agreement of Settlement attached hereto as Appendix I;[2] (2) approving the Parties' proposed notice program and form of notice; (3) directing that notice of the proposed Settlement be given to the Class; and (5) setting a Final Approval Hearing to determine whether the proposed Settlement is fair, reasonable and adequate and whether an order awarding a service award, attorneys' fees, reimbursement of expenses should be approved.

As set forth below, the proposed settlement is well "within the range of possible approval," such that the Court should grant preliminary approval, authorize notice to the Class,

---

[2]    Unless otherwise defined herein, all capitalized terms herein have the same meaning as in the Agreement.

and schedule a Final Approval Hearing.  *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).   Before engaging in settlement negotiations, the Parties conducted a substantial amount of discovery, engaged in extensive motion practice and understood the strengths, weaknesses and risks of proceeding through to trial.   The settlement discussions, including multiple mediation sessions under the auspices of retired magistrate judges familiar with the issues presented in the cases, were protracted, adversarial and always at arm's length.   Plaintiffs and the Class are represented by counsel experienced in class action litigation and believe the settlement is more than fair, reasonable and adequate.   Accordingly, Plaintiffs respectfully request that the Court grant this motion.

## II.   PROCEDURAL HISTORY

### A.   The Larson Action

#### 1.   Pleadings and Early Motion Practice

On September 12, 2012, Plaintiff Brian Douglas Larson filed a Complaint in the Superior Court of California, County of San Francisco, asserting that Trans Union failed to clearly and accurately disclose OFAC alert information to consumers, in violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal Civ. Code §§ 1785.10, 1785.14, 1785.15. Dkt. No. 1.  Trans Union removed the case this court on November 7, 2012 pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453.  *Id.*  Trans Union moved to dismiss the complaint on November 19, 2012. Dkt. No. 7.  While the motion to dismiss was pending, Trans Union sought to consolidate the case with the Miller Action, discussed below, as well as with *Ramirez v. Trans Union, LLC*, No. 12-cv-632 (N.D. Cal.).   Dkt. No. 12.   The Judicial Panel on Multidistrict Litigation denied the motion on February 7, 2013.  Dkt. No. 20.

Case No. 3:12-cv-05726-WHO
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

On October 15, 2013, this court granted the motion to dismiss with leave to amend following limited discovery.  Dkt. No. 33.   Plaintiff Larson filed an Amended Complaint on January 15, 2014, adding various factual assertions, as well as disclosure claims under the Fair Credit Reporting Act section 1681g.  Dkt. No. 39.

Trans Union moved to dismiss the Amended Complaint on February 13, 2014.  Dkt. No. 45. Following full briefing, this Court dismissed the CCRAA claims, and denied the motion with respect to the FCRA claims.  Dkt. No. 50-52.

2.    Class Discovery and Briefing

The parties then conducted further discovery relevant to class certification, exchanging written discovery and conducting the depositions of four witnesses.  On March 13, 2015, Plaintiff moved to certify a class of consumers including 18,082 individuals in California.  Dkt. No. 62. On the same date, Trans Union moved for partial summary judgment.  Dkt. No. 66.  At the May 6, 2015 hearing held on both motions, Trans Union requested a stay of proceedings pending the U.S. Supreme Court's resolution of the *Spokeo, Inc. v. Robins* case.  Dkt. Nos. 77, 80.  After supplemental briefing on the issue of a stay, the Court denied Trans Union's motion for summary judgment, tentatively granted class certification, and granted the requested stay.  Dkt. Nos. 81-82; *Larson v. Trans Union, LLC*, 2015 WL 3945052 (N.D. Cal. 2015).

The case remained stayed for approximately one year, until June 2016, when the court lifted the stay and ordered briefing regarding the effect of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ("*Spokeo*").  Dkt. No. 93.  Following additional briefing, the Court affirmed its tentative decision to grant class certification, certifying a class defined as follows:

> All persons residing at an address within the State of California to whom Trans Union LLC provided a Personal Credit Report, from September 22, 2011 until October 27, 2011, substantially similar in form to the one Trans Union provided to Plaintiff Brian Douglas Larson dated October 26, 2011.

201 F. Supp. 3d 1103 (N.D. Cal. 2016).  The court furthermore found that all class members had Article III standing.  *Id.*  Trans Union sought permission to appeal the class certification decision to the Ninth Circuit pursuant to Fed. R. Civ. P. 23(f), and the Ninth Circuit declined to hear the appeal.  Dkt. Nos. 109, 114.

3.     <u>Merits Discovery and Dispositive Motions</u>

The parties proceeded to take further discovery regarding the merits of the claims of Plaintiff Larson and the certified class, including taking the depositions of an additional fact witness and four expert witnesses.  Trans Union filed its dispositive motion on January 12, 2018, as well as a motion to strike the testimony of one of Plaintiff's experts.  Dkt. Nos. 150-151.  Both motions are fully briefed.  Dkt. Nos. 160, 161, 165, 166.

**B.     The Miller Action**

1.     <u>Pleadings and Early Motion Practice</u>

Plaintiff Ronald L. Miller filed his class action complaint against Trans Union in the U.S. District Court for the Middle District of Pennsylvania on August 28, 2012, alleging that Trans Union violated section 1681g of the FCRA by failing to clearly and accurately disclose OFAC information.  No. 3:12-cv-1715 (M.D. Pa.) Dkt. No. 1.  Trans Union moved to dismiss on November 5, 2012. *Miller* Dkt. No. 20.

While the motion was pending, on December 19, 2012 Trans Union filed the motion to consolidate the case with the *Larson* and *Ramirez* actions before the Judicial Panel on Multidistrict Litigation.  *Miller* Dkt. No. 25.  On January 7, 2013, Trans Union also moved to stay the acting pending the Panel's decision.  *Miller* Dkt. No.  29, 35.  Before the court resolved the motion to stay, the Panel denied the motion to transfer.  *Miller* Dkt. No. 39.

On August 14, 2013, the magistrate overseeing the Miller Action issued a report and recommendation denying the Trans Union's motion to dismiss. *Miller* Dkt. No. 50. Trans Union objected (*Miller* Dkt. Nos. 51-52), and Plaintiff Miller responded in support of the magistrate recommendation. *Miller* Dkt. No. 54. On September 27, 2013, the district court adopted the magistrate's report and recommendation in full. *Miller* Dkt. No. 57.

### 2.   Class Discovery and Briefing

The parties exchanged written discovery and conducted deposition of three witnesses, including Plaintiff Miller and two representatives of Trans Union. Plaintiff moved for certification of a class of consumers on December 12, 2014. *Miller* Dkt. No. 79. After full briefing, but before the motion was decided, Trans Union moved to stay the action pending the Supreme Court's decision in *Spokeo*. *Miller* Dkt. No. 103. The court granted the motion to stay. *Miller* Dkt. No. 119.

In June 2016, after the *Spokeo* decision was issued, the court order addition briefing on the decision's effect on the case. *Miller* Dkt. No. 122. On January 18, 2017, following full briefing, Magistrate Judge Carlson issued a report and recommendation certifying the proposed class. *Miller*, 2017 WL 41261. Trans Union objected to the report and recommendation, and the parties' briefing on the objections is pending before the court. *Miller* Dkt. Nos. 142, 145.

### C.   Settlement Discussions Involving Both Actions

The parties attended three separate formal mediation sessions with private mediators to discuss resolution of these cases in connection with the *Ramirez* action. First, they met on November 9, 2012 with the Honorable William J. Cahill (Retired) of JAMS San Francisco. The parties engaged in further formal medation involving these actions with the assistance of the

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF

Honorable Diane M. Welsh (Retired) of JAMS Philadelphia on November 21, 2013, and again on August 11, 2014.  None of these mediations resulted in a settlement.

In February of 2018, the parties began discussing resolution of Larson and Miller Actions separately from the *Ramirez* case, which went to trial in June 2017.   The parties exchanged a number of written proposals, and conducted a series of meet and confer calls before reaching an agreement in principle in April of 2018.   Documenting a formal settlement agreement and collateral documents took additional time to prepare and exchange drafts, and a series of telephone negotiations concerning the details of the terms and conditions of the agreement.  The Parties eventually finalized their agreement as of May 31, 2018, resulting in the settlement document attached hereto as Appendix I.

## III.    THE PROPOSED SETTLEMENT

Plaintiffs and Trans Union arrived at the proposed settlement in this case after full briefing on motions to dismiss each case, written discovery, twelve depositions, briefing on class certification in each case, briefing regarding standing following the *Spokeo* decision, and two rounds of summary judgment briefing in the Larson Action.  The parties are therefore familiar with all of the factual and legal issues at stake in these cases.

The Parties also conducted arm's-length, contentious negotiations that included three separate full day mediation sessions with two different retired jurists and a series of conversations involving counsel for the Parties.  After several months of discussion following numerous exchanges of draft documents, the Parties reached a class-wide settlement resolving the claims in both cases.

Case No. 3:12-cv-05726-WHO
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF

### A.    The Settlement Class

Under the Agreement, the Parties agreed to resolve the claims of the Class certified in the Larson Action, expanded to include the members of the class recommended to be certified in the Miller Action.  Appendix I at section 2.31.  The Settlement Class thus consists of all consumers with an address in California, Pennsylvania, New Jersey, Delaware, and the U.S. Virgin Islands to whom Trans Union provided a personal credit report online from September 22, 2011 to October 27, 2011, substantially similar in form to the one Trans Union provided to Plaintiff Larson.  *Id.* at sections 2.6, 2.31.

### B.    The Consideration Provided To The Class Under The Agreement

The Agreement requires Trans Union to provide each member of the Settlement Class with a letter of apology for the confusion caused by the disclosure at issue. *Id.* at section 2.10; Exhibit A therefore.  Furthermore, each Settlement Class member will be entitled to a free three-year subscription to Trans Union's credit monitoring service, worth over $700. *Id.* at sections 2.12, 4.2.

Trans Union will furthermore pay all costs of notice and settlement administration.  *Id.* at section 7.1  Having handled the notice process to members of the certified class in the Larson Action, RSM US LLP was deemed the best suited for settlement administration of these consolidated cases. The Settlement Administrator will perform all tasks specified and assigned to it in the Agreement, such as mailing and re-mailing the Settlement Notice (Exhibit C to Agreement), setting up a settlement website and toll-free telephone number, receiving and processing Claims Forms, and providing regular reports to the Parties and a report to the Court prior to the Final Approval Hearing.  *Id.* at section 7.2, 7.4.

Trans Union has agreed to pay Plaintiff Larson and Plaintiff Miller each the sum of $10,000.00 as the Service Awards in recognition of their actions as Class Representatives, subject to the approval of the Court.  *Id.* at section 5.1

The Agreement provides that Class Counsel may file the Fee Petition for an award of attorneys' fees and reimbursable expenses in an amount not to exceed $1,480,000, without objection by Trans Union.  *Id.*

### C.     Release

The scope of the release to which each Settlement Class Member would be bound is limited to claims that were alleged or could have been alleged in either the Miller Action or the Larson Action.  *Id.* section 2.27.  The Agreement specifically preserves the ability of Settlement Class Members to bring individual claims for actual damages.  *Id.*

### D.     The Required Class Action Fairness Act Notice

Trans Union shall prepare the notice required to be served under the Class Action Fairness Act of 2005 ("CAFA").  28 U.S.C. § 1715.  *Id*. at section 7.4.  The parties have agreed to cooperated reasonably to ensure CAFA compliance. *Id*.

### E.     Exclusions And Objections

Under the Agreement, any Settlement Class Member who desires to be excluded from the Class must send a written request for exclusion to the Settlement Administrator no later than thirty (30) days before the Final Fairness Hearing.  Requests for exclusion must be personally signed and include: (i) the individual's name, address and telephone number; (ii) a sentence stating that he or she is a member in the Settlement Class; and (iii) a statement that he or she requests to be excluded from the Settlement.  *Id.* at section 8.3(a).

Any Settlement Class Member who wishes to object to the Settlement at the Final Approval Hearing, and/or who wishes for any objection to be considered, must file a Notice of Objection no later than thirty (30) days before the Final Fairness Hearing. *Id*. at section 8.4.

The Notice of Objection shall be mailed to Class Counsel, Trans Union's Counsel and the Clerk of the Court. *Id.* at section 8.4(b). All objections must include: (i) the objector's name, address and telephone number; (ii) a sentence stating that to the best of his or her knowledge he or she is a member of the Settlement Class; (iii) the factual basis and legal grounds for the objection to the Settlement; (iv) the identity of witnesses whom the objector may call to testify at the Final Fairness Hearing; (v) the name and address of any attorney who has drafted or helped draft the objection; and, (vi) copies of exhibits the objector may seek to offer into evidence at the Final Fairness Hearing. *Id.* at section 8.4(c).

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   The Settlement Approval Process

The Ninth Circuit has a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992)); *see also* Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("NEWBERG") ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise."). There is an "overriding public interest in settling and quieting litigation," *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), and the Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) *vacated on other grounds* 688 F.3d 645.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF

Where, as here, the parties propose to resolve the claims of a class through settlement, they must obtain the court's approval.  *See* Fed. R. Civ. P. 23(e)(1)(A). The typical process for approving class action settlements is described in the MANUAL at §§ 21.632-.635 and is comprised of three steps:

(1)  Preliminary approval of the proposed settlement at an informal hearing;

(2)  Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)  A "formal fairness hearing," or final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

This procedure, commonly employed by federal courts, serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of class members' interests.  *See* NEWBERG § 11.25.

Plaintiffs ask that the Court grant preliminary approval of the proposed settlement.  At this stage, the Court "must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms and must direct preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MANUAL § 21.632.  Courts should grant preliminary approval and direct notice to the class if the settlement has no obvious deficiencies and "falls within the range of possible judicial approval." *Beck-Ellman v. Kaz USA, Inc.,* No. 10-cv-02134, 2013 WL 1748729, at *5 (S.D. Cal. Jan. 7, 2013); *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 666 (E.D. Cal. 2008); *In re Tableware,* 484 F. Supp. 2d at 1079; NEWBERG, *supra,* § 11.25.

1

2

**B.      Preliminary Approval**

A proposed class action settlement is fair and should be preliminarily approved if the

Court finds that: (1) the negotiations leading to the proposed settlement occurred at arm's length;

(2) there was sufficient discovery in the litigation for the plaintiff to make an informed judgment

on the merits of the claims; and (3) the proponents of the settlement are experienced in similar

litigation. *Young v. Polo Retail,* No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct.

25, 2006); *see also Rodriguez*, 563 F.3d at 965, ("We put a good deal of stock in the product of

an arms-length, non-collusive, negotiated resolution."); *In re Sumitomo Copper Litig.*, 189

F.R.D. 274, 280-81 (S.D.N.Y. 1999) ("a 'presumption of fairness, adequacy and reasonableness

may attach to a class settlement reached in arms-length negotiations between experienced,

capable counsel after meaningful discovery'") (quoting MANUAL § 30.42 (3d ed. 1995));

NEWBERG, *supra*, § 11.41. The settlement easily satisfies these requirements.

1.      The Settlement Negotiations Were at Arm's Length

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which

was negotiated at arm's-length by counsel for the class, is presented for Court approval."

NEWBERG, *supra*, §11.41; *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D.

523, 528 (C.D. Cal. 2004) (great weight given to the recommendation of counsel who are the

most closely acquainted with the facts of the litigation); *In re Employee Benefit Plans Secs. Litig.*,

No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (same).

There is no doubt that the proposed settlement was reached through arm's length

bargaining.  From the beginning of the case, the Parties engaged in extensive, adversarial motion

practice and discovery.  The Parties briefed two motions to dismiss and two summary judgment

motions in the Larson Action, and a motion to dismiss in the Miller Action, as well as extensive

12

briefing and argument on class certification in both cases.  Trans Union also sought and obtained

a stay of each action, pending the appeal of the Ninth Circuit *Spokeo* decision to the Supreme

Court, and the Parties submitted briefing on the meaning of that decision in each action.

The Parties furthermore conducted substantial discovery regarding the facts of the case,

including conducting twelve depositions and exchanging substantial written requests and

responses.

The Parties engaged in three separate formal mediation sessions before well-respected

mediators at different stages of the cases and were well-versed in their respective views on the

cases.  Armed with sufficient discovery and well-researched and thought-out assessments of the

likelihood of success of their respective claims and defenses, the Parties engaged in arms-length

settlement discussions and  eventually reached a written class settlement agreement, documented

with the necessary collateral documents, ultimately resulting in the formal settlement attached

hereto as Appendix I.

The fact that the settlement process and the progress made at those sessions was overseen

by an experienced mediator indicates the settlement was anything but collusive.  *See, e.g., Adams*

*v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30,

2007); *see also In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2012 WL 2598819, at *1, 2

(N.D. Cal. July 5, 2012).

        2.     **Plaintiffs' Counsel Had Ample Discovery to Make an Informed**
                  **Judgment on the Merits of the Claims**

As described above, Class Counsel undertook substantial factual discovery regarding

class certification, liability, and damages.  Class Counsel reviewed many pages of documents

and undertook a significant amount of factual discovery and research.  Counsel analyzed all this

information in light of relevant rulings by federal District Courts within California, and by the

13

Ninth Circuit. Accordingly, Class Counsel made informed decisions when negotiating the proposed settlement.

### 3. Plaintiffs' Counsel, Who Are Highly Experienced in Class Action Procedure and the Claims at Issue in the Case, Believe the Settlement Is Fair, Reasonable and Adequate

In negotiating the proposed settlement, Plaintiffs had the benefit of highly skilled and experienced counsel. Class Counsel have broad experience litigating and trying consumer and class action cases on behalf of plaintiffs.[3]  In their view, the settlement provides substantial benefits to the Class, especially when one considers the attendant expense, risks, delays, and uncertainties of litigation, trial and post-trial proceedings.

### 4. The Risks of Litigation Support Approval

The Settlement provides all of the significant benefits described above to the Settlement Class without the risks, costs, and delays inherent in continued litigation, trial, and appeal of Plaintiffs' claims. The expense, complexity, and duration of litigation are important factors considered in evaluating the reasonableness of a settlement.  *Churchill Village, LLC v. General*

---

[3]    *See Ramirez v. Trans Union, LLC*, No. 3:12-cv-632 (N.D. Cal.); *White v. Experian Info. Solutions*, 993 F.Supp.2d 1154, 1169, 1172 (C.D. Cal. 2014) (finding Francis & Mailman "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."), *aff'd sub nom. Radcliffe v. Experian Info. Solutions, Inc*., 818 F.3d 537, 548 (9th Cir. 2016); *Sapp v. Experian Info. Solutions*, No. 10-4312, 2013 WL 2130956 (E.D. Pa. May 15, 2013); *LaRocque v. TRS Recovery Services, Inc*., 285 F.R.D. 139 (D. Me. 2012) (certifying firm of Francis & Mailman as class counsel in consumer class action); *accord, Giddiens v. First Advantage LNS Screening Solutions, Inc.*, No. 2:12-cv-2624 (E.D. Pa.) at Dkt. No. 55 (Jan. 20, 2015 order granting final approval and certifying Francis & Mailman as class counsel); *Serrano v. Sterling Testing Systems, Inc.,* 711 F. Supp. 2d 402, 412 (E.D. Pa. 2010); *Summerfield v. Equifax Info. Services, LCC*, 264 F.R.D. 133 (D. N.J. 2009); *Chakejian v. Equifax Info. Services, LLC*, 256 F.R.D. 492 (E.D. Pa. 2009); *Jones v. Midland Funding, LLC,* C.A. No. 3:08cv802 (RNC) at Dkt. No. 82 (D. Conn. Oct. 13, 2009); *Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132 (E.D. Pa. 2006); *Bonett v. Education Debt Services, Inc.*, No. 01-6528, 2003 WL 21658267, at *3 (E.D. Pa. 2003).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Electric*, 361 F.3d 566, 577 (9th Cir. 2004). Litigating these class actions through trial would be time-consuming and expensive. As with most class actions, the claims at issue are complex and risky.

Even though Plaintiff Larson succeeded in certifying a class, he faces the task of proving liability on the merits, including the risks associated with Trans Union's motion for summary judgment, and the risks of trial.  Likewise, although a class was recommended for certification in the Miller Action, that decision is pending review by a district judge, and the risks of summary judgment and trial remain. Even if Plaintiffs successfully passed the liability hurdle, a battle would likely ensue concerning whether Plaintiffs and other Class Members have sustained damages and, if so, the proper measure of those damages, requiring yet more expert testimony and entailing further risks to Plaintiffs' and the Class's chances of recovery.  Although Plaintiffs are and remain confident in the strength of their cases and are prepared to litigate each through trial at all times, the risks are numerous and real.  The battles would be fought not only at trial but also on appeal.

By contrast, the settlement provides significant benefits to the Class in the form of a corrective disclosure apologizing for the confusion caused by the computer programming error, and three years of free credit monitoring allowing Settlement Class Members to confirm that Trans Union does not associate any OFAC information with their filed.    Furthermore, all Settlement Class Members retain their rights to bring individual actual damages claims as a result of Trans Union's actions.

While Plaintiffs' counsel firmly believe in the merits of the Class Claims, demonstrating liability is not at all a certainty.  Liability under the FCRA is not strict, and Plaintiffs must each

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF

prove that Trans Union's failure to provide a proper disclosure was willful. 15 U.S.C. § 1681n.[4]

Trans Union contests liability in all regards.  Consequently, absent approval of the Settlement,

Plaintiff will be put to challenging proofs, including as to issues of willfulness, and all Parties

face the prospect of a long and expensive litigation which will likely culminate in a trial on a

class-wide basis and, thereafter, a lengthy appeal.

### C.    Class Counsel's Anticipated Application for Attorneys' Fees

District courts have the discretion to award attorneys' fees based on a percentage of the

common fund or based on the lodestar method.  *See In re Wash. Pub, Power Supply Sys. Sec.*

*Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994).  Additionally, attorneys may recover their reasonable

expenses from a common fund. *See In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1042

(N.D. Cal. 2008).  Here, Class Counsel will apply to the Court no later than ten days prior to the

Final Approval Hearing for an award of attorneys' fees and expenses not to exceed $1,480,000

and will make a full presentation in their application for attorneys' fees and reimbursable costs.

Appendix I at section 5.1 and Exhibit D thereto.  Ultimately, this Court will determine the amount

of fees to award and this should not prevent granting preliminary approval to the Settlement.

## V.    ELEMENTS FOR CERTIFICATION OF A CLASS SETTLEMENT

This Court has already ruled that the Class in the Larson Action may be certified, with Mr.

Larson as Class Representative and his lawyers as Class Counsel.  Dkt. Nos. 86, 108.    For

---

[4]    In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007), the Supreme Court considered the standard for whether a defendant "willfully" violates the FCRA, including whether willfulness also includes "recklessness." *Id.* at 52. While it held that the former encompassed the latter, the Court also concluded that this willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. To overcome this hurdle, it is the plaintiff's burden to prove that a defendant's attempts to comply with the FCRA were "objectively unreasonable." *Id.*

16

Case No. 3:12-cv-05726-WHO
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

substantially the same reasons that this Court certified the class in the Larson Action, Magistrate

Judge Carlson of the U.S. District Court for the Middle District of Pennsylvania has recommended

that the proposed class in the Miller Action be certified as well.  *Miller,* 2017 WL 41261.  As

such, all the elements for certification of the Settlement Class for whom the case is being settled

have been met.

## VI.    THE PROPOSED CLASS NOTICE IS CONSTITUTIONALLY SOUND

Class notice must be "reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of the action and afford them an opportunity to present their

objections." *See Mullane v. Central Hanover Trust*, 339 U.S. 306, 314 (1950).  Notice also must

satisfy Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state the

following in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class
> claims, issues, or defenses; (iv) that a class member may enter an appearance
> through an attorney if the member so desires; (v) that the court will exclude from
> the class any member who requests exclusion; and (vi) the binding effect of a
> class judgment on members under Rule 23(c)(3).

Here, the proposed notices, which include both a long-form notice (Exhibit B to the

Settlement Agreement) and a postcard notice (Exhibit C to the Settlement Agreement), are

written in easy and plan language, and also comply with Rule 23(c)(2)(B).  Accordingly, the

form of notice and plan of dissemination should be approved.

## VII.    CONCLUSION

The settlement is an excellent result considering the nature of the litigation and the

mediation process.  Each Settlement Class Member is entitled to a letter of apology, three years

of free credit monitoring, and retains his or her right to bring a claim for actual damages suffered

as a result of Trans Union's conduct. The terms of the settlement, as well as the circumstances

surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the requirements for preliminary approval.

WHEREFORE, Plaintiffs request that the Court enter an Order, substantially similar to the proposed Preliminary Approval Order filed concurrently with this Motion, that: (1) grants preliminary approval to the proposed settlement; (2) approves of the proposed Notices filed concurrently with this Motion; (3) orders that the proposed Notices be mailed to Settlement Class Members in accordance with the Agreement; (4) approves the appointment of the Settlement Administrator; and, (5) sets the date of the Final Approval Hearing at the Court's earliest availability, but no sooner than 130 days from the date of the granting of this Motion.

Respectfully Submitted,

Dated: May 31, 2018

**FRANCIS & MAILMAN, P.C.**

By  /s/ *John Soumilas*
James A. Francis
John Soumilas
David A. Searles
Lauren KW Brennan
Land Title Bldg, Suite 1902
100 South Broad Street
Philadelphia, PA  19110
Telephone:  (215) 735-8600
Facsimile:  (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com
lbrennan@consumerlawfirm.com

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Andrew J. Ogilvie
Carol M. Brewer
Ogilvie & Brewer LLP
4200 California Street, Suite 100
San Francisco, California 94118
Telephone:  (415) 651-1950
andy@aoblawyers.com
carol@aoblawyers.com

*Attorneys for Plaintiffs Brian Douglas Larson and Ronald L Miller*

Case No. 3:12-cv-05726-WHO
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's EM/ECF System.

Dated: May 31, 2018                      */s/ John Soumilas*
                                          John Soumilas
                                          **FRANCIS & MAILMAN, P.C.**

Case No. 3:12-cv-05726-WHO
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT THEREOF