James A. Francis (*pro hac* vice)
jfrancis@consumerlawfirm.com
John Soumilas (*pro hac* vice)
jsoumilas@consumerlawfirm.com
David A. Searles (*pro hac* vice)
dsearles@consumerlawfirm.com
Lauren KW Brennan (*pro hac* vice)
lbrennan@consumerlawfirm.com
**FRANCIS & MAILMAN, P.C.**
1600 Market Street, 25th Floor
Philadelphia, PA  19103
T: (215) 735-8600
F: (215) 940-8000

Andrew J. Ogilvie
Carol M. Brewer
Ogilvie & Brewer LLP
4200 California Street, Suite 100
San Francisco, California 94118
Telephone:  (415) 651-1952
andy@ogilvie-brewer.com
carol@ogilvie-brewer.com

*Attorneys for Plaintiffs Brian Douglas Larson
and Ronald J. Miller*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BRIAN DOUGLAS LARSON, on behalf of himself and all others similarly situated, | Case Nos. 3:12-cv-05726-WHO & 3:18-cv-03280-WHO |
| Plaintiff, | |
| v. | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND FOR SERVICE AWARDS TO CLASS REPRESENTATIVES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| TRANS UNION, LLC, | |
| Defendant. | |
| RONALD J. MILLER, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Date: November 28, 2018 |
| v. | Time: 2:00 p.m. |
| TRANS UNION, LLC, | Place: Courtroom 2 – 17th Floor |
| Defendant. | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to the Court's Order Approving Preliminary Settlement (ECF No. 180), on November 28, 2018 at 2:00 p.m., in Courtroom 2 - 17th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable William H. Orrick, Plaintiffs Brian Larson and Ronald J. Miller will and hereby do move for an Order finally approving the proposed settlement as fair, reasonable and adequate pursuant to Fed. R. Civ. P. 23; granting Plaintiffs each a service award; finding that the Notice was the best practicable notice under the circumstances and satisfied all constitutional and other requirements; dismissing the action pursuant to the terms and conditions of the Settlement Agreement; retaining jurisdiction over the enforcement and implementation of the Settlement Agreement; and, issuing related orders as necessary in connection with the class action settlement proposed for final approval in this matter.

This Motion is made pursuant to Fed. R. Civ. P. 23 and is based upon this Notice of Motion and Motion; the accompanying Memorandum of Law; the accompanying Declaration of RSM US LLP in Connection With Notice Dissemination; the Settlement Agreement; and, such evidence and argument as the Court may consider at the hearing on this Motion.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

DATE:  October 15, 2018          By:     */s/ John Soumilas*
                                         James A. Francis (*pro hac vice*)
                                         John Soumilas (*pro hac vice*)
                                         David A. Searles (*pro hac vice*)
                                         Lauren KW Brennan (*pro hac vice*)
                                         1600 Market Street, 25th Floor
                                         Philadelphia, PA  19103
                                         Telephone:  (215) 735-8600
                                         Facsimile:  (215) 940-8000
                                         jfrancis@consumerlawfirm.com
                                         jsoumilas@consumerlawfirm.com
                                         dsearles@consumerlawfirm.com
                                         lbrennan@consumerlawfirm.com

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Andrew J. Ogilvie
Carol M. Brewer
Ogilvie & Brewer LLP
4200 California Street, Suite 100
San Francisco, California 94118
Telephone:  (415) 651-1952
andy@ogilvie-brewer.com
carol@ogilvie-brewer.com

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

I.   INTRODUCTION .................................................................................................. 1

II.  THE LITIGATION AND SETTLEMENT NEGOTIATIONS ............................. 2

III. THE TERMS OF SETTLEMENT ......................................................................... 3

    A.   The Settlement Class ..................................................................................... 4

    B.   The Consideration Provided To The Class Under The Agreement ................ 4

    C.   Notice to the Class ......................................................................................... 4

    D.   Service Awards ............................................................................................... 4

    E.   Release ............................................................................................................ 6

    F.   The Required Class Action Fairness Act Notice ........................................... 6

    G.   Exclusions and Objections ............................................................................. 6

    H.   Attorneys' Fees and Expenses ....................................................................... 7

IV.  ARGUMENT ......................................................................................................... 7

    A.   Legal Standard ............................................................................................... 7

    B.   Class Certification .......................................................................................... 8

        1.   Rule 23(c) Requirements ..................................................................... 8

            a.   Notice ....................................................................................... 8

            b.   CAFA Compliance .................................................................. 8

    C.   Fairness, Adequacy and Reasonableness ....................................................... 9

        1.   Strength of Plaintiffs' Case ................................................................. 9

        2.   Risk, Expense, Complexity and Likely Duration of Further
            Litigation ............................................................................................ 10

        3.   Risk of Maintaining Class Action Status Throughout Trial ............... 10

        4.   Amount Offered in Settlement ............................................................ 11

        5.   Extent of Discovery Completed and Stage of Proceeding ................... 12

        6.   Experience and Views of Counsel ...................................................... 12

7.    Presence of Governmental Participant.................................................... 13

8.    Reaction of Class Members ................................................................... 13

V.    CONCLUSION............................................................................................. 14

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
<u>CASES</u>

4
*Allen v. Bedolla*,
5
    787 F.3d 1218 (9th Cir. 2015) ............................................................7

*Barel v. Bank of America*,
6
    255 F.R.D. 393 (E.D. Pa. 2009)...........................................................6

7
*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
8
    2014 WL 4403524 (E.D. Va. Sept. 5, 2014)......................................6

9
*Bogosian v. Gulf Oil Corp.*,
    621 F. Supp. 27 (E.D. Pa. 1985) .........................................................5
10

11
*Carter v. Shalhoub Management, Inc.*,
    Civ. No. 15-1531, ECF 70 (C.D. Cal. March 15, 2017)....................6

12
*Chavez v. Lumber Liquidators, Inc.*,
13
    2015 WL 2174168 (N.D. Cal. May 8, 2015).......................................8

14
*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ..............................................................9
15

16
*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013).......................................................................11

17
*In re Dun & Bradstreet Credit Services Customer Litigation*,
18
    130 F.R.D. 366 (S.D. Ohio 1990)......................................................5

19
*Flores v. Express Services, Inc.*,
    2017 WL 1177098 (E.D. Pa. March 29, 2017)...................................6
20

21
*Giddiens v. LexisNexis Risk Solutions, Inc.*,
    C.A. No. 12-2624-LDD, ECF 55 (E.D. Pa. Jan. 20, 2015) ...............6

22
*Hanlon v. Chrysler Corp.*,
23
    150 F.3d 1011 (9th Cir. 1998) ............................................................7

24
*Hartless v. Clorox Co.*,
    273 F.R.D. 630 (S.D. Cal. 2011) .......................................................5
25

26
*In re High-Tech Employee Antitrust Litig.*,
    2014 WL 3917126 (N.D. Cal. Aug. 8, 2014) .....................................7

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Jaffe v. Morgan Stanley & Co., Inc.*,
   2008 WL 346417 (N.D. Cal. 2008) ..................................................................12

*Johnson v. General Mills, Inc.*,
   2013 WL 3213832 (C.D. Cal. June 17, 2013) ....................................................5

*Jones v. Halstead Mgt. Co.*,
   No. 14-3125, ECF 155 (S.D.N.Y. May 5, 2016) ................................................6

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ........................................................................11

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977) ........................................................................10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).................................................................8, 12

*Nelson v. Bennett*,
   662 F. Supp. 1324 (E.D. Cal. 1987) ................................................................12

*Officers for Justice v. Civil Service Comm'n of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ....................................................................10, 11

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) ......................................................................7

*Patel v. Trans Union LLC*,
   2018 WL 1258194 (N.D. Cal. March 11, 2018).............................................5, 6

*Patel v. Trans Union, LLC*,
   308 F.R.D. 292 (N.D. Cal. 2015) ....................................................................13

*Ramirez v. Trans Union, LLC*,
   301 F.R.D. 408 (N.D. Cal. 2014)......................................................................13

*Robinson v. General Info. Servs., Inc.*,
   No. 2:11-cv-07782-PBT, ECF 55 (E.D. Pa. Nov. 4, 2014) ..............................6

*Rodriguez v. Calvin Klein Inc, et. al*,
   No. 1:15-cv-2590-JSR, ECF 33 (S.D.N.Y. Mar. 21, 2016)..............................6

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..............................................................5, 12, 13

*Safeco Insurance Co. of America v. Burr*,
   551 U.S. 47 (2007)............................................................................................10

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Sapp v. Experian Info. Solutions,*
  No. 10-4312, 2013 WL 2130956 (E.D. Pa. May 15, 2013)...................................6

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)..............................................................................9, 10

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...............................................................................7

*Stokes v. RealPage, Inc.*,
  C.A. No. 15-1520, ECF 63 (E.D. Pa. Feb. 6, 2018) ............................................6

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..............................................................................................11

*In re Warner Comms. Secs. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) .....................................................................12

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) .................................................................................12

### STATUTES

Class Action Fairness Act, 28 U.S.C. § 1715.................................................6, 8, 9, 13

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq.*.............................1, 2, 5, 6, 10, 11

### FEDERAL RULES

Fed. R. Civ. P. 23..........................................................................................................11

Fed. R. Civ. P. 23(a) ..............................................................................................8, 11

Fed. R. Civ. P. 23(b) ....................................................................................................8

Fed. R. Civ. P. 23(c) ....................................................................................................8

Fed. R. Civ. P. 23(e) ....................................................................................................7

Fed. R. Civ. P. 23(e)(2)............................................................................................7, 9

Fed. R. Civ. P. 23(f) .....................................................................................................9

### CONSTITUTIONAL PROVISIONS

Article III ......................................................................................................................9

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**MEMORANDUM OF LAW**

Plaintiffs Brian Larson and Ronald J. Miller respectfully submit this Memorandum in support of their Motion for Final Approval of Class Action Settlement.[1]

## I.   INTRODUCTION

Plaintiff Brian Douglas Larson brought this consumer protection class action against Defendant TransUnion LLC ("Defendant" or "Trans Union") under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq*. ("FCRA"), on behalf of a class of California consumers (the "Larson Action").   Plaintiff Ronald J. Miller brought the same claim on behalf of consumers residing in Pennsylvania, New Jersey, Delaware, and the U.S. Virgin Islands.   *Miller v. Trans Union, LLC*, No. 3:12-cv-1715 (M.D. Pa.) (the "Miller Action").   The two cases were consolidated for settlement purposes on June 13, 2018 (ECF 176).

Both cases involve Trans Union's disclosures to consumers of information from the United States Department of Treasury's Office of Foreign Assets Control ("OFAC").   Trans Union has sold OFAC information about consumers since the early 2000s and began disclosing it to consumers in 2011 as a result of an FCRA lawsuit regarding Trans Union's disclosure practices. *Cortez v. Trans Union, LLC*, 617 F.3d 688, 711-12 (3d Cir. 2010).   When Trans Union began disclosing OFAC information to consumers who requested their files online in 2011, it encountered a computer programming error which resulted in a form of disclosure provided to thousands of consumers, which Plaintiffs contend was  unclear and misleading in violation of FCRA section 1681g.[2]   Specifically, the programming error led to the appearance of the "OFAC header" on the personal credit reports of consumers who did <u>not</u> have any OFAC information in their file.   Furthermore, the disclosure stated that the OFAC information "is not part of your TransUnion credit report," but was rather "additional information" provided as a "courtesy."

---

[1]     Unless otherwise defined herein, all capitalized terms herein have the same meaning as in the Settlement Agreement.

[2]     The error affected only the disclosures sent to consumers, and not the credit reports sent to third parties.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  Plaintiffs Larson and Miller asserted that this disclosure was unclear and misleading in violation

2  of section 1681g of the FCRA.

3  This Court certified the FCRA claims of California consumers affected by Trans Union's

4  OFAC disclosure practices. *Larson v. Trans Union, LLC*, 201 F. Supp. 3d 1103, 1109 (N.D. Cal.

5  2016). The proposed class in the Miller Action was likewise recommended for certification. *Miller*

6  *v. Trans Union, LLC*, No. 3:12-cv-1715, 2017 WL 41261, at *11 (M.D. Pa. Jan. 18, 2017).

7  Plaintiffs now seek final approval of the class action settlement that was preliminarily

8  approved by this Court on July 10, 2018 (ECF 180). The Court preliminarily found the terms of

9  the proposed settlement to be "fair, reasonable and adequate to the Settlement Class." ECF 180 at

10  2. Nothing that has occurred in the interim has disturbed that conclusion, and the positive reaction

11  of the Class Members to date confirms that the Settlement is "fair, reasonable and adequate."

12  Plaintiffs further seek approval of a service award and, by separate motion, approval of an award

13  of fees and costs to Class Counsel.

14  **II.    THE LITIGATION AND SETTLEMENT NEGOTIATIONS**

15  The extensive history and litigation of both the Larson and the Miller Actions is set forth in

16  Plaintiffs' Motion for Preliminary Approval filed on May 31, 2018 (ECF 173) and need not be

17  repeated in full here. In summary:

18  Mr. Larson's case was filed on September 12, 2012 in the Superior Court of California,

19  County of San Francisco, and removed to this court on November 7, 2012. Mr. Miller filed his case

20  in the Middle District of Pennsylvania on August 28, 2012. Trans Union sought to consolidate the

21  Larson Action with the Miller Action, as well as with *Ramirez v. Trans Union, LLC*, No. 12-cv-632

22  (N.D. Cal.). The Judicial Panel on Multidistrict Litigation denied the motion on February 7, 2013.

23  Both cases then proceeded on separate tracks and both involved extensive discovery and

24  motion practice. The Larson Action involved two motions to dismiss filed by Defendant, Plaintiff's

25  motion for class certification, Defendant's motion for partial summary judgement and motion for a

26  stay. *See* ECF nos. 7, 33, 45, 50-52, 62, 66, 77, 80. The Court eventually denied summary judgment

27  and certified a class. 201 F.Supp.3d 1103 (N.D. Cal. 2016). The Ninth Circuit declined to hear

28

Trans Union's appeal. ECF nos. 109, 114.  Following discovery, Defendant then filed a dispositive motion and a motion to strike testimony of Plaintiff's expert.  ECF nos. 150-151, 160-161, 165-166.

During the same time period, the parties were similarly litigating the Miller Action. Defendant's motion to dismiss was denied by the magistrate judge and the district court judge. Defendant then obtained a stay of the case pending the Supreme Court's resolution of the *Spokeo, Inc. v. Robins* case.  Following further briefing after the expiration of the stay, the magistrate judge recommended certifying the proposed class. *Miller v. Trans Union, LLC*, 2017 WL 41261 (M.D. Pa. Jan. 18, 2017).  Trans Union objected to the recommendation.

Throughout the motion practice and discovery going on in the two cases, the parties attended several formal mediation sessions with private mediators to address resolution of the cases along with the *Ramirez* case.  None of the mediations resulted in a settlement.

In February 2018, the parties began discussing resolution of Larson and Miller Actions separately from the *Ramirez* case.  Following detailed discussions and exchange of drafts, the parties reached a final agreement at the end of May 2018.

## III.    THE TERMS OF SETTLEMENT

Plaintiffs and Trans Union arrived at the proposed settlement in this case after full briefing on motions to dismiss each case, written discovery, twelve depositions, briefing on class certification in each case, briefing regarding standing following the *Spokeo* decision, and two rounds of summary judgment briefing in the Larson Action.  The parties are therefore familiar with all of the factual and legal issues at stake in these cases.

The Parties also conducted arm's-length, contentious negotiations that included three separate full day mediation sessions with two different retired jurists and a series of conversations involving counsel for the Parties.  After several months of discussion following numerous exchanges of draft documents, the Parties reached a class-wide settlement resolving the claims in both cases.

**A.      The Settlement Class**

The Settlement Class consists of all consumers with an address in California, Pennsylvania, New Jersey, Delaware, and the U.S. Virgin Islands to whom Trans Union provided a personal credit report online from September 22, 2011 to October 27, 2011, substantially similar in form to the one Trans Union provided to Plaintiffs.  Order of Preliminary Approval, ECF 180, ¶ 1.

**B.      The Consideration Provided To The Class Under The Agreement**

The Agreement requires Trans Union to provide each member of the Settlement Class with a letter of apology for the confusion caused by the disclosure at issue.  Settlement Agreement, ECF 173-1, at section 2.10; Exhibit A thereto.  Each Settlement Class member will also be entitled to a free three-year subscription to Trans Union's credit monitoring service, worth over $700.  *Id., §§* 2.12, 4.2.

Trans Union will pay all costs of notice and settlement administration.  *Id.*, § 7.1.  RSM US LLP was appointed as Settlement Administrator, ECF 180 at ¶ 7.

**C.      Notice to the Class**

Filed on October 15, 2018 (ECF 183) is the Declaration of RSM US LLP in Connection with Notice Dissemination ("RSM Dec.").  The RSM Dec. describes the tasks that the Settlement Administrator has performed to date, including the mailing and re-mailing of the Settlement Notice and setting up a settlement website and toll-free telephone number.  *Id.* at ¶¶ 3-9. Notice was mailed on August 9, 2018 to 30,991 individuals identified on the class list.  *Id.* at ¶ 4.  The Settlement Administrator identified new addresses for noticed returned as undeliverable without a forwarding address and forwarded notices where applicable.  *Id.* at ¶ 8.  After forwarding, only 683 notices were undeliverable, resulting in a reach rate of 98%. *Id.* at ¶ 9.

**D.      Service Awards**

The Settlement Agreement provides for a service award for each Class Representative for their efforts in prosecuting these cases including retaining and consulting with counsel, assisting in discovery, sitting for a deposition and keeping abreast of the litigation.  Had it not been for Plaintiffs' efforts and perseverance, their fellow consumers would not have learned of Defendant's

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

challenged practices and would not have benefitted from the value generated by the two lawsuits. Defendant has agreed not to oppose the application for the awards, which are sought in the amount of $10,000 each, also subject to the approval of the Court. *Id.*, § 5.1.

Such service awards "are fairly typical in class action cases and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk …, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted); *see also Patel v. Trans Union LLC,* No. 3:14-cv-00522-LB, 2018 WL 1258194, at * 7-8 (March 11, 2018) (relying on *Rodriguez* and approving $10,000 service award in FCRA class settlement); *Johnson v. General Mills, Inc.*, No. 10-00061, 2013 WL 3213832, at * 7 (C.D. Cal. June 17, 2013) (quoting same and awarding incentive payments to class representatives in false-advertising-of-food case); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011).  Further, service awards are common where the class representatives' personal claims alone would never justify the time and effort required to prosecute complex litigation on behalf of a class.  *See, e.g., Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) ($20,000 awarded to two class representatives); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 376 (S.D. Ohio 1990) ($215,000.00 awarded out of a settlement fund of $18 million).

In this case, the service awards sought are appropriate for several reasons.  Both Mr. Larson and Mr. Miller assisted Class Counsel in gathering facts necessary for the prosecution of the cases and in responding to discovery, including document requests, interrogatories and sitting for a deposition.  Each Plaintiff was always ready and willing to work on behalf of the Class, met with counsel, was kept abreast of the proceedings, and assisted counsel in making important decisions. Plaintiffs assumed certain risks in filing litigation against a well-funded corporate defendant, such as being held responsible for Defendant's costs in the event that it prevailed.  The amount requested

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

here is well within the range of awards made in similar FCRA class cases.[3]

Under such circumstances, this Court should approve payment of the reasonable class representative awards as permitted by the Settlement Agreement.

**E.   Release**

The scope of the release to which each Settlement Class Member would be bound is limited to claims that were alleged or could have been alleged in either the Miller Action or the Larson Action.  Settlement Agreement, § 2.27.  The Agreement specifically preserves the ability of Settlement Class Members to bring individual claims for actual damages.  *Id.*

**F.   The Required Class Action Fairness Act Notice**

Trans Union has served the notice required to be served under the Class Action Fairness Act of 2005 ("CAFA").  28 U.S.C. § 1715.  ECF 175.

**G.   Exclusions and Objections**

Pursuant to the Court's Order of Preliminary Approval, the deadline for requesting exclusion from the Settlement by writing to the Settlement Administrator, and for objecting to the Settlement by filing with the Clerk of the Court, is October 29, 2018.  ECF 180, ¶¶ 10-11.  At least ten days prior to the Fairness Hearing scheduled for November 28, 2018, the Settlement Administrator will submit a declaration regarding final exclusion requests and any objections.

---

[3]   *See Patel*, 2018 WL 1258194, at * 7-8*; Stokes v. RealPage, Inc.,* C.A. No. 15-1520 (E.D. Pa. Feb. 6, 2018) (ECF 63) (awarding $10,000 to each of two FCRA class representatives); *Carter v. Shalhoub Management, Inc.,* Civ. No. 15-1531 (C.D. Cal. March 15, 2017) (ECF 70) ($10,000 service award in FCRA settlement); *Flores v. Express Services, Inc.,* 2017 WL 1177098 (E.D. Pa. March 29, 2017)  (approving $10,000 award to FCRA class representative); *Jones v. Halstead Mgt. Co.,* No. 14-3125 (S.D.N.Y. May 5, 2016) (ECF 155) (approving $10,000 to FCRA class representative); *Rodriguez v. Calvin Klein Inc, et. al,* No. 1:15-cv-2590-JSR (S.D.N.Y. Mar. 21, 2016) (ECF 33) (final approval order awarding $15,000 to class representative in recognition of service in FCRA case); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.,* No. 3:11-CV-754, 2014 WL 4403524, at *4 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman,* 807 F.3d 600 (4th Cir. 2015) (awarding $5,000 to each of several class representatives); *Giddens v. LexisNexis Risk Solutions, Inc.,* C.A. No. 12-2624-LDD (E.D. Pa. Jan. 20, 2015) (ECF 55, at ¶ I) (awarding class representative $10,000); *Robinson v. General Info. Servs., Inc.,* No. 2:11-cv-07782-PBT (E.D. Pa. Nov. 4, 2014) (ECF 55) (final approval order awarding $10,000 to class representative); *Sapp v. Experian Info. Solutions,* No. 10-4312, 2013 WL 2130956, at *3 (E.D. Pa. May 15, 2013) (awarding $15,000 to class representative in FCRA settlement); *Barel v. Bank of America,* 255 F.R.D. 393, 402-403 (E.D. Pa. 2009) ($10,000).

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**H.**    **Attorneys' Fees and Expenses**

The Settlement Agreement also provides that Class Counsel shall request approval of reasonable attorneys' fees and costs up to $1,480,000, subject to the approval of the Court, to which request Defendants will not object.  Settlement Agreement, § 5.1.  The motion seeking that approval is filed simultaneously herewith.

## IV.    ARGUMENT

**A.**    **Legal Standard**

The Ninth Circuit maintains "a strong judicial policy" that favors class action settlements. *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

Nevertheless, Rule 23(e) requires courts, only after first holding a hearing, to approve any class action settlement.  "[S]ettlement class actions present unique due process concerns for absent class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  As such, "the district court has a fiduciary duty to look after the interests of those absent class members." *Allen*, 787 F.3d at 1223 (collecting cases).  Specifically, courts must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026; *see* Fed. R. Civ. P. 23(e)(2).  In particular, where "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Approval of a settlement is a two-step process.  Courts first "determine [ ] whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *In re High-Tech Employee Antitrust Litig.*, No 11-CV-02509-LHK, 2014 WL 3917126, at *3 (N.D. Cal. Aug. 8, 2014).  "At the fairness hearing, … after notice is given to putative class members, the court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014) (citing *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)).  After the fairness hearing, the

court determines whether the parties should be allowed to settle the class action pursuant to the agreed-upon terms. *Chavez v. Lumber Liquidators, Inc.*, No. CV-09-4812 SC, 2015 WL 2174168, at *3 (N.D. Cal. May 8, 2015) (citing *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)).

**B. <u>Class Certification</u>**

This Court has already ruled that the Class in the Larson action may be certified, with Mr. Larson as Class Representative and his lawyers as Class Counsel. ECF 86, ECF 108. For substantially the same reasons that this Court certified the class in the Larson Action, Magistrate Judge Carlson of the U.S. District Court for the Middle District of Pennsylvania has recommended that the proposed class in the Miller Action be certified as well. *Miller,* 2017 WL 41261. As such, all the elements for certification of the Settlement Class for whom the case is being settled have been met.

Consequently, there is no reason to revisit the analysis of Rule 23(a) and (b).

**1. <u>Rule 23(c) Requirements</u>**

**a. <u>Notice</u>**

As set forth in section III.C., *supra*, following the Court's Order of Preliminary Approval, the Settlement Administrator, RSM US LLP, sent notice of the Settlement to the Class. *See* RSM Dec., ECF 183. RSM oversaw the mailing of the Court-approved Notice to the 30,991 Class Members on August 9, 2018 and established a settlement website. RSM Dec., ¶ 4. As of October 11, 2018, 683 Notices were returned as undeliverable. Notice was re-mailed to 975 Class Members for whom RSM was able to locate addresses from a search service, and another 33 that had been returned with a forwarding address. *Id*. at ¶ 8. In summary, out of the 30,991 mailed Notices, only 683 were returned as undeliverable (with no forwarding address available). RSM calculated that 98% of the Class was reached with notice. *Id*. at ¶ 9.

**b. <u>CAFA Compliance</u>**

CAFA provides that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the

1    appropriate federal official, a notice of the proposed settlement[.]" 28 U.S.C. § 1715(b).

2    Defendant mailed the CAFA notice and filed proof thereof.  ECF 175.

3    **C.**    <u>**Fairness, Adequacy and Reasonableness**</u>

4        Courts assessing the fairness of a settlement under Rule 23(e)(2) generally weigh the

5    following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

10    *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  *See also* ECF 153 at 6-7.

11        **1.**    <u>**Strength of Plaintiffs' Case**</u>

12        Plaintiffs believe their case was strong but also recognize a number of obstacles in the way

13    of achieving a successful result.  While achieving certification of the Class, Plaintiffs would now

14    face the task of proving liability on the merits, which would require further risky litigation and

15    expert work.  Even if Plaintiffs successfully passed the liability hurdle, a battle would likely ensue

16    concerning whether Plaintiffs and other Class Members could recover statutory damages, and, if

17    so, the proper measure of those damages, requiring yet more expert testimony and entailing further

18    risks to Plaintiffs' and the Class's chances of recovery.  These battles would be fought not only at

19    trial but also on appeal.

20        Another relevant factor was the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S.

21    Ct. 1540 (2016).  Throughout the litigation, Defendant asserted that *Spokeo* rulings on Article III

22    standing and the requirement of injury in fact, 136 S. Ct. at 1547, required dismissal of Plaintiffs'

23    claims.   The effect of the decision, if any, was the subject of heated debate throughout the case.

24    *See, e.g.,* in the Larson Action: Defendant's Memorandum in Support of Stay (ECF 82); Petition

25    for Permission to Appeal Under Rule 23(f) (ECF 109); Motion for Summary Judgment (ECF 150).

26    Similar motions were filed in the Miller Action:   Opposition to Motion for Class certification

27    (ECF 86); Motion to Stay (ECF 103); Objection to Report and Recommendation (ECF 141).

28

While Plaintiffs were confident that *Spokeo* did nothing to undermine their case, it nonetheless presented another risk.

In addition, Defendant have asserted other defenses, such as that Plaintiffs would be unable to prove willfulness, and therefore be unable to obtain statutory or punitive damages. While Plaintiffs were confident they could defeat those arguments, they certainly also presented risks.

### 2.    Risk, Expense, Complexity and Likely Duration of Further Litigation

As mentioned above, there were risks in proceeding with the litigation. In the absence of settlement, the Parties would incur very significant expenses in preparing for and participating in a trial of this class action. It is likely that such a trial would last for a week or more, involve many witnesses, including perhaps experts hired by both sides. Included in such a trial would be the necessity to delve into the complexity of willfulness issues. For Plaintiffs to obtain statutory or punitive damages for the Class, they would have to prove that Defendant's conduct was willful. *See Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007) (willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."). The time and expense to try those issues would not be inconsiderable. There is a significant advantage of receiving a benefit now as opposed to later. *See Officers for Justice v. Civil Service Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

### 3.    Risk of Maintaining Class Action Status Throughout Trial

Class certification always poses a risk and often involves prolonged and expensive battles between parties in connection with certification, merits and damages issues. While this Court and the Middle District of Pennsylvania both issued carefully considered class certification orders, Defendant obviously disagreed, as evidenced by its attempt to have the Court of Appeals review this Court's Order and the Pennsylvania district court review the magistrate judge's report and recommendation. Although Plaintiffs believe they would have been successful in maintaining

class certification, in the absence of settlement, Defendant likely would have continued to press its argument that certification here is not appropriate under Rule 23. For example, Defendant would have continued to argue that the Plaintiffs' claims cannot be proven on a class wide basis, that commonality is lacking as to willfulness and that individual issues predominate due to the purported need to determine which class members saw the OFAC header. *See* ECF 72-3. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (requiring "rigorous analysis" to ensure requirements of "Rule 23(a) have been satisfied"); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (same). Overall, the Parties have acknowledged these risks.

### 4. **Amount Offered in Settlement**

In assessing the consideration obtained by the class members in a class action settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 628. It is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to class members at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

While the Settlement here does not provide for compensation in direct cash payments, Defendant has agreed to relief that could not be compelled under the FCRA even if Plaintiff's were to prevail on all their claims at trial: a corrective disclosure which apologizes to each Class Member for the confusion caused by Trans Union's practices. In addition, each Class Member is entitled to three years of free credit monitoring which will allow them to confirm that Trans Union does not associate an OFAC information with their file.[4] Moreover, all Class Members retain their rights to bring individual actual damages claims resulting from Defendant's actions.

In FCRA class actions such as this one, the monetary relief available may be severely limited in the absence of a finding of willful conduct on the part of a defendant. If the Court were

---

[4]    This benefit translates into approximately $718 for each Class Member. Trans Union's credit monitoring service normally costs consumers $19.95 per month, plus tax where applicable. *See* https://www.transunion.com/credit-monitoring.

1    to accept all of Defendant's arguments regarding damages then, even assuming a liability verdict

2    in Plaintiffs' favor, the Class might have received nothing.

3          **5.**      <u>**Extent of Discovery Completed and Stage of Proceeding**</u>

4         "A settlement following sufficient discovery and genuine arms-length negotiation is

5    presumed fair." *Nat'l Rural Telecomms,* 221 F.R.D. at 528. The court can look to whether a

6    plaintiff had "a good grasp on the merits of [his] case before settlement talks began." *Rodriguez*,

7    563 F.3d at 967; *see also Jaffe v. Morgan Stanley & Co., Inc.*, No. C 06-3903 TEH, 2008 WL

8    346417, at *9 (N.D. Cal. 2008) (finding approval appropriate where parties had engaged in

9    extensive discovery prior to settlement). "[P]ractical considerations obviously require that the

10   evaluation be made on the basis of information available at the time of settlement." *Nelson v.*

11   *Bennett*, 662 F. Supp. 1324, 1327 n. 4 (E.D. Cal. 1987) (quoting the California Supreme Court in

12   *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488, 499, 698 P. 2d 159 (1985)).

13        Here, Plaintiffs and their counsel conducted significant investigation of the facts and law

14   during the prosecution of this action. *See* section II, *supra*; *see also* Declaration of John Soumilas

15   in Support of Plaintiff's Motion for Attorneys' Fees and Costs, filed contemporaneously herewith.

16   Those efforts were critical in assessing the risks of litigation and informed the basis for settlement.

17         **6.**      <u>**Experience and Views of Counsel**</u>

18        In evaluating the propriety of a proposed settlement, courts often look to the negotiating

19   process by which the settlement was reached to determine whether that process was genuinely

20   adversarial. *E.g.*, *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982). Thus, the fairness of a

21   settlement depends in part on "whether the settlement was achieved through 'arms' length

22   negotiations' by counsel who have 'the experience and ability … necessary to effective

23   representation of the class's interests.'" *In re Warner Comms. Secs. Litig.*, 618 F. Supp. 735, 741

24   (S.D.N.Y. 1985). Typically, there is at least an initial presumption that a proposed settlement is

25   fair and reasonable when it was the product of arms'-length negotiations between counsel.

26   *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-

27   collusive, negotiated resolution[.]").

28

1   The settlement here is the result of extensive litigation as well as sustained arms' length

2   negotiations by counsel experienced in consumer and other complex class action litigation, as set

3   forth in Class Counsels' background and experience previously presented to the Court. *See* ECF 62-

4   31 (Larson Action); ECF 79-40 (Miller Action). *See also, Patel v. Trans Union, LLC*, 308 F.R.D.

5   292, 307 (N.D. Cal 2015) (finding Class Counsel adequate in all respects); *Ramirez v. Trans Union*,

6   *LLC*, 301 F.R.D. 408, 420 (N.D. Cal. 2014) (same).

7   Moreover, the case was resolved after the Parties had participated in several mediation

8   sessions.  Although the mediations did not directly lead to a settlement, they were helpful exercises

9   in informing each Party of the other's strengths and weaknesses, which in turn helped to reach the

10   eventual Settlement.  The prolonged and hard-fought negotiations demonstrate there was no

11   collusion in connection with the Settlement.

12   **7.       Presence of Governmental Participant**

13   Here, no governmental agency engaged in previous litigation against the Defendant that

14   might have benefitted the Class.  This factor favors approval of the settlement. *Rodriguez*, 563

15   F.3d at 966.  Moreover, the appropriate federal and state authorities have been notified of the

16   proposed settlement pursuant to CAFA, 28 U.S.C. § 1715, and to date no governmental entity has

17   raised objections or concerns.

18   **8.       Reaction of Class Members**

19   At this point, the October 29, 2018 deadline for objections and exclusions is still two weeks

20   away.  As on October 11, 2018, the Settlement Administrator had received two exclusion requests,

21   which are attached to the RSM Dec.  ECF 183 at ¶ 10 and Exhibit C thereto.  As of the date of this

22   filing, there have been no objections to the settlement filed with the Court.[5]   Therefore, to date,

23   the reaction of the class to the settlement has been overwhelmingly positive.

24   _____

25   [5]       One of the two exclusion requests sent to the Settlement Administrator purports to object to
the settlement because it allegedly does not adequately compensate "an individual whose identity
has actually been compromised by the Trans Union data breach." ECF 183 at p. 14. This statement

26   was not filed with the Court as required by the Settlement Agreement to be treated as an objection,
and the class member requested to be excluded from the settlement.  Furthermore, the objection

27

28

1  After the October 29 deadline and before the Fairness Hearing scheduled for November 28,

2  Plaintiffs will supplement the record as necessary to address any further exclusions or objections.

3  <div align="center">**V.**   **CONCLUSION**</div>

4  For the reasons set forth above, Plaintiffs Brian Larson and Ronald J. Miller respectfully

5  request that this Court grant final approval to the Parties' proposed Settlement as fair, reasonable

6  and adequate, approve a service award to each Class Representative and enter final judgment in

7  this case.

8  Respectfully submitted,

9  DATE:  October 15, 2018          **FRANCIS & MAILMAN, P.C.**

10          By:      */s/ John Soumilas*
                      James A. Francis (*pro hac vice*)
11                    John Soumilas (*pro hac vice*)
                      David A. Searles (*pro hac vice*)
12                    Lauren KW Brennan (*pro hac vice*)
                      Land Title Bldg., Suite 1902
13                    1600 Market Street, 25th Floor
                      Philadelphia, PA 19103
14                    Telephone:  (215) 735-8600
                      Facsimile:  (215) 940-8000
15                    jfrancis@consumerlawfirm.com
                      jsoumilas@consumerlawfirm.com
16                    dsearles@consumerlawfirm.com
                      lbrennan@consumerlawfirm.com
17
                      Andrew J. Ogilvie
18                    Carol M. Brewer
                      Ogilvie & Brewer LLP
19                    4200 California Street, Suite 100
20                    San Francisco, California 94118
                      Telephone:  (415) 651-1952
21                    andy@ogilvie-brewer.com
                      carol@ogilvie-brewer.com
22

23

24

25

26  _____

27  appears to misunderstand the nature of the claims at issue, and the scope of the release, which
    preserves class members' ability to seek actual damages.

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, a true and correct copy of the foregoing has been filed electronically and is available for viewing and downloading from the federal courts' Electronic Cases Filing ("ECF") system.  A copy of the foregoing has been served on counsel of record via the ECF system.


DATE:   October 15, 2018                    <u>*/s/ John Soumilas*          </u>
                                            John Soumilas (*pro hac vice*)